No. 14-1631

# United States Court of Appeals
# For the Federal Circuit

---

DietGoal Innovations LLC,

*Plaintiff-Appellant*,

v.

Bravo Media, LLC (Division of NBC Universal Media, LLC),

*Defendant-Appellee*.

---

**Appeal From The United States District Court For The
Southern District of New York
In Case No. 1:13-cv-08391-PAE, Judge Paul A. Engelmayer**

---

**BRIEF FOR APPELLANT**

---

Eric W. Buether
Buether Joe & Carpenter, LLC
1700 Pacific Avenue, Suite 4750
Dallas, Texas  75201
(214) 466-1271

*Attorney for Plaintiff-Appellant
DietGoal Innovations LLC*

## CERTIFICATE OF INTEREST

Counsel for the Appellant, DietGoal Innovations LLC, certifies the following:

1.      The full name of every party or amicus represented by me is:

DietGoal Innovations LLC

2.      The name of the real party in interest represented by me is:

DietGoal Innovations LLC

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Eric W. Buether
Christopher M. Joe
Brian A. Carpenter
Mark D. Perantie
Niky Bukovcan
Michael D. Ricketts
BUETHER JOE & CARPENTER, LLC

Steven War
MCNEELY, HARE & WAR LLP

Damon M. Young
THE LAW OFFICES OF DAMON YOUNG

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................... i

TABLE OF CONTENTS................................................................... ii

TABLE OF AUTHORITIES ..............................................................v

TABLE OF ABBREVIATIONS ........................................................ ix

STATEMENT OF RELATED CASES ..................................................x

STATEMENT OF JURISDICTION......................................................1

STATEMENT OF THE ISSUES...........................................................1

STATEMENT OF THE CASE..............................................................1

    A.    Preliminary Statement ........................................................1

    B.    Procedural History..............................................................3

STATEMENT OF FACTS ....................................................................4

    A.    The `516 Patent .................................................................4

    B.    The `516 Patent Specification .............................................4

    C.    The Claims of the `516 Patent.............................................6

    D.    The Construction of the Claims of the `516 Patent by Other Judges in the Eastern District of Texas and the Southern District of New York........................................................8

    E.    The District Court's Summary Judgment Decision that All Claims of the `516 Patent are Not Patent-Eligible.............10

SUMMARY OF ARGUMENT ............................................................14

STANDARD OF REVIEW ................................................................17

ARGUMENT ...................................................................................17

A.    The Scope of Patent Eligibility Under § 101 is Broad.......................18

B.    The Judicially Created Exceptions to § 101's Broad Patent Eligibility Principles Must be Narrowly Construed...........................19

C.    The "Abstract Idea" Exception and Its Limitations ...........................20

D.    A Claim to the Application of an Abstract Idea is Patent Eligible ...................................................................................................22

E.    The Supreme Court's Decision in *Alice*..............................................24

F.    At the Early Stage of the Proceedings When Bravo Filed its Motion, Bravo Was Required to Establish that the Only Plausible Construction of Each Claim Renders the Subject Matter of the Claim Ineligible as a Matter of Law by Clear and Convincing Evidence .........................................................................26

G.    The District Court Erred by Concluding, as a Matter of Law, that All of the Claims of the `516 Patent Were Patent-Ineligible Under the Abstract Idea Exception ......................................................27

       1.    The District Court's Failure to Construe the Relevant Claim Language Significantly Contributed to Its Erroneous Decision ..................................................................27

       2.    The District Court Erred in Ruling that the System Claims of the `516 Patent Do Not Qualify as Eligible Subject Matter Under § 101 as a "Machine" ...........................31

       3.    The District Court Erred in Ruling that All of the Claims of the `516 Patent Broadly Claim the Abstract Idea of Meal Planning to Meet a Person's Nutritional Goals ...............32

              a.    The Two-Step Test for Assessing the Abstract Idea Exception ......................................................................33

              b.    The Claims of the `516 Patent Contain Meaningful Limitations that Prevent them from Preempting the Abstract Idea of Meal Planning to Meet a Person's Nutritional Goals ..........................................................34

CONCLUSION ..................................................................................................51

CERTIFICATE OF SERVICE .............................................................................52

CERTIFICATE OF COMPLIANCE .....................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013),
    *cert. denied*, 134 S. Ct. 2871 (2014)......................................................27, 39

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)..........................................................................*passim*

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*,
    687 F.3d 1266 (Fed. Cir. 2012) ........................................................27

*Bilski v. Kappos*,
    561 U. S. 593 (2010) ........................................................................ 24

*Bilski v. Kappos*,
    130 S. Ct. 3218 (2010).................................................. 11, 18, 19, 22, 23, 45

*Burr v. Duryee*,
    68 U.S. 531 (1863)..........................................................................14, 31, 32

*Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*,
    723 F.3d 1376 (Fed. Cir. 2013) ....................................................17

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
    717 F.3d 1269 (Fed. Cir. 2013) ..................................................... 20, 21, 38

*Crown Operations Int'l v. Solutia Inc.*,
    289 F.3d 1367 (Fed. Cir. 2002) .....................................................17

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ....................................................11

*Dealertrack v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012) ....................................................21

*Diamond* v. *Chakrabarty,*
          447 U.S. 303 (1980)...................................................................................18

*Diamond v. Diehr,*
          450 U.S. 175 (1981)..............................................................23, 24, 43, 46

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.,*
          758 F.3d 1344, 111 USPQ2d 1717 (Fed. Cir. 2014)....................................32

*DietGoal Innovations LLC v. Kellan Rest. Mgmt. Corp.,*
          2014 U.S. Dist. LEXIS 19047 (E.D. Tex. Feb. 13, 2014)....................*passim*

*DietGoal Innovations LLC v. Time, Inc.,*
          2014 U.S. Dist. LEXIS 91120 (S.D.N.Y. June 30, 2014)....................*passim*

*Eclipse IP, LLC v. McKinley Equipment Corporation,*
          Civil Action No. CV 14-154-GW(AJWx) (C.D. Cal. Sept. 9, 2014) .....33, 41

*Fletcher v. Atex, Inc.,*
          68 F.3d 1451 (2d Cir. 1995) ........................................................................17

*Fonar Corp. v. General Elec. Co.,*
          107 F.3d 1543, 41 USPQ2d 1801 (Fed. Cir. 1997)......................................47

*Funk Bros. Seed v. Kalo Inoculant Co.,*
          333 U.S. 127 (1948).....................................................................................23

*Gottschalk v. Benson,*
          409 U.S. 63, 93 S. Ct. 253 (1972) ............................ 19, 23, 42, 45, 46, 48, 50

*Healy v. Rich Prods. Corp.,*
          981 F.2d 68 (2d Cir. 1992) ..........................................................................17

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
          132 S. Ct. 1289 (2012).............................................................................*passim*

*Microsoft Corp. v. i4i Ltd. P'ship,*
          131 S. Ct. 2238 (2011).................................................................................26

*MySpace, Inc. v. GraphOn Corp.*,
  672 F.3d 1250 (Fed. Cir. 2012) ..................................................................... 20

*O'Reilly v. Morse*,
  56 U.S. (15 How.) 62 (1854) ................................................................. 25, 34

*Parker v. Flook*,
  437 U.S. 584 (1978)....................................................... 12, 23, 44, 45, 48, 50

*Research Corp. Techs., Inc. v. Microsoft Corp.*,
  627 F.3d 859 (Fed. Cir. 2010) ....................................................16, 18, 21, 44

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
  601 F.3d 1319 (Fed. Cir. 2010) .................................................................45

*TQP Development, Inc. v. Intuit Inc.*,
  2014 WL 651935 (E.D. Tex. Feb. 19, 2014)..................................................39

## STATUTES

28 U.S.C. § 1295 ....................................................................................1

35 U.S.C. § 100 ...................................................................................31

35 U.S.C. § 101 ........................................................................... *passim*

35 U.S.C. § 102 ................................................................................2, 19

35 U.S.C. § 103 ................................................................................2, 19

35 U.S.C. § 112 ................................................................................2, 19

## RULES

Fed. R. App. P. 4 ....................................................................................1

## OTHER AUTHORITIES

Donald S. Chisum, *Weeds and Seeds in the Supreme Court's Business Method Patents Decision: New Directions for Regulating Patent Scope*, 15 Lewis & Clark L. Rev. 11 (2011) ..................................................20

*Manual of Patent Examining Procedure* § 2161 (rev. Aug. 2012) ........................47

# TABLE OF ABBREVIATIONS

## *Parties*

| | |
|---|---|
| DietGoal | DietGoal Innovations LLC, Plaintiff-Appellant |
| Bravo | Bravo Media, LLC, Defendant-Appellee |
| the District Court | The presiding judge in the Southern District of New York |

## *Patents-in-Suit*

| | |
|---|---|
| the `516 Patent | U.S. Patent No. 6,585,516 |

## *Defined Terms*

| | |
|---|---|
| A___ | Joint Appendix page(s) |

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellant provides as follows:

(a)    There have been no previous appeals in this case.

(b)    The following appeal currently pending in this Court will be directly affected by the Court's decision in this case:  *DietGoal Innovations LLC v. Time, Inc.*, Case No. 14-1770 (Fed. Cir.).

## STATEMENT OF JURISDICTION

Final judgment was entered on July 8, 2014. DietGoal timely appealed on July 10, 2014 (Fed. R. App. P. 4(a)(1)(A)). This Court has appellate jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

Whether the District Court erred by holding that all of the system and method claims of the `516 Patent, drawn to a particular application of computerized meal planning, were ineligible for patenting under 35 U.S.C. § 101.

## STATEMENT OF THE CASE

### A.    Preliminary Statement

This case involves a District Court's decision granting summary judgment finding all 62 claims of the patent in suit invalid as patent-ineligible under § 101. The District Court granted summary judgment without conducting any claim construction and without any evidence before it other than the unconstrued patent.

As a result of its failure to construe the relevant claim terms in the patent, the District Court repeatedly misstated the scope of the claims, contending that they are far broader than the limitations in those claims clearly specify. The District Court stated that it viewed its task as "looking at this as a holistic patent with a variety of different claims or metes and bounds" and that it believed it was proper to "address[] the issue of patentability by looking at the totality of the

1

invention . . . as opposed to having to undertake one by one this analysis as to 61 or whatever different claims." Eschewing any effort to consider the elements of each claim both individually and as an ordered combination to determine whether elements of the claims transform the nature of the claim into a patent-eligible application," the District Court found that the claims of the patent in suit, "viewed as a whole," recited nothing more than an abstract idea. Evaluating the "essence" of the claims, the District Court minimized or ignored key limitations in the claims narrowing the scope of the claims to a particular application of a broader concept. The District Court concluded that significant limitations with specific structure and functionality were "generic" and "purely conventional" without citing any evidence supporting this conclusion.

If the District Court's judgment is not reversed, the limited "threshold test" of patent-eligibility under § 101 intended to operate as only a "coarse filter" will become a firewall undermining the legitimacy of patent-eligible computer-implemented patents. Leaving the District Court's judgment intact will incite § 101 challenges to many patents whose validity should be determined according to §§ 102, 103 and 112, instead of § 101. Judges will be empowered to rewrite claims and make subjective and free-floating assessments of the validity of patents undermining the certainty and predictability essential to an effective patent system.

**B.    Procedural History**

On June 6, 2012, DietGoal sued Bravo for infringement of the `516 Patent in the Eastern District of Texas.  (A65, Dkt. No. 1).  Bravo moved to transfer to the Southern District of New York on September 17, 2012.  (A66, Dkt. No. 20).  On April 9, 2013, the action was instead transferred to the Eastern District of Virginia. (A68, Dkt. No. 62).  On May 2, 2013, Bravo again filed a motion to transfer the action to the Southern District of New York (A68, Dkt. No. 67), which was granted on November 19, 2013.  (A69, Dkt. No. 92).

On March 19, 2014, Bravo filed a motion for summary judgment asserting that all 62 claims of the `516 Patent are invalid under 35 U.S.C. § 101. (A132-409).  DietGoal filed a response to Bravo's summary judgment motion on April 7, 2014. (A410-438).  Bravo filed a reply brief in support of its motion on April 16, 2014. (A469-484).   The District Court held a hearing on Bravo's motion for summary judgment on May 20, 2014.   (A74-132).   On June 26, 2014, both DietGoal and Bravo filed letter briefs regarding the Supreme Court's recent decision in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) addressing invalidity under Section 101. (A525-545).  On July 8, 2014, the District Court issued an Opinion and Order granting Bravo's summary judgment of invalidity under 35 U.S.C. § 101 without conducting any claim construction.  (A1-30).  On the same day the District Court entered a final judgment.  (A31-42).  DietGoal

3

timely appealed from the final judgment on July 10, 2014.  (A73, Dkt. No. 150).

*See also* A4-6.

## STATEMENT OF FACTS

### A.    The `516 Patent

The `516 Patent "relates to the field of computerized based methods of employing visual techniques for training individuals to modify [dietary] behavior," and is directed towards "[a] system and method for computerized visual behavior analysis, training, and planning."  (A43, Abstract and A54, Col. 1:8-10).  The `516 Patent issued with 18 claims on July 1, 2003 based upon an application filed January 9, 2002.  An *inter partes* reexamination resulted in the issuance of a Reexamination Certificate on October 2, 2013.  The reexamination confirmed the patentability of claims 1-18, added new claims 19-61, and added a priority claim through a series of prior applications, the earliest of which dates to December 14, 1998.  *See DietGoal Innovations LLC v. Kellan Rest. Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 19047 at *11 (E.D. Tex. Feb. 13, 2014).

### B.    The `516 Patent Specification

The specification of the `516 Patent explains that the invention addresses the following needs in the field:

> No effective **tools** exist for either health professionals or the public that can adequately train people to understand and immediately recognize the significance of (1) the impact of customized meals on dietary goals; (2) the value and amount of specific macro and micro

4

nutrients in different foods; (3) the potentially harmful effects of other naturally occurring substances found in many foods; and (4) the relative quantities of different food choices. Nor are there any **planning tools** that can show people how to create meals using food choices that are much more healthful for them and their families. In addition, no **planning tools** exist that use natural visual techniques to assist people to follow diet programs designed by health professionals.

(A54, Col. 1:24-50 (emphasis added)). The `516 Patent, therefore, addresses a computerized method and system that is used as a specific **tool** in dietary training and planning, which cannot be performed or implemented without the use of a computer.

The specification teaches that "[t]he present invention can solve the above problems by providing a system and method for computerized behavior analysis, training and planning. The system of programs can include a User Interface (UI), a Meal Database, a Food Database, Picture Menus, and a Meal Builder." (A54, Col. 2:16-20). A "Picture Menu" is provided by the computerized systems and methods so that a user may choose meals for a particular time period to correspond to a customized eating plan. (A43, Abstract, and A47-50, Figures 4-7). A Meal Builder allows a user to edit or create new meals and view the meals' impact on the user's customized eating goals. (A43, Abstract, A51-52, Figures 8-9, and A54, Col. 2:65-Col. 3:1).

The User Interface "can receive commands from the user and display results to the user from the 'Picture Menus' and 'Meal Builder.'" (A54, Col. 2:21-24).

The specification further teaches that "[t]he Meal Builder can be a very useful tool, not only for modifying and personalizing Picture Menus, but also for designing meals and picturing favorite recipes." (A55, Col. 3:1-4). The specification describes an alternative embodiment where the Meal Database and the Food Database can be used for dietary behavior analysis which compiles and analyzes specific information about a user's eating preferences and tendencies and compares this information to a set of customized eating goals. (A54, Col. 2:29-41). The specification also describes an exemplary method for computerized behavior analysis, training, and planning as including the following steps:

> First, the Meal Database and Food Database can be prepared. Second, the user can choose meals for a particular day. Third, the user can decide whether or not to change one or more of the meals he has chosen for the particular day. If the user decides to change his chosen meals, the user can edit or create new meals using the Meal Builder. If the user decides not to change his choices, or after the user changes his choices, the user can save the meals for the particular day.

Col. 3:11-20. The specification contains figures depicting the underlying architecture of an exemplary embodiment of the invention, as well as flow charts of an exemplary process. (A44-46, Figures 1-3).

### C.    The Claims of the `516 Patent

Independent Claims 1 and 2 of the `516 Patent are directed to systems of "computerized meal planning." These system claims each recite a User Interface and a Database of food objects, described above. The third element of these

system claims comprises either "at least one Picture Menus" or "a Meal Builder." The structure of these elements is described in the specification discussed above. All of the claims of the `516 Patent require Picture Menus and the additional limitation of "customized eating goals."

The structure of the "at least one Picture Menus" must be such that it "displays on the User Interface meals from the Database that a user can select from to meet customized eating goals." The structure of the "Meal Builder" is defined so that it "displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals." The requirement that the Picture Menus or the Meal Builder be so designed as to allow a user to make certain selections is not a recitation of a process but of the required structure of these elements. The function of these elements is to allow a user to select or change content of meals to fulfill the purpose of meeting customized eating goals or viewing the impact on such goals.

Independent Claims 12 and 13 recite methods "of computerized [meal] planning." These method claims require a computerized program to perform each recited step. The step of allowing a user to choose meals from one or more Picture Menus is further modified by the requirement that the Picture Menus "display on a [computerized] User Interface meals comprised from the food objects from the

7

Database" for the purpose of enabling the user to "mix and match" such food objects "to meet customized eating goals." These steps are not performed by the user but by the computerized program. Allowing user interaction is simply a functional purpose of this step.

Dependent Claim 24 depends from Claim 1 and adds the requirement that "one or more displayed meals correspond to at least one of a selected nutritional value, a selected caloric value, a selected personal characteristic, and a selected activity level." Claim 30 depends from independent Claim 1 and dependent Claim 29, which adds the requirement that "the User Interface displays at least one customized eating goal for selection by the user," and further adds the requirement that, "wherein a meal is added to or removed from display on the User Interface in response to selection of one or more of the at least one customized eating goals."

Claims 7-11 and 15-18 include the requirement of a "behavior analysis comprising collecting and analyzing specific information on a user's instinctive tendencies and preferences." All of the claims in the Reexamination Certificate are claims dependent on one or more claims in the original `516 Patent.

**D.    The Construction of the Claims of the `516 Patent by Other Judges in the Eastern District of Texas and the Southern District of New York**

In related litigation pending in the Eastern District of Texas, the court issued a claim construction ruling on February 13, 2014, construing numerous claim

terms of the `516 Patent. *DietGoal Innovations LLC v. Kellan Rest. Mgmt. Corp.*, 2014 U.S. Dist. LEXIS 19047 (E.D. Tex. Feb. 13, 2014).

The Texas court found that all of the claims required the claimed system or method to be "computerized," finding that "[t]he preamble use of 'computerize' [in each independent claim] gives the necessary life and meaning to these other claim terms that are indicative of a computerized system." *Id*. at *24. The Texas court also determined that the language "to meet customized eating goals" used in independent system claim 1 was a "meaningful limitation" as to the operation of the Picture Menus.

The Texas court further ruled that "the 'customized eating goals" described in the claims of the `516 Patent "are computer implemented." *Id*. at *37-38. The Court observed that "the entirety of the specification describes customized eating goals that are implemented on the computer," and emphasized that:

> There is no indication in the specification of the eating goals being merely a mental process. Further, what is described as a "customized" goal in the context of the intrinsic record as a whole is a goal that is computer implemented not merely a user's personal mental objective. Finally, the prosecution history leaves no doubt that claims are directed toward computer implemented systems and methods.

*Id*. at *39-40. The Texas court further found that, during reexamination, "the patentee made clear that mental processes are not being claimed." *Id*. at *40.

Thus, the Texas court construed "customized eating goals" to be "computer implemented, user-specific, dietary objectives." *Id*. at *43.

The Texas court construed "Picture Menus" to mean "a visual display of at least one image of a meal that a user can select a meal from," *id*. at *55, construed "Meal Builder" to be mean "a computer program that allows the user to create or change a meal and view the meal's impact on customized eating goals," *id*. at *62, and construed "User Interface" to mean "software through which a user sends commands and views displayed results." *Id*. at *68.[1]

### E.    The District Court's Summary Judgment Decision that All Claims of the `516 Patent are Not Patent-Eligible

The District Court issued its ruling granting Bravo's motion for summary judgment on July 8, 2014.  (A1-30).  The District Court initially concluded that "the `516 Patent does not claim a computer, or a machine of any type, as its invention" because "the independent claims of the `516 Patent recite a 'system' and a 'method' of computerized meal planning, which is to be implemented on an *existing* general purpose computer."    (A17n.5) (emphasis in the original). "Accordingly," the District Court concluded, "the Court treats the `516 Patent as asserting process claims." *Id*.

---

[1]   Just prior to the District Court's summary judgment decision, another court in another case pending in the Southern District of New York involving the `516 Patent also issued a claim construction ruling, construing the claims of the `516 Patent essentially the same as the Texas court. *See DietGoal Innovations LLC v. Time, Inc.*, 2014 U.S. Dist. LEXIS 91120 (S.D.N.Y. June 30, 2014).

Addressing the method claims of the `516 Patent, the District Court concluded that "the claims of the `516 Patent recite nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences." (A18). The District Court then stated that "[m]eal-planning is surely a 'long prevalent practice. . . .'" (A18). Thus, the court concluded, "[s]ustaining DietGoal's patent would thus 'effectively grant a monopoly over an abstract idea.'" (A18) (*quoting Bilski II*, 130 S. Ct. at 3231).

The District Court further concluded that "the claims of the `516 Patent recite steps that, although computer-implemented by virtue of the patent application, could 'be performed in the human mind, or by a human using a pen and paper,' and 'a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101.'" (A18) (*quoting CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011)). The District Court stated that "the `516 Patent claims a computerized method of selecting meals that align with the user's individual preferences and nutritional goals . . . and calculating the dietary impact of the addition or subtraction of certain foods. . . . These are conventional and quotidian tasks. A person can perform them without the aid of any particular or structured method and without the need of any technology." (A19).

11

The District Court also stated that "[t]he `516 Patent does not recite any specialized formula or method for implementing the 'well known' process of meal planning; at most, it merely 'provides a new and presumably better method' for calculating and visualizing the dietary impact of certain food choices." (A19) (quoting *Flook*, 437 U.S. at 594). "This," the District Court asserted, "is not the kind of 'discover[y]' that § 101 was designed to protect." *Id*.

Acknowledging that "DietGoal principally contends that the computer-implementation of the steps of the `516 Patent – specifically, the computerized process by which users can create meals using the Picture Menus and view the nutritional impact of changes to those meals using the Meal Builder – renders its claims patentable," the District Court rejected this contention on the basis that the Supreme Court in *Alice* "rejects the idea that 'the mere recitation of a generic computer can[] transform a patent-ineligible abstract idea into a patent-eligible invention.'" (A20) (quoting *Alice*, 134 S. Ct. at 2358 (slip op., at 13)). The District Court asserted that "[t]he claims of the `516 Patent do no more than 'simply instruct the practitioner to implement the abstract idea . . . on a generic computer,' they thus do not contain the requisite 'inventive concept' necessary to limit the scope of the claims to a patent-eligible application." (A24) (citations omitted). With regard to the system claims, the District Court found that "[c]omparing the language of the system claims with that of the method claims, it

is clear that these are functionally identical," and thus "the system claims are likewise patent ineligible under §101." (A27).

Finally, the District explained that it did not perform any claim construction because "the patent's claims are 'straightforward' and that '[n]o components are opaque such that claim construction would be necessary to flush out its contours.'" (A27-28). The District Court further concluded that "the court determined that the § 101 inquiry with respect to those claims 'encompasses only broad subject matter categories,' and thus 'claim construction is not necessary to reveal any material legal issues.'" (A28) (citations omitted). "Accordingly, the court determined that claim construction would not be a wise use of judicial resources." (A28).

Although the District Court acknowledged the claim construction ruling by the Texas court, the District Court discussed only the Texas court's construction confirming "that all claims of the `516 Patent required the claimed system or method to be 'computerized' or 'computer implemented.'" (A28). The District Court concluded that "[n]othing in the *Kellan* court's claim construction alters, or is at odds with, the fact that the method recited in the `516 Patent can be performed by a human using pen and paper; application of the process to a generic computer does not add any meaningful limitation." (A28-29). Regarding the *Kellan* court's ruling that "'[t]here is no indication in the specification of the eating goals being merely a mental process,'" the District Court asserted that "this isolated language

. . . does not reflect a determination by the *Kellan* court at odds with this Court's § 101 analysis" – and was "fully consistent with – the foregoing § 101 analysis." (A29). The District Court did not address the Texas court's construction of the "Picture Menus" or "Meal Builder" limitations.

## SUMMARY OF ARGUMENT

I.     The District Court erred by failing to construe the claim terms relevant to the assessment of whether the claims of the `516 Patent are invalid under § 101. As a result of its failure to construe the relevant claim terms in the patent, the District Court repeatedly misstated the scope of the claims, contending that they are far broader than the limitations in those claims clearly specify. This resulted in the District Court erroneously concluding that all of the claims of the `516 Patent were invalid as patent-ineligible under the abstract idea doctrine.

II.     The District Court erred by ruling that "the `516 Patent does not claim a the statutory subject matter of a "machine" under § 101 because "the independent claims of the `516 Patent recite a 'system' and a 'method' of computerized meal planning, which is to be implemented on an *existing* general purpose computer." To qualify as a "machine" under § 101, the claimed invention must be a "concrete thing, consisting of parts, or of certain devices and combination of devices." *Burr v. Duryee*, 68 U.S. 531, 570 (1863). The Supreme Court in *Alice* held that "computer-implemented claims are formally addressed to patent-eligible subject

matter." 134 S. Ct. at 2359. Thus, the system claims of the `516 Patent claim a computer system, which meets the definition of a "machine" under § 101.

III. The District Court erred when it ruled that, as a matter of law, all of the claims of the `516 Patent broadly claim the abstract idea of meal planning to meet a person's nutritional goals.

The `516 Patent claims do not purport to claim all practical applications of meal planning to meet nutritional goals. The claims of the `516 Patent recite a computer-implemented system and method requiring a specific configuration of computer hardware and software, with specified functions. This includes a display of Picture Menus from which a user can select a meal to meet a "customized eating goal," and a Meal Builder with specified functionality, including the ability to enable a user to create and display a meal as well as change a meal and view the impact of any change on the user's "customized eating goal." The user's "customized eating goals" must be computer implemented. Many of the dependent claims recite additional computer related functionality limitations that, when combined with the limitations of the independent claims, are sufficient to ensure that those claims require significantly more than the abstract idea of meal planning to meet a person's nutritional goals. These limitations do not reflect mere generic computer implementation, as the District Court concluded, and there is no evidence in the record to support this conclusion. Thus, the specific limitations in the `516

Patent restricting the scope of those claims to a particular application of computer-implemented meal planning are sufficient to preclude unacceptable preemption of the abstract idea of meal planning to meet nutritional goals.

The District Court's assertion that these limitations are "nothing more than 'post-solution activity' that cannot render the process patentable" is wrong. These limitations are central to the solution offered by the `516 Patent of providing "computerized visual techniques for training individuals to modify dietary behavior. The District Court expressly acknowledged that these limitations enabled the `516 Patent to provide "'a new and presumably better method' for calculating and visualizing the dietary impact of certain food choices." "Inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010).

Also without any basis is the District Court's finding that the claims of the `516 Patent recite steps that could "be performed in the human mind, or by a human using a pen and paper." A human cannot perform in his or her mind the function of establishing computer-implemented dietary objectives and then generating the claimed Picture Menus displaying images of meals that a user can select from to meet those objectives. These functions can only be performed by a

computer. Similarly, the human mind cannot perform the functions of the claimed "Meal Builder" that require, among other things, the ability to create or change meals and then view a display of the impact of a created or modified meal on the user's computer-implemented dietary objectives. Only a computer can perform these functions. The same can be said of the computer-related limitations added by the dependent claims.

## STANDARD OF REVIEW

This Court reviews the grant of summary judgment under the law of the regional circuit. *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013). In the Second Circuit, a district court's grant of summary judgment is reviewed *de novo* to determine whether there exists a genuine issue of material fact. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (citing *Healy v. Rich Prods. Corp.*, 981 F.2d 68, 72 (2d Cir. 1992)). Orders granting summary judgment should be affirmed only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Crown Operations Int'l v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002).

## ARGUMENT

## A.     The Scope of Patent Eligibility Under § 101 is Broad

Section 101 of the Patent Act describes four general categories of inventions or discoveries that are eligible for patent protection:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.  The Supreme Court has made clear that the scope of § 101 is broad:  "In choosing such expansive terms . . . modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope."  *Diamond* v. *Chakrabarty*, 447 U.S. 303, 308 (1980).  "Congress took this permissive approach to patent eligibility to ensure that '"ingenuity should receive a liberal encouragement."'  *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010) (quoting *Chakrabarty*, 447 U.S. at 308-09).

The limited role of § 101 is confirmed by other aspects of the Patent Act.  As § 101 itself expresses, subject matter eligibility is merely a threshold check; patentability of a claim ultimately depends on "the conditions and requirements of this title," such as novelty, non-obviousness, and adequate disclosure.  35 U.S.C. § 101; *see Bilski*, 130 S. Ct. at 3225 (characterizing § 101 as a "threshold test").  Section 101 was not intended by Congress to screen out all claimed inventions that are undeserving of patent protection, but was instead designed to serve as at best a "coarse eligibility filter."  *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d

859, 869 (Fed. Cir. 2010).  Congress made it clear that the expansive categories –
process, machine, article of manufacture, and composition of matter – are not
substitutes for the substantive patentability requirements set forth in §§ 102, 103,
and 112 and invoked expressly by § 101 itself.

### B.    The Judicially Created Exceptions to § 101's Broad Patent Eligibility Principles Must be Narrowly Construed

The Supreme Court has recognized that "§ 101's broad patent-eligibility
principles" are subject to specific judicially created exceptions:  "[p]henomena of
nature, though just discovered, mental processes, and abstract intellectual concepts
are not patentable, as they are the basic tools of scientific and technological work."
*Gottschalk v. Benson*, 409 U.S. 63, 67, 93 S. Ct. 253 (1972).  The Court's
motivation for recognizing exceptions to the broad statutory grant was its desire to
prevent the "monopolization" of the "basic tools of scientific and technological
work," which "might tend to impede innovation more than it would tend to
promote it."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct.
1289, 1293 (2012) (internal quotation marks omitted).  Given that these judicial
exceptions are in derogation of § 101's expansive definition of patent-eligible
subject matter, courts have recognized that these exceptions must be construed
narrowly.  *See, e.g., Bilski*, 130 S. Ct. at 3225.  As the Supreme Court has made
clear, too broad an interpretation of these exclusions from the grant in § 101 "could
eviscerate patent law."  *Mayo*, 132 S. Ct. at 1293; *cf. Bilski*, 130 S. Ct. at 3226

19

("This Court has not indicated that the existence of these well-established exceptions gives the Judiciary carte blanche to impose other limitations that are inconsistent with the text and the statute's purpose and design.").

### C.    The "Abstract Idea" Exception and Its Limitations

Courts and commentators alike have repeatedly noted the elusive nature of the abstract idea doctrine. *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1277 (Fed. Cir. 2013) ("[D]eciding whether or not a particular claim is abstract can feel subjective and unsystematic, and the debate often trends toward the metaphysical, littered with unhelpful analogies and generalizations."); *MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1259 (Fed. Cir. 2012) ("When it comes to explaining what is to be understood by 'abstract ideas' in terms that are something less than abstract, courts have been less successful."); Donald S. Chisum, *Weeds and Seeds in the Supreme Court's Business Method Patents Decision: New Directions for Regulating Patent Scope*, 15 Lewis & Clark L. Rev. 11, 14 (2011) (The "abstract idea preemption inquiry can lead to subjectively-derived, arbitrary and unpredictable results.  This uncertainty does substantial harm to the effective operation of the patent system.").

This difficulty is largely attributable to the fact that, as the Supreme Court recognized, "all inventions at some level embody, use, reflect, rest upon or apply . . . abstract ideas." *Mayo*, 132 S. Ct. at 1293.  "Any claim can be stripped down,

simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed." *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1298 (Fed. Cir. 2013). As a result, anytime a court begins its analysis by looking for an abstract idea, it is surely going to find one. But pursuing that approach to its logical end would "eviscerate patent law." *Mayo*, 132 S. Ct. at 1293. Thus, "[f]or abstractness to override a claim, it must 'exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter . . . .'" *Dealertrack v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (quoting *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010).

Furthermore, the abstract idea exception is fundamentally different from the other judicially-created exceptions to patent eligibility. Unlike laws of nature and natural phenomena, which exist in nature and are discovered, abstract ideas do not exist in nature and are instead conceived by humans. Laws of nature and natural phenomena have boundaries capable of clear delineation. But abstract ideas lack clear lines of demarcation and thus force line-drawing that rewrites claims in unpredictable ways never contemplated by the inventor, turning on a subjective inquiry that fosters a lack of clarity. The Supreme Court in *Alice* tacitly acknowledged the amorphousness of abstract ideas when it stated that "we need

not labor to delimit the precise contours of the 'abstract ideas' category in this case." *Alice*, 134 S. Ct. at 2357.

Thus, an aggressive application of the abstract idea doctrine is not an appropriate approach for addressing the problem of overbroad patents.  As the District Court's decision in this case reflects, overzealous efforts to apply the abstract idea doctrine to computer-implemented inventions "quickly devolve into an undisciplined parsing and rewriting of the relevant claims such that courts end up evaluating a claim of their own making – not what the inventor actually claimed."  Brief of Amicus Curiae International Business Machines, *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, No. 13-298 (Jan. 28, 2014).  Inventions implementing laws of nature and natural phenomenon are more amenable to the "threshold test" and "coarse filter" of § 101, but computer-implemented inventions, which may implement abstract ideas, are less so.  Consequently, the abstract idea exception to patentability should be applied cautiously, especially to computer-implemented inventions.

### D.     A Claim to the Application of an Abstract Idea is Patent Eligible

Importantly, the Supreme Court also has repeatedly held that a claim can embrace an abstract idea and be patentable.  *See Mayo*, 132 S. Ct. at 1294 (explaining that the fact that a claim uses a basic tool does not mean it is not eligible for patenting).  Instead, a claim is not patent eligible only if, instead of

claiming an application of an abstract idea, the claim is instead to the abstract idea itself. *See also Bilski*, 130 S. Ct. at 3230 ("[W]hile an abstract idea, law of nature, or mathematical formula could not be patented, an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." (emphasis in original) (internal quotation marks omitted)); *Diehr*, 450 U.S. at 187 ("It is now commonplace that an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.").

Thus, a claim is not patent eligible if it merely describes an abstract idea or simply adds "apply it." *See Mayo*, 132 S. Ct. at 1294, 1297. Similarly, claims that recite only insignificant pre- or post-solution activity, such as steps necessary to any practical use of the idea – *i.e.*, inputting numbers into a mathematical formula, *Bilski*, 130 S. Ct. at 3231, or reporting the results of a mathematical calculation, *Flook*, 437 U.S. at 590 – cannot "transform" an ineligible abstract idea "into a patent-eligible application" of the idea. *Mayo*, 132 S. Ct. at 1298. To allow such a claim would effectively preempt use of the abstract idea itself, thus removing a "basic tool[]," *Gottschalk*, 409 U.S. at 67, from the "storehouse of knowledge," *Funk Bros. Seed v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948).

On the other hand, a claim will be limited meaningfully when, in addition to the abstract idea, the claim recites added limitations that are essential to the

invention. In those instances, the added limitations do more than recite pre- or post-solution activity, they are central to the solution itself. In such circumstances, the abstract idea is not wholly pre-empted; it is only preempted when practiced in conjunction with the other necessary elements of the claimed invention. *See Diehr*, 450 U.S. at 187 ("[T]he respondents here do not seek to patent a mathematical formula. Instead, they seek patent protection for a process of curing synthetic rubber. Their process admittedly employs a well-known mathematical equation, but they do not seek to pre-empt the use of that equation. Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process.").

### E.    The Supreme Court's Decision in *Alice*

The Supreme Court decision in *Alice* is the latest in a string of recent Supreme Court decisions that have grappled with the issue of whether a patent claim improperly preempts an abstract idea. The decision in *Alice* largely reaffirmed the precedent discussed above. A few aspects of the *Alice* decision, however, are particularly noteworthy in the context of this case.

The Court in *Alice* emphasized that "the concern that drives" the implicit exception that laws of nature, natural phenomena, and abstract ideas are not patentable is "one of pre-emption." 134 S. Ct. at 2354 (citing *Bilski v. Kappos*, 561 U. S. 593, 611-612 (2010). *See also id*. at 2349 (noting "the pre-emption

concern that undergirds our § 101 jurisprudence"). Thus, the question in the abstract idea context is whether there are other ways to use the abstract idea in the same field. If so, the Supreme Court has expressly encouraged others to find those other ways, without being held back by patents that preempt the whole concept. *Mayo*, 132 S. Ct. at 1294 (citing *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 113 (1854)).

The Court in *Alice* reiterated the two-step framework established in *Mayo* for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, '[w]hat else is there in the claims before us?'" 134 S. Ct. at 2355 (citations omitted). "To answer that question," the *Alice* Court emphasized, "we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application." *Id*. (citations omitted). Thus, the determination of patent-eligibility must be conducted on a claim-by-claim basis, and must consider the elements of each claim in this manner.

The *Alice* Court further explained that its earlier decisions "demonstrate that the mere recitation of a generic computer cannot transform a patent-ineligible

abstract idea into a patent-eligible invention.  Stating an abstract idea "while adding the words 'apply it' " is not enough for patent eligibility."  134 S. Ct. at 2358.  *See also id.* ("wholly generic computer implementation is not generally the sort of "additional featur[e]" that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'") (citations omitted).  Although the *Alice* Court observed that "[t]he introduction of a computer into the claims does not alter the analysis at *Mayo* step two," 134 S. Ct. at 2357, the Court emphasized that "[t]here is no dispute that a computer is a tangible system (in § 101 terms, a "machine"), or that many computer-implemented claims are formally addressed to patent-eligible subject matter.  134 S. Ct. at 2358-59.

> **F.     At the Early Stage of the Proceedings When Bravo Filed its Motion, Bravo Was Required to Establish that the Only Plausible Construction of Each Claim Renders the Subject Matter of the Claim Ineligible as a Matter of Law by Clear and Convincing Evidence**

It is well established that, in a case such as this involving an issued patent, a court must presume that the `516 Patent covers only patent-eligible subject matter. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011).  Thus, in the District Court Bravo was required to establish that the asserted claims of the `516 Patent are not patent eligible by clear and convincing evidence.  *Id*.  Bravo's burden to establish that all of the claims of the `516 Patent are not patent eligible

under § 101 was even heavier than usual, given that it filed its summary judgment motion in the early stages of the litigation, without any claim construction ruling by the District Court.   Indeed, the District Court noted that Bravo's summary judgment motion, filed at the initial pleading stage of the litigation, "could equally validly have been styled [a] motion[] for judgment on the pleadings." (A2).  Thus, the only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility.   Additionally, although the issue of invalidity under Section 101 presents a question of law, that legal conclusion "may contain underlying factual issues."   *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 2871 (2014).

> ### G.   The District Court Erred by Concluding, as a Matter of Law, that All of the Claims of the `516 Patent Were Patent-Ineligible Under the Abstract Idea Exception
>
> #### 1.   The District Court's Failure to Construe the Relevant Claim Language Significantly Contributed to Its Erroneous Decision

Although this Court has observed that "claim construction is not an inviolable prerequisite to a validity determination under § 101," the Court has nonetheless suggested that "it will ordinarily be desirable – and often necessary – to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic

character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).

Here, the District Court failed to conduct any construction of any of the terms of the 62 claims contained in the `516 Patent.  (A28-29).  Although the District Court attempted to explain this failure away by asserting that the claims of the `516 Patent "are sufficiently 'straightforward' that formal claim construction is not necessary to understand their content," (A28), the District Court repeatedly misstated the scope of the claims, contending that they are far broader than the limitations in those claims clearly specify.  This flawed approach was foreshadowed by the statement by the District Court during the summary judgment hearing that the court was "looking at this as a **holistic patent** with a variety of different claims or metes and bounds" and that he believed it was proper to "address[] the issue of patentability by looking at the totality of the invention that DietGoal intends to patent as opposed to having to undertake one by one this analysis as to 61 or whatever different claims."  (A128) (emphasis added).  The District Court then continued to follow this erroneous approach when it ruled that, "the claims of the `516 Patent, **viewed as a whole**, recite nothing more than 'the concept of [meal planning] as performed by a generic computer.'"  (A25) (emphasis added).

For example, the District Court stated that "the `516 Patent claims a process for computerized meal planning; **in essence**, it recites a computer program that allows the user to create meals from a database of food objects according to his or her preferences and dietary goals, to change those meals by adding or subtracting food objects, and to view the dietary impact of changes to those meals on a visual display." (A17-18) (emphasis added). This description of the "essence" of the claims ignores the "Picture Menus" limitation of the `516 Patent. In addition, the claims of the `516 Patent do not merely require the user to "create meals from a database of food objects according to his or her preferences and dietary goals," as the District Court asserted. (A18). Rather, the claims require that the user be able to select a meal from the Picture Menus, which displays meals from the Database and, using a Meal Builder, change the content of meals and view the resulting meals' impact on the user's customized eating goals.

The District Court further asserted that "the claims of the `516 Patent recite nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences." (A18). "Selecting meals for the day," however, is not an element of any claim of the `516 Patent. Also, the `516 Patent does not require that the user select meals "according to [their] food preferences." Rather, the claims of the `516 Patent require "Picture Menus," which displays on the User Interface meals from the database that a user can select from

to meet customized eating goals." *See, e.g.*, A56, (Claim 1). "Customized eating goals" has been construed by the *Kellan* and *Time* courts to mean "computer implemented, user-specific dietary objectives," which encompasses more than simply "food preferences."

Underscoring the District Court's failure to comprehend the meaning and scope of the claims of the `516 Patent properly is the statement by the District Court that the Picture Menus limitation "is nothing more than 'post-solution activity' that cannot render the process patentable." (A25-26). The construction of this term by the *Kellan* and *Time* courts shows how this conclusion is wrong. The *Kellan* Court construed "Picture Menus" to mean "a visual display of at least one image of a meal that a user can select a meal from." The *Time* Court construed "Picture Menus" to mean "a visual display on the User Interface of at least one image of a meal from the Database." These claim limitations are central to the solution offered by the `516 Patent of providing "**visual techniques** for training individuals to modify [dietary] behavior." (A54, Col. 1:8-10 (emphasis added)). The District Court's statement that the Picture Menus limitation reflects merely post-solution activity reflects a complete misunderstanding of the scope of the claims and the technology underlying the `516 Patent.

As discussed above, the elusive nature of the abstract idea doctrine can lead to undisciplined parsing and rewriting of the relevant claims. The District Court's

failure to construe the relevant claim terms of the `516 Patent exemplifies this danger.

### 2. The District Court Erred in Ruling that the System Claims of the `516 Patent Do Not Qualify as Eligible Subject Matter Under § 101 as a "Machine"

All of the claims of the `516 Patent are limited to a computerized system or method. This is clear from the express claim language and confirmed by the claim construction rulings by the *Kellan* and *Time* courts. As discussed above, computer systems are "machines" expressly qualifying as eligible subject matter under § 101. In addition, 35 U.S.C. § 100(b) expressly provides that the statutory definition of a "process" "includes a new use of a known . . . machine" – such as new use of a known general-purpose computer through software that brings about new configurations of electronic circuits to perform new functions. The computerized methods claimed in the `516 Patent, therefore, fall within the term "process" used in § 101. Thus, the computer implemented inventions of the `516 Patent are formally drawn to patentable subject matter pursuant to § 101.

The District Court, however, concluded that "the `516 Patent does not claim a computer, or a machine of any type, as its invention" because "the independent claims of the `516 Patent recite a 'system' and a 'method' of computerized meal planning, which is to be implemented on an *existing* general purpose computer." (A17n.5) (emphasis in the original). This is clearly wrong. To qualify as a

machine under § 101, the claimed invention must be a "concrete thing, consisting of parts, or of certain devices and combination of devices." *Burr v. Duryee*, 68 U.S. 531, 570 (1863). *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, ____, 111 USPQ2d 1717, 1719 (slip op., at 7) (Fed. Cir. 2014) (quoting *Burr v. Duryee*, 68 U.S. 531, 570 (1863)). The Supreme Court in *Alice* unequivocally proclaimed that "t]here is no dispute that a computer is a tangible system (in § *101* terms, a 'machine'), or that many computer-implemented claims are formally addressed to patent-eligible subject matter." 134 S. Ct. at 2359. Thus, it is beyond question that the system claims of the `516 Patent claim a computer system, which meets the definition of a "machine" under section 101. Thus, the District Court clearly erred in ruling that the `516 Patent system claims do not qualify as a "machine." This error manifested itself in the District Court's failure to appreciate the structural limitations of the "Picture Menus" and "Meal Builder" limitations as well as other limitations in the system claims of the `516 Patent.

> **3.** **The District Court Erred in Ruling that All of the Claims of the `516 Patent Broadly Claim the Abstract Idea of Meal Planning to Meet a Person's Nutritional Goals**

The District Court also erred when it ruled that, as a matter of law, all of the claims of the `516 Patent broadly claim the abstract idea of meal planning to meet a person's nutritional goals.

32

a.    **The Two-Step Test for Assessing the Abstract Idea Exception**

As discussed above, when assessing the abstract idea exception, the § 101 inquiry is a two-step one:  first, whether the claim involves an intangible abstract idea; and if so, whether meaningful limitations in the claim make it clear that the claim is not to the abstract idea itself, but to a non-routine and specific application of that idea.  This two-stage inquiry requires examination of claim elements "both individually and 'as an ordered combination.'"  *Alice*, 134 S. Ct. at 2355.

As one court recently observed, however, "[d]escribing this as a two-step test may overstate the number of steps involved."  *Eclipse IP, LLC v. McKinley Equipment Corporation*, Civil Action No. CV 14-154-GW(AJWx) at 4 (C.D. Cal. Sept. 9, 2014).  The *Eclipse* court explained that, "[i]f the claim is not 'directed' to a patent-ineligible concept, then the test stops at step one.  If the claim is so directed, but we find in step two that the claim contains an 'inventive concept' that 'transforms' the nature of the claim into something patent eligible, then it seems that there was a categorization error in finding the claim – which is considered 'as an ordered combination' – 'directed to an abstract idea' in step one."  *Id*.  Thus, the court concluded, "the two-part test for identifying an abstract idea appears to be of limited utility. . . ."  *Id*. at 5.  In this case, therefore, DietGoal believes that it would be more efficient and practical to move directly to the second step of the two-part

test to assess whether any of the claims of the `516 Patent claim ineligible subject matter.

      **b.**       **The Claims of the `516 Patent Contain Meaningful Limitations that Prevent them from Preempting the Abstract Idea of Meal Planning to Meet a Person's Nutritional Goals**

As discussed above, the Supreme Court has described step two of the abstract idea exception analysis "as a search for an 'inventive concept' – *i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" 134 S. Ct at 2355 (citations omitted). Thus, the question in the abstract idea context is whether there are other ways to use the abstract idea in the same field. If so, the Supreme Court has expressly encouraged others to find those other ways, without being held back by patents that preempt the whole concept. *Mayo*, 132 S. Ct. at 1294 (citing *O'Reilly*, 56 U.S. (15 How.) at 113).

The record establishes that claims of the `516 Patent do not broadly claim the abstract idea of meal planning to meet nutritional goals. To the contrary, the system claims of the `516 Patent recite a computer-implemented system requiring a specific configuration of computer hardware and software, with specified functions. This includes a display of Picture Menus from which a user can select a meal to meet a "customized eating goal," and a Meal Builder with specified functionality, including the ability to enable a user to create and display a meal as

34

well as change a meal and view the impact of any change on the user's "customized eating goal." The user's "customized eating goals" must be computer implemented, as the *Kellan* and *Time* courts found. The method claims recite a specific series of steps requiring substantially similar computer software, hardware and functionality. Many of the dependent claims recite additional computer related functionality limitations that, when combined with the limitations of the independent claims, are sufficient to ensure that those claims require significantly more than the abstract idea of meal planning to meet a person's nutritional goals.

For example, independent Claim 1 requires "at least one Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal[s]." The *Kellan* court construed "Picture Menus" to mean "a visual display of at least one image of a meal that a user can select a meal from." Thus, the system of Claim 1 must visually display an image of a meal together with other information enabling users to select a meal from the displayed meals to meet the user's computer-implemented customized eating goals, in addition to the other structural limitations of the claim. Independent method Claim 13 also contains the same "Picture Menus" limitation. This limitation in these system and method claims materially restricts the scope of Claims 1 and 13 and their dependent claims to a particular application so as not to cover all practical means of meal planning to meet nutritional goals. Significantly,

the District Court's summary judgment order does not cite to any evidence in the record establishing that performing the "Picture Menus" function is inherent to performing meal planning to meet nutritional goals.

Similarly, independent Claim 2 requires a "Meal Builder" with the ability to enable a user to create and display a meal as well as change a meal and view the impact of any change on the user's "customized eating goal." The *Kellan* and *Time* courts construed "Meal Builder" to mean "a computer program that allows the user to create or change a meal and view the meal's impact on customized eating goals." Once again, this is a material limitation that precludes Claim 2 and the other claims incorporating the Meal Builder limitation from preempting all uses of meal planning to meet nutritional goals. The claimed systems incorporating this limitation must contain a computer program that is specifically programed to allow a user to create or change meals interactively and then view the resulting meal's impact on the user's customized eating goals. Again, the District Court does not point to any evidence in the record establishing that the Meal Builder's function of enabling a user to create and display a meal as well as change a meal and view the impact of any change on the user's dietary objectives is inherent to meal planning to meet nutritional goals. In addition, the display functionality required by the "Picture Menus" and "Meal Builder" limitations is not generic. It is particularized.

Other claims dependent on Claims 1 or 2 contain additional, narrowing limitations that make it clear that the claims do not cover the abstract idea of meal planning to meet nutritional goals itself, but to a non-routine and specific application of meal planning.  For example, Claim 24 adds the requirement that "one or more displayed meals correspond to at least one of a selected nutritional value, a selected caloric value, a selected personal characteristic, and a selected activity level."  In practice, this may be implemented by having a user select a particular "caloric value" (*e.g.*, "under 500 calories") resulting in the claimed "User Interface" of Claim 1 displaying only those meals with caloric values "under 500 calories."  This required correspondence of a displayed meal to a selected value establishes that this claim does not preempt all forms of meal planning to meet nutritional goals.

Claim 30 contains the additional requirement that "the User Interface displays at least one customized eating goal for selection by the user," and further adds the requirement that, "wherein a meal is added to or removed from display on the User Interface in response to selection of one or more of the at least one customized eating goals."  The District Court does not cite any evidence that performing meal planning to meet nutritional goals necessarily involves performing either of these required functions.  These limitations restrict the scope of these claims to covering only a non-routine and specific application of meal

planning that prevents them from preempting the abstract idea of meal planning to meet nutritional goals.  For example, meal planning can certainly be performed or implemented in numerous ways that do not require a "User Interface" to display "at least one customized eating goal" that may be selected, causing a "meal [to be] added to or removed from display on the User Interface."  As such, Claim 30 certainly does not preempt the abstract idea of meal planning.

The District Court's opinion does not address any of these narrowing limitations in the dependent claims of the `516 Patent, and addresses the Picture Menus and Menu Builder limitations in only a cursory and vague manner, stating that "Step 3 [of an unspecified claim] likewise amounts to conventional computer tasks: manipulating data based on inputs from the user, making computations from stored data, and displaying the results on a visual display."  (A24).  The District Court, however, does not cite any evidence in the record to support the assertion that the specific functionality of the "Picture Menus" limitation "amounts to conventional computer tasks."  Furthermore, all computer functionality involves "manipulating data based on inputs from the user."  The District Court's reasoning, if accepted, would lead to the nullification of virtually all claims covering any computer-implemented invention.[2]  Furthermore, the Picture Menus limitation does

---

[2]  For example, methods for encrypting business transactions over the Internet involve merely "manipulating data."  In the oral argument of the *CLS Bank* case, counsel for both the accused infringer and the Solicitor General pointed to patents

not generically claim "manipulating data based on inputs from the user," "making computations from stored data," or "displaying the results on a visual display." It specifically requires the system to find and display images of meals which a user can select to meet a computer-implemented "customized eating goal." The specificity of this limitation is certainly sufficient to preclude unacceptable preemption of the abstract idea of meal planning to meet nutritional goals.[3]

The `516 Patent expressly relies on the non-routine and specific functionality of the Picture Menus and Meal Builder limitations to distinguish prior art. For example, the patent cites U.S. Pat. No. 5,454,721 ("Kuch"), which is described as "a system intended to teach individuals the relationship between the visual size and a few nutritional characteristics of portions of food by using either a life size image of, or the corporeal finger of the individual, as a scale against images of different sized portions of different kinds of food, while showing a few nutritional characteristics of such portions." (A54). The `516 Patent distinguished

on methods of encryption as examples of technology that are directed to methods of doing business but would not be invalid as unpatentable subject matter. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, No. 13-298, Official Transcript of Argument before U.S. Supreme Court 34, 50 (Mar. 31, 2014). Such a patent has been challenged as involving unpatentable subject matter, but that challenge was rejected. *See TQP Development, Inc. v. Intuit Inc.*, 2014 WL 651935 (E.D. Tex. Feb. 19, 2014) (Bryson, J.).

[3] In *Accenture*, the patent claims generically claimed "manipulating data" without any specific description of how this manipulation was to be done. *Id*. at 1338. Here, the functions of the Picture Menus and Meal Builder limitations are specifically described in the `516 Patent.

Kuch on the ground that "it does not evaluate the user's ability to visually estimate macro and micro nutrient content of meals. Nor does it permit or incorporate analysis of an individual's natural tendencies and preferences." (A54, Col. 1:58-64). The `516 Patent also distinguished Kuch on the basis of the Meal Builder limitation, pointing out that "Kuch does not allow the user to prepare and plan and adapt meals that will help the user meet his customized eating goals." *Id*. The `516 Patent similarly distinguished U.S. Pat. No. 5,412,560 to Dennison, pointing out that "no graphic visual displays are provided, which further detracts from ease of use, comprehension and effectiveness." *Id.* at Col. 2:11-13.

The very existence of this prior art and the fact that the `516 Patent distinguished this art on the specific basis of the Picture Menus and Menu Builder limitations underscores that the claims of the `516 Patent containing these limitations do not preempt all methods of meal planning, even computer-implemented meal planning. The claims of the `516 Patent do not read on the methods of meal planning disclosed in the Kuch and Dennison patents and any other methods of meal planning not requiring the specific functionality described in the Picture Menus and Meal Builder limitations. As one court recently pointed out, "we must be wary of facile arguments that a patent preempts all applications of an idea. It may often be easier for an infringer to argue that a patent fails § 101 than to figure out a different way to implement an idea . . . . Patents should not be

casually discarded as failing § 101 just because the infringer would prefer to avoid the work required to develop non-infringing uses of the abstract idea." *Eclipse*, *supra*, at 8.

The District Court asserted that "the claims of the `516 Patent recite nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences" and that "[m]eal-planning is surely a 'long prevalent' practice. . . ." (A18). This generalization of the scope of the claims of the `516 Patent, however, misstates the actual limitations of the independent claims individually and as an ordered combination by ignoring the specific requirements of the Picture Menus and Meal Builder limitations and ignoring additional material limitations contained in several dependent claims. Additionally, although "meal planning" has been around a long time, the specific limitations in the claims of the `516 Patent reflect a particular application of meal planning and do not claim meal planning in general.

The District Court also asserted that the Picture Menus and Meal Builder limitations do not render the claims of the `516 Patent patent-eligible because the *Alice* decision "rejects the idea that 'the mere recitation of a generic computer can[] transform a patent-ineligible abstract idea into a patent-eligible invention.'" (A20). As discussed above, however, the limitations in the claims of the `516 Patent do not reflect mere generic computer implementation and well-understood,

routine, conventional activities previously known to the industry. These limitations do not merely add the words "apply it" or their equivalents to an abstract concept. Significantly, the District Court does not cite any evidence and only provides an *ipse dixit* conclusion to this effect.

For example, the District Court does not cite any evidence that the functionality performed by the claimed "Picture Menus" or "Meal Builder" constitutes generic computer implementation or perform merely "basic computer functions." The District Court does not point to any evidence showing that this functionality involves only a well-understood, routine, conventional activity previously known to the industry, or that the claims of the `516 Patent "could be 'carried out in existing computers long in use.'" *Alice*, 134 S. Ct. at 2357 (quoting *Gottschalk* v. *Benson*, 409 U. S. 63, 67 (1972)). The same is true of the other limitations discussed above. The District Court's decision does not contain any evidentiary support for the conclusion that each of the claims of the `516 Patent involve the mere recitation of a generic computer. Although patent-eligibility is ultimately a question of law, as discussed above, that legal conclusion "may contain underlying factual issues."

Moreover, the *Alice* decision carefully limited its "generic computer" statement, observing that, "if a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer' (citation omitted),

that addition cannot impart patent eligibility." 134 S. Ct. at 2358. *See also id*. at 2358 (a "wholly generic computer implementation" is sufficient). In this case, as explained above, the limitations present in the claims of the `516 Patent do significantly more than merely instruct someone to implement meal planning to meet dietary goals on a computer. They require particular implementations as specified in the Picture Menus and Meal Builder limitations. There is no evidence in the record that these implementations can be performed using any generic computer with conventional software programming. These limitations are unlike the "computer readable storage medium," "program code," "data processing system," "data storage unit," and "computer" at issue in the *Alice* decision.

These limitations render the claims of the `516 Patent patent-eligible because they restrict the claims to a specific application or way of doing something with a computer. They add more than generic computer functionality. They add the novel and non-routine functions of "Picture Menus," "Meal Builder" and the other limitations discussed above. The Supreme Court in *Alice* noted that, in *Diamond v. Diehr*, 450 U.S. 175 (1981), the patent applicants added more than a computer to a mathematical equation in claiming an arguably "inventive application" in the technology of curing synthetic rubber. 134 S. Ct. at 2358 (internal quotation marks omitted). *Diehr* held that the patent did not preempt the use of the mathematical equation, but only its application in the process of curing

43

synthetic rubber.  In this case, the abstract idea of meal planning to meet nutritional values is not wholly pre-empted; it is only preempted when practiced in conjunction with these other necessary, computer-implemented elements of the claimed invention.  These limitations improve the existing technology for meal planning.  Indeed, the District Court conceded this, acknowledging that the `516 Patent "'provides a new and presumably better method' for calculating and visualizing the dietary impact of certain food choices." (A19, quoting *Flook*, 437 U.S. at 594). [4]  "Inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act." *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010).

The District Court's statement that these limitations are "nothing more than 'post-solution activity' that cannot render the process patentable," (A25-26, quoting *Flook*, 437 U.S. at 590), could not be more wrong.  As the discussion above demonstrates, these limitations are central to the solution offered by the `516 Patent of providing "computerized **visual techniques** for training individuals to

---

[4]  The District Court's reliance on this quote from *Flook* to suggest that providing "a new and presumably better method" of performing a process is insufficient to avoid invalidity under section 101 is misplaced.  In *Flook*, the Supreme Court held that a mathematical equation was not patentable, and the fact that using the unpatentable equation made the claimed process perform better could not make the equation patent-eligible.  In this case, the claims of the `516 Patent contain specific, additional limitations that make the claimed systems and methods improvements over the prior art.

modify dietary behavior." (A43, Col. 1:8-10 (emphasis added)). Similarly, the "Menu Builder" limitation is central to the invention's objective to train people to understand and immediately recognize the significance of the impact of customized meals on dietary goals. (A54, Col. 1:24-50). The other recited limitations also play an important role in achieving the objectives of the invention.

The `516 Patent seeks to remedy problems with prior art planning tools that did not provide systems and methods that use natural visual techniques to train people adequately to understand and immediately recognize the significance of the impact of customized meals on dietary goals. The claims of the `516 Patent thus stand in stark contrast to the claims at issue in *Gottschalk*, *Flook*, *Bilski*, and *Mayo*. In each of those cases, the Court made clear that the claims recited nothing more than an abstract idea or law of nature and – at most – entirely insignificant post-solution activity. Again, the District Court expressly acknowledged that these limitations enabled the `516 Patent to provide "'a new and presumably better method' for calculating and visualizing the dietary impact of certain food choices." (A19). These limitations are also described in the `516 Patent as grounds for distinguishing prior art in the field. (A54). Thus, the Picture Menus, Meal Builder and other claim limitations are integral to the invention claimed in the `516 Patent and meaningfully restrict the scope of the claims of the `516 Patent. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010) (noting

45

that "a machine," a GPS receiver, was "integral to each of the claims at issue" and "place[d] a meaningful limit on the scope of the claims").

The District Court also incorrectly rejected the patent-eligibility of the method claims of the `516 Patent by asserting that "the claimed process could 'be carried out in existing computers long in use, no new machinery being necessary[.]'" (A25, quoting *Benson*, 409 U.S. at 67). The abstract idea doctrine does not require a claimed method to be performed on a new computer rather than an existing computer to be patent-eligible. In *Benson*, the Supreme Court held ineligible a method for using a computer to implement a mathematical algorithm to convert binary-coded decimal numerals into pure binary numerals because "the patent would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself." 409 U.S. at 71-72. Given that the method for using a mathematical formula was not patent-eligible, the Supreme Court simply observed that the implementation of that method on an existing, conventional computer could not save the method claim. The *Benson* court did not hold that a computer-implemented invention must be implemented on a new computer to be patent-eligible. Indeed, in *Diehr*, the Supreme Court found that a method claim using the application of a mathematical equation in a process for curing synthetic rubber was patent-eligible without regard to whether the process was implemented on an existing or a new computer. As in *Diehr*, the claims of the

`516 Patent are patent-eligible because they claim a specific way of doing something with a computer. They do not need to require a new computer for doing something.

Similarly, the District Court's statement that "[t]he '516 Patent does not recite any specialized formula or method for implementing the 'well known' process of meal planning" does not support the court's ruling that the claims of the `516 Patent are not patent-eligible. The disclosure of detailed software programming in a computer implemented invention is not required for a claim to be patentable. As the PTO has explained, "[c]omputer-implemented inventions are often disclosed and claimed in terms of their functionality. This is because writing computer programming code for software to perform specific functions is normally within the skill of the art once those functions have been adequately disclosed." *Manual of Patent Examining Procedure* § 2161.01(I), at 2100-178 (rev. Aug. 2012) (citing *Fonar Corp. v. General Elec. Co.,* 107 F.3d 1543, 1549, 41 USPQ2d 1801, 1805 (Fed. Cir. 1997)). The claims of the `516 Patent describe with sufficient specificity the functions to be performed by the Picture Menus and Meal Builder limitations to enable a person of ordinary skill in the art to write programming code to implement these functions. Bravo never contended, and the District Court did not find, anything to the contrary.

Also without any basis is the District Court's statement that "like the claims invalidated in *Gottschalk v. Benson*, 409 U.S. 63 (1972) and *Parker v. Flook*, 437 U.S. 584 (1978), the claims of the `516 Patent recite steps that, although computer-implemented by virtue of the patent application, could "be performed in the human mind, or by a human using a pen and paper," and "a method that can be performed by human thought alone." (A18). The District Court, however, does not cite any evidence to support this conclusion, and such an unsupported conclusion is contradicted by the `516 Patent itself. The `516 Patent recites numerous elements that cannot "be performed in the human mind, or by a human using a pen and paper." For example, independent Claim 1 requires "at least one Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goals." Numerous claims require a Meal Builder allowing a user to edit or create new meals and view the meals' impact on the user's customized eating goals. The *Kellan* and *Time* courts also ruled that "customized eating goals" must be computer-implemented. Claim 20 requires "The system of claim 19, wherein a meal is removed or added to the display on the User Interface based on the command [identifying a food object or a meal that the user likes of dislikes]." Claim 23 requires "The system of claim 1, wherein the user can select one or more of the displayed meals to store in the Database." Claim 30 requires "the system of claim 29, wherein a meal is added to or removed from

display on the User Interface in response to selection of one or more of the at least one customized eating goals."

These limitations cannot simply be performed by a person using a pen and paper, but instead must be performed using a computer. A human cannot perform in his or her mind the function of establishing computer-implemented dietary objectives and then generating the claimed "Picture Menus" displaying images of meals that a user can select from to meet those objectives. These functions can only be performed by a computer. Similarly, the human mind cannot perform the functions of the claimed "Meal Builder" that requires, among other things, the ability to create or change meals and then display the impact of a created or modified meal on the user's computer-implemented dietary objectives. Only a computer can perform these functions. Similarly, the human mind cannot perform the functions of Claim 30 requiring that "the User Interface displays at least one customized eating goal for selection by the user," and further adds the requirement that, "wherein a meal is added to or removed from display on the User Interface in response to selection of one or more of the at least one customized eating goals." Again, such functions can only be performed by a computer. The same can be said of the limitations added by the other dependent claims mentioned above. Thus, a

computer is required for all but the most fanciful uses of the invention claimed in the `516 Patent.[5]

The District Court also states that these specific functions required by the claims of the `516 Patent "are conventional and quotidian tasks," and that "[a] person can perform them without the aid of any particular or structured method and without the need of any technology." (A19). Again, the District Court does not cite any evidence that the actual limitations of the claims such as the "Picture Menus" or the "Meal Builder" are such "conventional and quotidian tasks" that can be performed without a computer. To the contrary, the discussion above demonstrates that they cannot be performed without a computer.

---

[5]   The District Court cited the decisions in *Benson* and *Flook* in support of this conclusion that the claims of the `516 Patent can be implemented without a computer. These cases, however, are distinguishable and do not support this conclusion.

The patent application at issue in *Benson* claimed a method for converting binary-coded decimal numbers into pure binary numbers. In essence, the application claimed, as the invention, a simple conversion from one number to another equivalent number in a different form. Thus, the invention was as basic as the conversion of Roman numerals into Arabic numerals.

In *Flook*, as in *Benson*, the Supreme Court held that a mathematical equation was not patentable. The invention in *Flook* consisted solely of applying an equation to compute an "alarm limit," *i.e.*, to calculate the likely presence of dangerous conditions in a certain chemical reaction process. Because the chemical process at issue was well understood and the practice of monitoring the process variables and using alarm limits was well known, there was no "inventive concept" in the claimed application of the formula. 437 U.S. at 594. All that was new was the equation, which was not enough to make the claimed invention patent eligible.

## CONCLUSION

The District Court's judgment should be reversed.


Respectfully submitted,

*/s/ Eric W. Buether*
Eric W. Buether
BUETHER JOE & CARPENTER, LLC
1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:  (214) 466-1272
Facsimile:   (214) 635-1828
Eric.Buether@BJCIPLaw.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on September 25, 2014, by electronic means using the CM/ECF System, which will serve via email notice of such filing to any of the following counsel registered as CM/ECF users:

J. Christopher Carraway
Norman Andrew Sfeir
KLARQUIST SPARKMAN, LLP
One World Trade Center
121 SW Salmon Street
Portland, OR  97204

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six (6) paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

September 25, 2014

/s/ Eric W. Buether
Eric W. Buether

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e) in that it contains no more than 12,688 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) in that it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman type.

*/s/ Eric W. Buether*
Eric W. Buether

**ADDENDUM**

# TABLE OF CONTENTS

**JUDGMENTS AND ORDERS APPEALED FROM**

Opinion and Order dated 07/08/14 ....................................................................A001

Judgment dated 07/08/14 .................................................................................A031

**PATENTS-IN-SUIT**

U.S. Patent No. 6,585,516.................................................................................A043

**OTHER DOCUMENTS**

Docket Sheet for *DietGoal Innovations LLC v. Bravo Media LLC*
        *(Division of NBC Universal Media, LLC)*; C.A. No. 1:13-cv-08391;
        In the U.S. District Court for the Southern District of New York ...........A061

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                               :

DIETGOAL INNOVATIONS LLC,               :

                                :        13 Civ. 8391 (PAE)

                         Plaintiff,    :

                                :       OPINION & ORDER

               -v-                   :

                                :

BRAVO MEDIA LLC (DIVISION OF NBC  :
UNIVERSAL MEDIA, LLC),          :

                                :

                       Defendant.  :

                                :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

     This is one of several patent-infringement actions brought by Plaintiff DietGoal

Innovations LLC ("DietGoal") against various defendants, concerning alleged infringement on

DietGoal's '516 Patent, which claims a computerized method and system for diet-related

behavior analysis, training, and planning. Before the Court now are two motions for summary

judgment filed by defendant Bravo Media LLC ("Bravo"): one on the ground that the '516

Patent is drawn to patent-ineligible subject matter, and thus is invalid under § 101 of the Patent

Act, 35 U.S.C. § 101; and the other on the ground that Bravo did not infringe on the '516 patent.

For the reasons that follow, the '516 patent claims the abstract idea of meal planning, and thus is

invalid under § 101. Bravo's motion for summary judgment on that ground is, therefore,

granted.

I.      **Background**[1]

    A.      **The Parties**

DietGoal is a limited liability company based in Austin, Texas, which, *inter alia*, buys

and holds the rights to patents.  Am. Compl. ¶ 1.  Relevant here, DietGoal "is the exclusive

licensee of the '516 patent and possesses all rights to sue for and recover all past, present and

future damages for infringement of the '516 patent."  *Id.* ¶ 8.

    Bravo is a division of NBC Universal, a media company incorporated under the laws of

Delaware, with its principal place of business in New York.  *Id.* ¶ 2.  Bravo operates a television

station by the same name, which features original programming, including cooking competition

shows such as "Top Chef."  Bravo also operates a website, http://www.bravotv.com, which at

one time contained a user interface that allowed visitors to search for recipes featured on Bravo

television shows, http://bravotv.com/foodies/recipes.  *See* Bravo § 112 56.1 ¶ 21.

    B.      **The '516 Patent**

U.S. Patent No. 6,585,516, entitled "Method and System for Computerized Visual

Behavior Analysis, Training, and Planning," was originally issued by the U.S. Patent and

Trademark Office (the "PTO") to inventor Oliver Alabaster on July 1, 2003.  Dkt. 130 Ex. 1 (the

"'516 Patent").  The '516 Patent claims "[a] system and method for computerized visual

behavior analysis, training, and planning," for the purpose of modifying diet behavior.  As

---

[1] In ruling on these motions for summary judgment, which could equally validly have been styled
motions for judgment on the pleadings, the Court considered: the Amended Complaint (Dkt.
111) ("Am. Compl."); Defendant Bravo Media LLC's Local Civil Rule 56.1 Statement in
Support of its Motion for Summary Judgment of Non-Infringement and Invalidity under 35
U.S.C. § 112 (Dkt. 124) ("Bravo § 112 56.1"); Defendant Bravo Media LLC's Local Civil Rule
56.1 Statement in Support of its Motion for Summary Judgment of Non-Infringement and
Invalidity under 35 U.S.C. § 101 (Dkt. 129) ("Bravo § 101 56.1"); Plaintiff's Opposition to
Defendant's Statement of Material Facts Pursuant to Local Rule 56.1 (Dkt. 134) ("DietGoal 56.1
Opp."); and other documents as cited.

originally issued, the '516 Patent recited four independent claims (Claims 1, 2, 12, and 13) and 14 dependent claims (Claims 3–11 and 14–18).  *See id.*; *see also* Bravo § 112 56.1 ¶¶ 2, 3.  On October 2, 2013, the PTO issued a reexamination certificate for the '516 Patent, which confirmed the patentability of Claims 1–18 of the '516 Patent and added new Claims 19–61.[2] *See* '516 Patent; Bravo § 112 56.1 ¶ 20.

> Specifically, the system claims (Claims 1 and 2) of the '516 Patent disclose:
>
> 1. A system of computerized meal planning, comprising:
> a User Interface;
> a Database of food objects organizable into meals; and
> at least one Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal.
>
> 2. A system of computerized meal planning, comprising:
> a User Interface;
> a Database of food objects; and
> a Meal Builder, which displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals.

The "summary of the invention" portion of the '516 Patent elaborates that the system "include[s] a User Interface (UI), a Meal Database, a Food Database, Picture Menus, and a Meal Builder."  The User Interface can "receive commands from the user and display results to the user from the Picture Menus and Meal Builder."  The Meal and Food Databases contain "pre-set meals comprising combinations of foods that conform to predetermined characteristics," which can be modified according to the user's preferences and tendencies.  The Picture Menus, which "display on the User Interface meals from the Database," allow the user to "mix and match [meals to] meet customized eating goals."  Then, using the Meal Builder, users can "change [those meals] and view the meals' impact on customized eating goals."  In other words, the Meal

---

[2] The reexamination certificate lists Oliver Alabaster as inventor and DietGoal as assignee of the '516 Patent.  *See id*.

Builder "can be a scoring system that allows the user to view, in real time, the impact of food choices on customized eating goals, and the accumulated impact on daily nutrition allowance made by saved meals and snacks throughout the day."

> The method claims (Claims 12 and 13) disclose:

> 12. A method of computerized planning that can influence behavior, comprising:
> preparing a Database of food objects;
> allowing a user to choose meals from one or more Picture Menus, which display on a User Interface meals comprised from the food objects from the Database that the user can mix and match to meet customized eating goals, for a particular amount of time; and
> allowing a user to save the meals.

> 13. A method of computerized planning that can influence behavior, comprising:
> preparing a Database of food objects;
> allowing the user to decide whether or not to change one or more meals comprising food objects; and
> if the user decides to change one or more of the meals, allowing the user to change the meals using a Meal Builder, which displays on the User Interface the food objects from the meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals.

> The "method" of computerized meal planning, as elaborated in the Patent, "can include the following steps": "First, the Meal Database and Food Database can be prepared. Second, the user can choose meals for a particular day. Third, the user can decide whether or not to change one or more of the meals he has chosen for the particular day. If the user decides to change his chosen meals, the user can edit or create new meals using the Meal Builder. If the user decides not to change his choices, or after the user changes his choices, the user can save the meals for the particular day."

### C.    Procedural History

On June 13, 2012, DietGoal commenced this action in the Eastern District of Texas. Dkt. 1. It alleged that Bravo infringed on one or more claims of the '516 Patent, as well as on one or more claims in the reexamination certificate relating to the '516 Patent, in violation of 35 U.S.C.

4

§ 271, by making and/or using a computerized meal planning interface and meal builder function on its website, http://bravotv.com/foodies/recipes. *See id.* At the time, this was one of more than 22 cases that DietGoal had filed in five districts alleging infringement of the '516 Patent.

On September 17, 2012, Bravo moved to transfer this action to this District. Dkt. 20. On April 9, 2013, the action was transferred instead to the Eastern District of Virginia. Dkt. 62. On May 2, 2013, Bravo again moved to transfer to this District, Dkt. 67; the motion was granted on November 19, 2013, Dkt. 92. On January 22, 2014, this Court held an initial pretrial conference and entered a civil case management plan and scheduling order. Dkt. 109. On January 31, 2014, DietGoal filed an Amended Complaint. Dkt. 111 ("Am. Compl."). On February 3, 2014, Bravo filed an Amended Answer and Counterclaims to include defenses that arose as a result of reexamination while the case was stayed in Virginia—namely, inequitable conduct and patent misuse. Dkt. 112. On February 19, 2014, the Panel on Multidistrict Litigation denied the motion to centralize the various pending actions into a single litigation. Dkt. 113.

On February 25, 2014, the Court granted Bravo's request to file two separate summary judgment motions on two discrete grounds: one on the ground of non-infringement, *i.e.*, that the '516 Patent cannot be construed to encompass a system in which the user's computer accesses the database of "food objects" via a network such as the Internet, and thus Bravo's website could not have infringed; and the other on the ground of invalidity, *i.e.*, that the '516 Patent is drawn to patent-ineligible subject matter under § 101 of the Patent Act because it claims an "abstract idea" or "mental concept." Dkt. 117.

On March 7, 2014, Bravo moved for summary judgment on the ground of non-infringement, Dkt. 120, and filed a supporting memorandum of law, Dkt. 121 ("Bravo § 112 Br."). On May 19, 2014, Bravo moved for summary judgment on the ground of patent

invalidity, Dkt. 127, and filed a supporting memorandum of law, Dkt. 128 ("Bravo § 101 Br.").

On March 24, 2014, DietGoal filed its memorandum of law opposing Bravo's first motion. Dkt.

131 ("DietGoal § 112 Br."). On April 8, 2014, DietGoal filed its memorandum of law opposing

Bravo's second motion. Dkt. 139 ("DietGoal § 101 Br."). On April 3 and 16, 2014,

respectively, Bravo submitted its reply memoranda. Dkt. 135, 141. On May 20, 2014, the Court

held argument.

## II.      Applicable Legal Standards

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a

question of material fact. In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d

Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To survive a summary judgment motion, the opposing party must establish a genuine

issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1);

*see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere

speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes

over "facts that might affect the outcome of the suit under the governing law" will preclude a

grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

determining whether there are genuine issues of material fact, the Court is "required to resolve

all ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III. Discussion

In its summary judgment motions, Bravo argues that the '516 Patent is invalid under § 101 of the Patent Act because its claims are drawn to patent-ineligible subject matter; and that even if the '516 Patent is valid under § 101, Bravo did not infringe, because the Patent, properly construed, does not cover network-based systems such as Bravo's. The Court agrees that the '516 Patent claims an abstract idea or mental concept, and thus is invalid under § 101. Accordingly, the Court need not reach Bravo's alternative ground for summary judgment.

### A. Section 101 of the Patent Act

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry[.]" *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008) ("*Bilski I*"), *affirmed by Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218 (2010) ("*Bilski II*"). If a claim is not drawn to patent-eligible subject matter, it "must be rejected even if it meets all of the other legal requirements of patentability." *Id.* The determination of whether a claim is drawn to patent-eligible subject matter is a "pure question of law." *Lumen View Tech. v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 204 (S.D.N.Y. 2013); *see also Bilski I*, 545 F.3d at 951 (patent validity under § 101 is an "issue of law"). Under the Patent Act, all patents are "presumed valid," and "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) [is] presumed valid independently of the validity of other claims." 35 U.S.C. § 282(a). "The party challenging the validity of a patent bears the burden of proving invalidity by clear and convincing evidence." *Lumen View*, 984 F. Supp. 2d at 194; *see also* 35 U.S.C. § 282(a) ("The burden of establishing invalidity of a patent or any claim thereof . . . rest[s] on the party asserting such invalidity.").

Section 101 defines the categories of inventions eligible for patent protection. It

provides:

> Whoever invents or discovers any new and useful process, machine, manufacture,
> or composition of matter, or any new and useful improvement thereof, may obtain
> a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. Section 101 thus "recites four categories of patent-eligible subject matter:

processes, machines, manufactures, and compositions of matter." *Bilski I*, 545 F.3d at 951. The

Supreme Court has long held that there are "three specific exceptions to § 101's broad patent-

eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Bilski II*, 130 S.

Ct. at 3225 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) ("*Chakrabarty*")).

Although absent from the text of § 101, "these exceptions are . . . consistent with the notion that

a patentable process must be 'new and useful.'" *Id.* The Court has construed § 101 and its

predecessors in this manner for 150 years. *See Alice Corp. Pty. Ltd. v. CLS Bank Internt'l*, 573

U.S. ___ (2014) (slip op., at 5).

As the Court recently made clear, "the concern that drives this exclusionary principle [i]s

one of pre-emption." *Id.*; *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.

Ct. 1289, 1294 (2012) (process not patent-eligible because "upholding the patents would risk

disproportionately tying up the use of the underlying natural laws, inhibiting their use in the

making of further discoveries"); *Bilski II*, 130 S. Ct. at 3231 (concept not patent-eligible because

allowing patent "would pre-empt use of this approach in all fields, and would effectively grant a

monopoly over an abstract idea"). "Phenomena of nature, though just discovered, mental

processes, and abstract intellectual concepts are not patentable, as they are the basic tools of

scientific and technological work," *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) ("*Benson*");

and "monopolization of those tools through the grant of a patent might tend to impede innovation

more than it would tend to promote it," thereby undermining the Patent Act's purpose, *Mayo*,

132 S. Ct. at 1293; *accord Alice*, 573 U.S. at ___ (slip op., at 6).  As the Court explained in

*Chakrabarty*:

> [A] new mineral discovered in the earth or a new plant found in the wild is not
> patentable subject matter.  Likewise, Einstein could not patent his celebrated law
> that $E = mc^2$; nor could Newton have patented the law of gravity.  Such discoveries
> are manifestations of . . . nature, free to all men and reserved exclusively to none.

447 U.S. at 309 (internal quotation marks and citation omitted) (second alteration in

*Chakrabarty*).

On the other hand, the Court has also cautioned against too broadly interpreting the § 101

exceptions, "[f]or all inventions at some level embody, use, reflect, rest upon, or apply laws of

nature, natural phenomena, or abstract ideas."  *Mayo*, 132 S. Ct. at 1293; *see id.* ("The Court has

recognized . . . that too broad an interpretation of this exclusionary principle could eviscerate

patent law."); *see also Alice*, 573 U.S. at ___ (slip op., at 6) ("[W]e tread carefully in construing

this exclusionary principle lest it swallow all of patent law.").  Although laws of nature, natural

phenomena, and abstract ideas are themselves not patentable, the Court has made clear that

"'[a]pplications' of such concepts 'to a new and useful end' . . . remain eligible for patent

protection."  *Alice*, 573 U.S. at ___ (slip op., at 6) (quoting *Benson*, 409 U.S. at 67) (other

brackets omitted).  Accordingly, in applying the § 101 exceptions, courts "must distinguish

between patents that claim the building blocks of human ingenuity and those that integrate the

building blocks into something more, . . . thereby transforming them into a patent-eligible

invention."  *Id.* (internal quotation marks, citations, and brackets omitted).

"Courts have had some difficulty defining with precision the line between an

impermissibly abstract idea and a patentable process."  *Lumen View*, 984 F. Supp. 2d at 195; *see*

*also Parker v. Flook*, 437 U.S. 584, 589 (1978) ("*Flook*") ("The line between a patentable

'process' and an unpatentable 'principle' is not always clear."). In two recent cases, however—

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.* and, particularly, *Alice*

*Corporation Pty. Ltd. v. CLS Bank International*, decided last month—the Supreme Court

clarified the framework courts are to use "for distinguishing patents that claim laws of nature,

natural phenomena, and abstract ideas from those that claim patent-eligible applications of those

concepts."[3] *Alice*, 573 U.S. at ___ (slip op., at 7).

Before setting out that framework and applying it to the '516 Patent, it is first useful to

review the line of Supreme Court cases leading up to and including *Alice*, because these cases

give context to the two recent decisions, and provide guidance in differentiating between eligible

and ineligible patents.

### B. The Supreme Court's Jurisprudence as to Unpatentable Abstract Ideas

In *Gottschalk v. Benson*, 409 U.S. 63 (1972), the Court invalidated a patent application

for a method for programming a general-purpose computer to convert binary-coded decimal

("BCD") numerals into pure binary code, on the ground that it claimed nothing more than a

patent-ineligible scientific truth or law of nature rather than a patentable process. *Id.* at 64, 72–

73. The Court noted that a "novel and useful structure created with the aid of knowledge of

scientific truth" could be patent-eligible. *Id.* at 67 (internal quotation marks and citation

omitted). However, the Court determined, the patent before it claimed nothing more than a

mathematical formula implemented on a generic computer, and thus was invalid under § 101.

*See id.* at 68. The Court reasoned that the claims were "so abstract and sweeping as to cover

---

[3] Although Bravo's summary judgment motions were briefed and argued before the Court's
decision in *Alice*, each party submitted a letter outlining its views as to the decision's impact on
the § 101 analysis here. *See* Dkt. 146 ("DietGoal *Alice* Letter"); Dkt. 147 ("Bravo *Alice* Letter").
Both parties agreed that the *Mayo/Alice* test is the appropriate framework for analyzing patent
eligibility under § 101. The Court considered those helpful letters in reaching its decision.

both known and unknown uses of the BCD to pure binary conversion"; allowing the patent "would wholly pre-empt the mathematical formula and in practical effect would be a patent on the algorithm itself." *Id.* at 68–69, 72. Moreover, "[t]he mathematical formula involved here has no substantial practical application except in connection with a digital computer." *Id.* at 71. This, the Court explained, would be tantamount to a patent on an idea itself, and could not be maintained under the Patent Act. *See id.* at 71–72.

Shortly thereafter, in *Parker v. Flook*, 437 U.S. 584 (1978), the Court considered a patent claiming a method for updating "alarm limits" for operating conditions during the catalytic conversion process, such as temperature, pressure, and flow rates. *Id.* at 585. Applying *Benson*, the Court held that the claimed process was directed at a non-patentable mathematical formula. The Court explained that "[t]he only difference between the conventional methods of changing alarm limits and that described in [the] application . . . [is] the mathematical algorithm or formula." *Id.* at 586–87. Thus, "the claims did not describe a discovery that was eligible for patent protection." *Id.* at 587; *see also id.* at 594–95 ("Here it is absolutely clear that respondent's application contains no claim of patentable invention. . . . Respondent's application simply provides a new and presumably better method for calculating alarm limit values."). In so holding, the Court rejected the petitioner's argument "that the presence of specific 'post-solution' activity—the adjustment of the alarm limit to the figure computed according to the formula—distinguishes this case from *Benson* and makes his process patentable." *Id.* at 590. The Court reasoned that "post-solution activity, no matter how conventional or obvious in itself, can[not] transform an unpatentable principle into a patentable process." *Id.* To be patentable, "[t]he process itself, not merely the mathematical algorithm, must be new and useful." *Id.* at 591.

Then, in *Diamond v. Diehr*, 450 U.S. 175 (1981), the Court applied *Benson* and *Flook* to uphold a patent claiming a "process for curing synthetic rubber which includes in several of its steps the use of a mathematical formula and a programmed digital computer." *Id.* at 177. Although, like the patents invalidated in *Benson* and *Flook*, the patent application in *Diehr* involved a well-known mathematical formula (the Arrhenius equation), the Court reasoned that, unlike in *Benson* and *Flook*, the claims in the *Diehr* patent "do not seek to pre-empt the use of that equation. Rather, they seek only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process," such as "installing rubber in a press, closing the mold, constantly determining the temperature of the mold, constantly recalculating the appropriate cure time through the use of the formula and a digital computer, and automatically opening the press at the proper time." *Id.* at 187. These additional steps rendered the claims patentable as "an *application* of a law of nature or mathematical formula to a known structure or process." *Id.* at 187–88. Although "Arrhenius' equation is not patentable in isolation," the Court explained, "when a process for curing rubber is devised which incorporates in it a more efficient solution of the equation, that process is at the very least not barred at the threshold by § 101." *Id.* at 187–88. The Court summarized its holdings as follows:

> A mathematical formula as such is not accorded the protection of our patent laws, *Gottschalk v. Benson*, 409 U.S. 63, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972), and this principle cannot be circumvented by attempting to limit the use of the formula to a particular technological environment. *Parker v. Flook*, 437 U.S. 584, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978). Similarly, insignificant post-solution activity will not transform an unpatentable principle into a patentable process. *Ibid.* To hold otherwise would allow a competent draftsman to evade the recognized limitations on the type of subject matter eligible for patent protection. On the other hand, when a claim containing a mathematical formula implements or applies that formula in a structure or process which, when considered as a whole, is performing a function which the patent laws were designed to protect (*e.g.*, transforming or reducing an article to a different state or thing), then the claim satisfies the requirements of § 101.

12

*Id.* at 191–92 (footnotes omitted).

In *Bilski v. Kappos*, decided in 2010, the Court reaffirmed the scope of the § 101 exceptions, as illuminated by its precedents. At issue in *Bilski* was a patent that claimed "the concept of hedging risk and the application of that concept to energy markets." *Bilski II*, 130 S. Ct. at 3229. An *en banc* panel of the Federal Circuit—which produced five splintered opinions in the case—had ruled that the claimed process was patent-ineligible because it failed the so-called "machine-or-transformation test,"[4] which that court characterized as the "'sole test governing § 101 analyses,'" and thus the definitive "'test for determining patent eligibility of a process under § 101.'" *Id.* at 3224 (quoting *Bilski I*, 545 F.3d at 955). The Supreme Court affirmed the Federal Circuit's bottom-line result, but rejected the court's imposition of a definitive test for determining the patentability of a process under § 101, on the ground that such a test imposed an atextual and unwarranted limitation on the Patent Act. *See id.* at 3226–27. The Court held instead that the scope of a patent-eligible "process" under § 101 could be found by "pointing to the definition of that term provided in § 100(b) and looking to the guideposts in *Benson*, *Flook*, and *Diehr*." *Id.* at 3231.

Analyzing those precedents and applying them to the claimed process at issue, the *Bilski* Court held that "[t]he concept of hedging, described in claim 1 and reduced to a mathematical formula in claim 4, is an unpatentable abstract idea, just like the algorithms at issue in *Benson* and *Flook*. Allowing petitioners to patent risk hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Id.* at 3231. The remaining claims, moreover, are merely "broad examples of how hedging can be used in

---

[4] The Federal Circuit described the machine-or-transformation test as follows: "A claimed process is surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski I*, 545 F.3d at 954.

13

commodities and energy markets," and "*Flook* established that limiting an abstract idea to one field of use or adding token postsolution components did not make the concept patentable." *Id.* Accordingly, the Court held that the claimed process was ineligible for patent protection.

Two years later, in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Court drew a line between patent-ineligible concepts and patent-eligible applications of those concepts. At issue in *Mayo* were "patent claims covering processes that help doctors who use thiopurine drugs to treat patients with autoimmune diseases determine whether a given dosage level is too low or too high. The claims purport[ed] to apply natural laws describing the relationships between the concentration in the blood of certain thiopurine metabolites and the likelihood that the drug dosage will be ineffective or induce harmful side-effects." *Id.* at 1294. Drawing on *Benson*, *Flook*, *Diehr*, and *Bilski*, the *Mayo* Court reaffirmed that "a process is not unpatentable simply because it contains a law of nature or a mathematical algorithm." *Id.* at 1293 (internal quotation marks and citations omitted). The Court explained that although a law of nature or mathematical formula itself is not patent-eligible, "'an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.'" *Id.* (quoting *Diehr*, 450 U.S. at 187). However, the Court emphasized, "to transform an unpatentable law of nature into a patent-eligible *application* of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294.

The Court then set out a two-part framework for distinguishing between patent-ineligible concepts (*i.e.*, laws of nature, natural phenomena, and abstract ideas) and patent-eligible applications of those concepts: First, a court must determine whether the claims are directed toward laws of nature, natural phenomena, or abstract ideas. If so, the court must ask if there is

something else in the claims—an "inventive concept"—"sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 1294. Applying that framework, the Court determined at step one that the claimed process was the equivalent of a law of nature, "namely, relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a thiopurine drug will prove ineffective or cause harm." *Id.* at 1296. Moreover, the Court reasoned, "upholding the patents would risk disproportionately tying up the use of the underlying natural laws, inhibiting their use in the making of further discoveries." *Id.* at 1294. Accordingly, the Court held that the patent was directed to a patent-ineligible concept. Proceeding to step two, the Court held that the combination of steps recited in the patent application was not enough to render the claimed process a novel *application* of the law of nature. It reasoned that "the steps in the claimed processes (apart from the natural laws themselves) involve well-understood, routine, conventional activity previously engaged in by researchers in the field," *id.*, and "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable," *id.* at 1300. Accordingly, the Court held that the claimed process was patent-ineligible.

Most recently, in *Alice Corporation Pty. Ltd. v. CLS Bank International*, 573 U.S. ___ (2014), the Court considered a patent claiming "a method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk," in which "[t]he intermediary creates and updates 'shadow' records to reflect the value of each party's actual accounts held at 'exchange institutions,' thereby permitting only those transactions for which the parties have sufficient resources." *Id.* at ___ (slip op., at 9). To determine whether the patent claimed a patent-eligible process, the Court applied the two-step framework articulated in *Mayo*.

15

At step one, the Court held that "[i]t follows from our prior cases, and *Bilski* in particular, that the claims at issue here are directed to an abstract idea." *Id.* The Court explained that "[l]ike the risk hedging in *Bilski*, the concept of intermediated settlement is 'a fundamental economic practice long prevalent in our system of commerce'" and "[t]he use of a third-party intermediary . . . is also a building block of the modern economy"; "[t]hus, intermediated settlement, like hedging, is an 'abstract idea' beyond the scope of § 101." *Id.* In so holding, the Court emphasized that to constitute an "abstract idea" under its jurisprudence, a claim need not be addressed to a "preexisting, fundamental truth," such as a law of nature or mathematical formula; as in *Bilski*, a "method of organizing human activity" may be impermissibly abstract if it is grounded in a fundamental practice. *Id.* at ___ (slip op., at 10). Turning to the second step in the *Mayo* framework, the Court held that "the method claims, which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention." *Id.* In so holding, the Court emphasized that "[t]he introduction of a computer into the claims does not alter the analysis at *Mayo* step two." *Id.* at ___ (slip op., at 11).

### C. Applying the *Mayo*/*Alice* Framework to the '516 Patent

Bravo argues that the claims of the '516 Patent fall outside § 101 because they are drawn to the abstract idea or mental concept of meal planning to meet a person's nutritional goals.[5]

---

[5] DietGoal argues that the '516 Patent claims a patentable "machine" within the meaning of § 101 because its invention is "computer-implemented" and "a computer is, without question, a machine." DietGoal § 101 Br. 12–13. However, the '516 Patent does not claim a computer, or a machine of any type, as its invention. Rather, the independent claims of the '516 Patent recite a "system" and a "method" of computerized meal planning, which is to be implemented on an *existing* general purpose computer. These claims clearly contemplate a process, not a machine. *See* 35 U.S.C. § 100 (the term "process" within the meaning of the Patent Act "means a process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material"); *see also Lumen View*, 984 F. Supp. 2d at 194 (holding that patent's claimed "method for facilitating evaluation" for the purpose of matchmaking "plainly is a process"). Accordingly, the Court treats the '516 Patent as asserting process claims. In any

DietGoal argues that the limitations on the claims—namely, the display functionality required by the "Picture Menus" and "Meal Builder" elements—are sufficient to restrict the scope of the claims to a patent-eligible application. In determining whether the '516 Patent in fact claims a patent-ineligible abstract idea or a patent-eligible application of that idea, the Court applies the two-step framework articulated by the Supreme Court in *Mayo* and reaffirmed in *Alice*, guided by the Court's abstract idea jurisprudence dating back to *Benson*.

### 1. Are the claims directed toward a patent-ineligible concept?

First, the Court must determine whether the claims of the '516 Patent are directed toward a patent-ineligible concept. *See Alice*, 573 U.S. at ___ (slip op., at 7).

Using the Supreme Court's precedents on patent-eligibility as "guideposts," it is clear that the claims of the '516 Patent are directed to an impermissible abstract idea or mental concept.[6] The '516 Patent claims a process for computerized meal planning; in essence, it

---

event "[r]egardless of what statutory category ('process, machine, manufacture, or composition of matter,' 35 U.S.C. § 101) a claim's language is crafted to literally invoke, we look to the underlying invention for patent-eligibility purposes." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011) (holding that, regardless of form, claim directed to a "computer readable medium" should be treated the same as parallel process claims for the purposes of the § 101 analysis). For the reasons discussed at length below, the system and method claims of the '516 Patent—regardless of whether characterized as a "process" or "machine"—are drawn to patent-ineligible subject matter under § 101.

[6] The Federal Circuit treats "mental processes" as a subcategory of "abstract ideas." *See, e.g.*, *CyberSource*, 654 F.3d at 1371 (invalidating patent on ground that it claimed an "unpatentable mental process—a subcategory of unpatentable abstract ideas"). The Supreme Court, on the other hand, has sometimes identified "mental processes" as its own distinct category of unpatentable subject matter. *Compare Gottschalk*, 409 U.S. at 67 ("Phenomena of nature, though just discovered, *mental processes*, and abstract intellectual concepts are not patentable . . . .") (emphasis added); *Mayo*, 132 S. Ct. at 1293 (same); *with Diehr*, 450 U.S. at 185 ("Excluded from such patent protection are laws of nature, natural phenomena, and abstract ideas."); *Bilski II*, 130 S. Ct. at 3225 (same). Because the '516 Patent is invalid under either formulation, the Court need not decide whether mental processes constitutes its own class of patent-ineligible subject matter.

17

recites a computer program that allows the user to create meals from a database of food objects according to his or her preferences and dietary goals, to change those meals by adding or subtracting food objects, and to view the dietary impact of changes to those meals on a visual display. DietGoal attempts to dress up the claims as a computerized process for "behavior analysis" and "training." But the claims of the '516 Patent recite nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences. Meal-planning is surely a "long prevalent" practice, *Bilski II*, 130 S. Ct. at 3231 (internal quotation marks omitted). It is, by any reckoning, at least as longstanding as the economic practices of risk-hedging (invalidated in *Bilski*) and intermediated settlement (invalidated in *Alice*). If anything, it is more venerable: Although specific approaches to meal-planning have evolved as dietary knowledge has advanced and social mores have changed, humans have assuredly engaged at least in rudimentary meal-planning "for millennia." *Lumen View*, 984 F. Supp. 2d at 200 (finding relevant, in invalidating patent claiming computerized method for facilitating matchmaking, that the claimed process was nothing more than mathematical manifestation of a fundamental process, which matchmakers had been doing "all through human history"). Sustaining DietGoal's patent would thus "effectively grant a monopoly over an abstract idea." *Bilski II*, 130 S. Ct. at 3231.

Moreover, like the claims invalidated in *Benson* and *Flook*, the claims of the '516 Patent recite steps that, although computer-implemented by virtue of the patent application, could "be performed in the human mind, or by a human using a pen and paper," and "a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101." *Cybersource*, 654 F.3d at 1372, 1373. In *Benson*, the Court held that the computerized method claimed in the patent for converting BCD numerals into pure binary code was directed

toward an impermissible abstract idea, in part because "[t]he conversion of BCD numerals to pure binary numerals can be done mentally."  409 U.S. at 66, 67.  Similarly, in *Flook*, the Court held that a well-known method for calculating alarm limits could be done using "pencil and paper," and thus the patent claiming computerized application of that method was outside the scope of § 101.  437 U.S. at 586.

Here, the '516 Patent claims a computerized method of selecting meals that align with the user's individual preferences and nutritional goals (for example, by planning out dinners for the week that accord with a low-calorie diet) and calculating the dietary impact of the addition or subtraction of certain foods (for example, by determining how many calories you will save by swapping out French fries for broccoli).  These are conventional and quotidian tasks.  A person can perform them without the aid of any particular or structured method and without the need of any technology.  Indeed, dieters planning their meals and calculating their daily caloric intake make such determinations regularly, whether acting systematically or intuitively.  So too do parents planning meals for their children, so as to meet health or nutritional goals.  The '516 Patent does not recite any specialized formula or method for implementing the "well known" process of meal planning; at most, it merely "provides a new and presumably better method" for calculating and visualizing the dietary impact of certain food choices.  *Flook*, 437 U.S. at 594. This is not the kind of "discover[y]" that § 101 was designed to protect.  *Id.* at 593; *see, e.g.*, *Cybersource*, 654 F.3d at 1373 (computerized method for collecting and organizing credit card transaction data invalid under § 101 because claimed method "can be performed by human thought alone").

19

## 2. Are there additional elements sufficient to transform the nature of the claim?

Having determined that the method claims at issue are directed at an abstract idea, the Court next considers whether the claims or elements of the claim contain an "inventive concept" capable of transforming the abstract idea into a patent-eligible application of that idea. *See Alice*, 573 U.S. at ___ (slip op., at 11).

DietGoal principally contends that the computer-implementation of the steps of the '516 Patent—specifically, the computerized process by which users can create meals using the Picture Menus and view the nutritional impact of changes to those meals using the Meal Builder— renders its claims patentable. *See* DietGoal § 101 Br. at 16 ("The fact that all of the claims of the '516 Patent require computerization refutes Bravo's assertion that the claims are not patent eligible because they claim only a mental process."); *see also* DietGoal *Alice* Letter at 4 ("The 'Picture Menus' limitation is central to the invention's objective of providing visual techniques for training individuals to modify dietary behavior. . . . [T]he 'Me[al] Builder' limitation is central to the invention's objective to train people to understand and immediately recognize the significance of the impact of customized meals on dietary goals.") (emphasis omitted).

The Supreme Court's abstract-ideas jurisprudence, including the recent decision in *Alice*, however, rejects the idea that "the mere recitation of a generic computer can[] transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at ___ (slip op., at 13). As the Court has explained, the abstract-ideas exception to § 101 "cannot be circumvented by attempting to limit the use of the [idea] to a particular technological environment." *Diehr*, 450 U.S. at 191. And an unpatentable concept cannot be transformed into a patent-eligible application simply by stating the abstract idea and "adding the words 'apply it.'" *Alice*, 573 U.S. at ___ (slip op., at 13) (quoting *Mayo*, 132 S. Ct. at 1294). Instead, there must be

"additional features" that "provide practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself." *Mayo*, 132 S. Ct. at 1297. As the Court has further explained, "[g]iven the ubiquity of computers, . . . wholly generic computer implementation is not generally the sort of 'additional featur[e]'" that can provide such "'practical assurance.'" *Alice*, 573 U.S. at ___ (slip op., at 13) (quoting *Mayo*, 132 S. Ct. at 1297) (second alteration in *Alice*); *see also SmartGene, Inc. v. Advanced Biological Labs., SA*, 55 F. App'x 950, 954 (Fed. Cir. 2014) ("[S]ection 101 covers neither 'mental processes'— associated with or as part of a category of 'abstract ideas'—nor processes that merely invoke a computer and its basic functionality for implementing such mental processes, without specifying even arguably new physical components or specifying processes defined other than by the mentally performable steps."); *CyberSource*, 654 F.3d at 1375 ("[T]he basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium.").

*Alice*, in fact, disposes of DietGoal's argument. There, the petitioner argued that its claims to a method for mitigating settlement risk were patent-eligible because each step required computer implementation. The Supreme Court squarely rejected that argument. *See* 573 U.S. at ___ (slip op., at 11) ("The introduction of a computer into the claims does not alter the analysis at *Mayo* step two."). At step two of the *Mayo* analysis, the Court explained, "the relevant question is whether the claims . . . do more than simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer." *Id.* at ___ (slip op., at 14). The representative method claim at issue in *Alice* recited the following steps:

> (1) "creating" shadow records for each counterparty to a transaction; (2) "obtaining" start-of-day balances based on the parties' real-world accounts at

21

exchange institutions; (3) "adjusting" the shadow records as transactions are
entered, allowing only those transactions for which the parties have sufficient
resources; and (4) issuing irrevocable end-of-day instructions to the exchange
institutions to carry out the permitted transactions.

*Id.* Analyzing each element of the method claim separately, the Court held that "the function performed by the computer at each step of the process is '[p]urely conventional,'" and thus could not qualify as an "inventive concept." *Id.* at ___ (slip op., at 15) (quoting *Mayo*, 132 S. Ct. at 1299). The Court explained that using a computer "to create and maintain 'shadow accounts'" is commensurate with "electronic recordkeeping—one of the most basic functions of a computer"; likewise "use of a computer to obtain data, adjust account balances, and issue automated instructions" amounts to "'well-understood, routine, conventional activit[ies]' previously known to the industry." *Id.* (quoting *Mayo*, 132 S. Ct. at 1299) (brackets in *Alice*). Accordingly, "each step does no more than require a generic computer to perform generic computer functions." *Id.* The Court then considered the computerized steps as an "ordered combination," and held that considering the claims as a whole "'add[s] nothing . . . that is not already present when the steps are considered separately.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1298) (second alteration in *Alice*) (other brackets omitted); *see also id.* ("Viewed as a whole, petitioner's method claims simply recite the concept of intermediated settlement as performed by a generic computer."). "Under our precedents," the Court explained, "that is not 'enough' to transform an abstract idea into a patent-eligible invention." *Id.* at ___ (slip op., at 15, 16) (citation and emphasis omitted).

The pre-*Alice* decision from this District in *Lumen View Tech. v. Findthebest.com, Inc.* (Cote, J.), on which the briefs of the parties here focused, anticipated this outcome. It reached the conclusion that the patent at issue was not made eligible by the addition of an all-purpose computer. Because the facts there closely parallel those here, and because the Court finds the reasoning in *Lumen View* persuasive, the Court reviews the *Lumen View* decision here.

22

At issue in *Lumen View* was a patent that claimed a "method of matchmaking whereby one or more parties on each side input attribute preferences and intensity of preference data and then a computer matches the parties on each side by a 'closeness-of-fit' process and produces a list" (the '073 patent). *Lumen View*, 984 F. Supp. 2d at 192. Judge Cote there held that, under *Benson*, *Flook*, *Diehr*, and *Bilski*, the addition of a general-purpose computer is insufficient to transform a patent-ineligible abstract idea into a patent-eligible application of that concept. *See id.* at 200. Specifically, after determining that the claim was directed toward the abstract idea of matchmaking, Judge Cote considered whether the '073 patent contained an "inventive idea," and determined that it did not. She found that the method articulated in the patent was "merely a mathematical manifestation of the underlying process behind matchmaking: determining good matches"; in other words, "the computerization of a fundamental process that has occurred all through human history." *Id.* She found relevant that "the '073 patent does not disclose a specific *method* of using a computer to execute the abstract idea of matchmaking, it only claims the abstract concept of computerized matchmaking in a business or enterprise context." *Id.* Moreover, the computer does not "'facilitat[e] the process in a way that a person making calculations or computations could not.'" *Id.* (quoting *Bancorp Servs. L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), L.L.C.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012)). Accordingly, she held, the use of a computer did not provide a meaningful limitation on the abstract idea of matchmaking.

Having found the independent claim of the '073 (Claim 1) invalid, Judge Cote next examined the dependent claims, which relied on the computerized matchmaking process recited in Claim 1, and held that they too were invalid: "[N]one of the limitations materially limit Claim 1 such that they could survive independently even if Claim 1 were not invalidated"; they merely add "well-known . . . analysis techniques" to the abstract idea of matchmaking. *Id.* at 203

(alteration in original) (brackets omitted). Accordingly, the court held that the patent was invalid under §101.

The reasoning of *Alice* and *Lumen View* is dispositive here. The claims of the '516 Patent do no more than "simply instruct the practitioner to implement the abstract idea . . . on a generic computer"; they thus do not contain the requisite "inventive concept" necessary to limit the scope of the claims to a patent-eligible application. *Alice*, 573 U.S. at ___ (slip op., at 14). The Patent's method claims recite the following steps: (1) preparing a database of meals that meet the user's preferences; (2) choosing meals for a particular day from the Picture Menus; and (3) deciding whether or not to change one or more of the meals that the user has selected for that day, and, using the Meal Builder, allowing the user to visualize those changes and the resulting impact on his or her nutritional goals. Considering each element of the method claim separately, "the function performed by the computer at each step . . . is '[p]urely conventional.'" *Id.* at ___ (slip op., at 15) (quoting *Mayo*, 132 S. Ct. at 1299). Steps 1 and 2 involve creating customized lists by retrieving information from a stored database—one of the most basic functions of the generic computer. *See, e.g.*, *SmartGene*, 555 F. App'x at 954 (computerized claims that do "no more than call on a 'computing device,' with basic functionality for comparing stored and input data and rules, to do what doctors do routinely" not patent eligible). Step 3 likewise amounts to conventional computer tasks: manipulating data based on inputs from the user, making computations from stored data, and displaying the results on a visual display. *See Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338, 1344–45 (Fed. Cir. 2013) (computerized aspects of method claim directed to "generating tasks to be performed in an insurance organization," including a "data component that stores, retrieves and manipulates data"

and a client component that "transmits and receives data to/from the data component," insufficient to transform abstract idea into concrete application of that idea).

Although DietGoal contends that the display functionality is "highly particularized," DietGoal Alice Letter at 2, the claimed process could "be carried out in existing computers long in use, no new machinery being necessary," *Benson*, 409 U.S. at 67. Indeed, the steps required by the '516 Patent—preparing lists of food items, creating meals from those lists of food items, using known nutritional information to calculate the dietary impact of changes to those meals, and visually displaying the results—are far more "routine" and "conventional" than the computerized applications of the economic concepts invalidated in *Bilski* and *Alice*. These computerized elements, taken separately, do nothing to "transform" the nature of the claim from the mental process of meal planning into a novel method or unique application of that idea, and thus are insufficient to render the claims of the '516 Patent patent-eligible.

The outcome is no different when one considers the claims "as an ordered combination." That is because the claims of the '516 Patent, viewed as a whole, recite nothing more than "the concept of [meal planning] as performed by a generic computer." *Alice*, 573 U.S. at ___ (slip op., at 15). The Patent specifies that the user can choose preset meals and food items from the Databases, see those meals displayed using the Picture Menus, and change those meals on the Meal Builder, as well as visualize the impact of those changes. These steps, however, are insufficient to transform the abstract idea of meal planning into a patentable process. *See Mayo*, 132 S. Ct. at 1300 ("[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."). The addition of a computer to perform calculations, retrieve data, and visually display images is nothing more than "post-solution activity" that

cannot render the process patentable. *Flook*, 437 U.S. at 590. In sum, the addition of the computer here is not "'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at ___ (slip op., at 7) (quoting *Mayo*, 132 S. Ct. at 1294) (alteration in *Alice*). Accordingly, the '516 Patent does not recite a patent-eligible invention.

### 3.    The system and method claims are functionally equivalent

Having determined that the method claims recite a patent-ineligible abstract idea or mental concept, the Court next assesses the system claims.

The system claims of the '516 Patent (Claims 1 and 2) recite a system consisting of a User Interface; a Database of food objects "organizable into meals"; at least one Picture Menu, "which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal"; and a Meal Builder, "which displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals." Comparing the language of the system claims with that of the method claims, it is clear that these are functionally identical: "The only difference between the claims is the form in which they were drafted." *Bancorp Servs.*, 687 F.3d at 1277. Thus, they must be treated as equivalent for purposes of the § 101 analysis. *See id.* (affirming decision to treat similarly-worded system and method claims at issue as equivalent in the § 101 analysis); *cf. Diehr*, 450 U.S. 1057–58 ("In determining the eligibility of respondent's claimed process for patent protection under § 101, their claims must be considered as a whole."); *Flook*, 437 U.S. at 593 (rejecting argument for patentability that "would make the determination of patentable subject matter depend simply on the draftsman's art").

26

Taken in isolation, the system claims "add nothing of substance to the underlying abstract idea" of meal planning.  *Alice*, 573 U.S. at ___ (slip op., at 17).  They merely describe generic computer components that can be found on any general-purpose computer, such as a user interface, database, or visual display.  Even taken together with the limitations contained in the dependent claims, the system claims recite nothing more than "a handful of generic computer components configured to implement the same [abstract] idea" as the patent-ineligible method claims.  *Id.* at ___ (slip op., at 16).  Thus, the system claims are likewise patent ineligible under §101.  *See id.* at ___ (slip op., at 16, 17) ("the system claims are no different from the method claims in substance," and thus "they too are patent ineligible under § 101").

### 4.    Claim construction is not required

At argument, DietGoal contended that it would be improper for the Court to decide whether the '516 Patent is drawn to patent-eligible subject matter without first performing claim construction.  In essence, DietGoal requests that the Court refrain from deciding the validity of the '516 Patent until after it has performed claim construction.

Claim construction, however, "is not an inviolable prerequisite to a validity determination under § 101."  *Bancorp. Servs.*, 687 F.3d at 1273; *see, e.g.*, *Bilski II*, 130 S. Ct. at 3231 (finding subject matter ineligible for patent protection without claim construction).  Indeed in *Lumen View*, the court squarely rejected plaintiff's contention that claim construction is necessary before addressing the § 101 inquiry.  *See* 984 F. Supp. 2d at 205.  The court explained that "[w]hile claim construction may sometimes be helpful in resolving a Section 101 motion where detailed explication of the claims in a patent would reveal material legal issues," it is not required in every case.  *Id*.  With respect to the patent before it, the court determined that claim construction was unnecessary, reasoning that the patent's claims are "straightforward" and that

"[n]o components are opaque such that claim construction would be necessary to flush out its contours." *Id.* Moreover, the court determined that the § 101 inquiry with respect to those claims "encompasses only broad subject matter categories," and thus "claim construction is not necessary to reveal any material legal issues." *Id.* (internal quotation marks and citations omitted). Accordingly, the court determined that claim construction would not be a wise use of judicial resources. *See id.*

As in *Lumen View*, the claims of the '516 Patent are sufficiently "straightforward" that formal claim construction is not necessary to understand their content. *Id.* Nor would claim construction shed light on any dispositive legal issue; the computerized process disclosed in the '516 Patent is invalid under § 101, under any reasonable construction. Claim construction would not assist the Court in resolving the § 101 claim of invalidity.

In any event, even assuming the construction urged by DietGoal—the one articulated by the Eastern District of Texas in the parallel case *DietGoal Innovations LLC v. Kellan Restaurant Management Corp.*, No. 12 Civ. 761 (JRG) (RSP), 2014 WL 582994 (E.D. Tex. Feb. 13, 2014) ("*Kellan*"), *see, e.g.*, DietGoal § 101 Br. 5–6[7]—the subject matter claimed in the '516 Patent is still impermissibly abstract. In its claim construction ruling, the *Kellan* court held, *inter alia*, that all claims of the '516 Patent required the claimed system or method to be "computerized" or "computer implemented"; it found that "[t]he preamble use of 'computerize' [in each independent claim] gives the necessary life and meaning to these other claim terms that are indicative of a computerized system." *Id.* at *5. For the reasons discussed above, however, the

---

[7] On June 30, 2014, a court in this District adopted a claim construction substantially similar to that adopted in *Kellan*. *See DietGoal Innovations LLC v. Time, Inc.*, 13 Civ. 8381 (JSR), 2014 WL 2990237 (S.D.N.Y. June 30, 2014) ("*DietGoal v. Time*"). The court in *DietGoal v. Time*, however, was not presented with a challenge to the validity of the '516 Patent under § 101.

A028

computerized nature of the process does not save the '516 Patent from invalidity. Nothing in the *Kellan* court's claim construction alters, or is at odds with, the fact that the method recited in the '516 Patent can be performed by a human using pen and paper; application of the process to a generic computer does not add any meaningful limitation.

In arguing to the contrary, DietGoal seizes on a line from the *Kellan* court's ruling: "'There is no indication in the specification of the eating goals being merely a mental process.'" DietGoal § 101 Br. 5–6 (quoting *Kellan*, 2014 WL 582994, at *10). But this isolated language does not bear the freight that DietGoal assigns it. It does not reflect a determination by the *Kellan* court at odds with this Court's § 101 analysis. Notably, the *Kellan* court went on to state that "what is described as a 'customized' goal in the context of the intrinsic record as a whole is a *goal that is computer implemented[,] not merely a user's personal mental objective*." 2014 WL 582994, at *10 (emphasis added). The *Kellan* court thus, like this Court, read the process recited in the '516 Patent as merely allowing the user to implement his or her personalized dietary priorities on a computer, as opposed to having to do so mentally. That understanding does not alter—indeed it is fully consistent with—the foregoing § 101 analysis. Nor would the construction of any of the terms offered by DietGoal in its Joint Claim Construction submission alter that analysis. *See* Dkt. 144 Ex. 1. Thus, under any reasonable construction, including DietGoal's preferred construction, the claims of the '516 Patent are drawn to patent-ineligible subject matter. Accordingly, the '516 Patent is invalid under § 101.

## Conclusion

For the foregoing reasons, the '516 Patent is drawn to patent-ineligible subject matter. Bravo's motion for summary judgment is granted. The Clerk is directed to terminate all pending motions, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 8, 2014
       New York, New York

Case: 14-1631    Document: 18    Page: 97    Filed: 09/25/2014
Case 1:13-cv-08391-PAE   Document 149   Filed 07/08/14   Page 1 of 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

| | |
|---|---|
| Dietgoal Innovations LLC, | |
| Plaintiff, | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED 07/08/2014 |

Dietgoal Innovations LLC,

                     Plaintiff,

        -against-

Bravo Media LLC (Division of NBC
Universal Media, LLC),

                    Defendant.

-------------------------------------------------------------X

13 **CIVIL** 8391 (PAE)

**JUDGMENT**

      Defendant Bravo Media LLC having moved for two motions for summary judgment (Doc.

#127) pursuant to Fed. R. Civ. P. 56: one on the ground that the '516 Patent is drawn to patent-

ineligible subject matter, and thus is invalid under § 101 of the Patent Act, 35 U.S.C. § 101; and the

other on the ground that Bravo did not infringe on the '516 patent, and the matter having come

before the Honorable Paul A. Engelmayer, United States District Judge, and the Court, on July 8,

2014, having rendered its Opinion & Order (Doc. #148) the '516 Patent is drawn to patent-ineligible

subject matter, granting Bravo's motion for summary judgment, and directing the Clerk of Court

to terminate all pending motions, and to close this case, it is,

      **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Opinion & Order dated July 8, 2014, the '516 Patent is drawn to patent-ineligible subject

matter. Bravo's motion for summary judgment is granted; accordingly, the case is closed.

**Dated:** New York, New York
       July 8, 2014

                             **RUBY J. KRAJICK**

                                **Clerk of Court**

           **BY:**        K. mango

                               **Deputy Clerk**

A031



**United States District Court**
**Southern District of New York**

Ruby J. Krajick
*Clerk of Court*

Dear Litigant:

Enclosed is a copy of the judgment entered in your case. If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $505 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted*. If you are unable to pay the $505 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/.**

THE DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

THE CHARLES L. BRIEANT, JR.
UNITED STATES COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601-4150

Rev. 5/23/14

A032

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____ CV _____ (    )(    )

## NOTICE OF APPEAL

Notice is hereby given that the following parties: _____

_____

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the     ☐ judgment     ☐ order     entered on: _____

that:                                                              (date that judgment or order was entered on docket)

_____

_____

(If the appeal is from an order, provide a brief description above of the decision in the order.)

_____              _____
Dated                                  Signature*

_____
Name (Last, First, MI)

_____  City  _____  State  _____  Zip Code
Address

_____              _____
Telephone Number                        E-mail Address (if available)

_____

* Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case. Fed. R. App. P. 3(c)(2). Attach additional sheets of paper as necessary.

Rev. 12/23/13

A033

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____
(List the full name(s) of the defendant(s)/respondent(s).)

\_\_\_\_\_CV_____ (      )(      )

**MOTION FOR EXTENSION OF TIME TO FILE NOTICE OF APPEAL**

I move under Rule 4(a)(5) of the Federal Rules of Appellate Procedure for an extension of time to file a notice of appeal in this action. I would like to appeal the judgment entered in this action on _____ but did not file a notice of appearance within the required
                                                                        date
time period because:

_____

_____

_____
(Explain here the excusable neglect or good cause that led to your failure to file a timely notice of appeal.)

_____         _____
Dated:                             Signature

_____
Name (Last, First, MI)

_____         _____
Address              City          State              Zip Code

_____         _____
Telephone Number                   E-mail Address (if available)

Rev. 12/23/13

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

_____

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

_____

_____

(List the full name(s) of the defendant(s)/respondent(s).)

_____CV_____ (       )(       )

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

I move under Federal Rule of Appellate Procedure 24(a)(1) for leave to proceed *in forma pauperis* on appeal. This motion is supported by the attached affidavit.

_____
Dated

_____
Name (Last, First, MI)

_____
Address

_____
Telephone Number

_____
Signature

_____

City          State          Zip Code

_____
E-mail Address (if available)

# Application to Appeal In Forma Pauperis

_____**v.** _____    Appeal No. _____

District Court or Agency No. _____

| Affidavit in Support of Motion | Instructions |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.)<br><br>  Signed: _____ | Complete all questions in this application and then sign it.  Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.<br><br>  Date: _____ |

My issues on appeal are: (underline):

1.    *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |

- 1 -

| | | | | |
|---|---|---|---|---|
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | **$ 0** | **$ 0** | **$ 0** | **$ 0** |

2.   *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3.   *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

4. *How much cash do you and your spouse have? $_____*

   *Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

***If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5. *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
|  |  | Make and year: |
|  |  | Model: |
|  |  | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: |  |  |
| Model: |  |  |
| Registration #: |  |  |

A038

6. *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |

7. *State the persons who rely on you or your spouse for support.*

| Name [or, if a minor (i.e., underage), initials only] | Relationship | Age |
|---|---|---|
| | | |
| | | |
| | | |

8. *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

| | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (including lot rented for mobile home) <br>     Are real estate taxes included? ☐ Yes ☐ No <br>     Is property insurance included? ☐ Yes ☐ No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |

- 4 -

| | | $ | $ |
|---|---|---|---|
| Transportation (not including motor vehicle payments) | | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | | |
| | Homeowner's or renter's: | $ | $ |
| | Life: | $ | $ |
| | Health: | $ | $ |
| | Motor vehicle: | $ | $ |
| | Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | | $ | $ |
| Installment payments | | | |
| | Motor Vehicle: | $ | $ |
| | Credit card (name): | $ | $ |
| | Department store (name): | $ | $ |
| | Other: | $ | $ |
| Alimony, maintenance, and support paid to others | | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | | $ | $ |
| Other (specify): | | $ | $ |
| **Total monthly expenses:** | | $ 0 | $ 0 |

9.    *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

☐ Yes        ☐ No        If yes, describe on an attached sheet.

10.    *Have you spent — or will you be spending —any money for expenses or attorney fees in connection with this lawsuit?* ☐ Yes ☐ No

*If yes, how much?* $ _____

11.      *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12.      *Identify the city and state of your legal residence.*

City _____     State _____

Your daytime phone number: _____

Your age: _____     Your years of schooling: _____

Last four digits of your social-security number: _____

| Print | Save | Reset Form |



**United States District Court**
**Southern District of New York**

## HOW TO APPEAL YOUR CASE TO THE UNITED STATES COURT
## OF APPEALS FOR THE SECOND CIRCUIT

If you disagree with a judgment or final order of the district court, you may appeal to the United States Court of Appeals for the Second Circuit. To start this process, file a "Notice of Appeal" with this Court's Pro Se Intake Unit.

You must file your notice of appeal in this Court within 30 days after the judgment or order that you wish to appeal is entered on the Court's docket, or, if the United States or its officer or agency is a party, within 60 days after entry of the judgment or order. If you are unable to file your notice of appeal within the required time, you may make a motion for extension of time, but you must do so within 60 days from the date of entry of the judgment, or within 90 days if the United States or its officer or agency is a party, and you must show excusable neglect or good cause for your inability to file the notice of appeal by the deadline.

Please note that the notice of appeal is a *one-page* document containing your name, a description of the final order or judgment (or part thereof) being appealed, and the name of the court to which the appeal is taken (the Second Circuit) – *it does not* include your reasons or grounds for the appeal. Once your appeal is processed by the district court, your notice of appeal will be sent to the Court of Appeals and a Court of Appeals docket number will be assigned to your case. At that point, all further questions regarding your appeal must be directed to that court.

The filing fee for a notice of appeal is $505 payable in cash, by bank check, certified check, or money order, to "Clerk of Court, S.D.N.Y." *No personal checks are accepted*. If you are unable to pay the $505 filing fee, complete the "Motion to Proceed *in Forma Pauperis* on Appeal" form and submit it with your notice of appeal to the Pro Se Intake Unit. If the district court denies your motion to proceed *in forma pauperis* on appeal, or has certified under 28 U.S.C. § 1915(a)(3) that an appeal would not be taken in good faith, you may file a motion in the Court of Appeals for leave to appeal *in forma pauperis*, but you must do so within 30 days after service of the district court order that stated that you could not proceed *in forma pauperis* on appeal.

For additional issues regarding the time for filing a notice of appeal, see Federal Rule of Appellate Procedure 4(a). There are many other steps to beginning and proceeding with your appeal, but they are governed by the rules of the Second Circuit Court of Appeals and the Federal Rules of Appellate Procedure. For more information, visit the Second Circuit Court of Appeals website at **http://www.ca2.uscourts.gov/.**

THE DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312

THE CHARLES L. BRIEANT, JR.
UNITED STATES COURTHOUSE
300 QUARROPAS STREET
WHITE PLAINS, NY 10601-4150



US006585516B1

(12) **United States Patent** (10) **Patent No.:** **US 6,585,516 B1**
Alabaster (45) **Date of Patent:** **Jul. 1, 2003**

(54) **METHOD AND SYSTEM FOR COMPUTERIZED VISUAL BEHAVIOR ANALYSIS, TRAINING, AND PLANNING**

(76) Inventor: **Oliver Alabaster**, 4318 Adrienne Dr., Alexandria, VA (US) 22309

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/040,465**

(22) Filed: **Jan. 9, 2002**

(51) **Int. Cl.**[7] .......................... **G09B 19/00**; G06F 17/00
(52) **U.S. Cl.** ........................................ **434/127**; 128/921
(58) **Field of Search** ........................ 434/127; 128/921; 700/104.1

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,317,134 A | * | 5/1994 | Edamura | 219/720 |
| 5,412,560 A | * | 5/1995 | Dennison | 600/300 |
| 5,454,721 A | * | 10/1995 | Kuch | 434/127 |
| 5,832,446 A | * | 11/1998 | Neuhaus | 705/1 |
| 5,845,263 A | * | 12/1998 | Camaisa et al. | 705/27 |
| 6,236,974 B1 | * | 5/2001 | Kolawa et al. | 705/7 |
| 6,381,614 B1 | * | 4/2002 | Barnett et al. | 707/104.1 |
| 2001/0000810 A1 | | 5/2001 | Alabaster | 707/104.1 |
| 2001/0005830 A1 | * | 6/2001 | Kuroyanagi | 705/2 |
| 2002/0046060 A1 | * | 4/2002 | Hoskyns et al. | 705/2 |
| 2002/0059311 A1 | * | 5/2002 | Nishina | 707/200 |

FOREIGN PATENT DOCUMENTS

JP      407021267 A    *   1/1995   ........... G06F/17/60

OTHER PUBLICATIONS

Molbak, Jens, "Meals.com is Key Ingredient for Web Sites; New Strategy Makes Meals.com Available to Millions More Worldwide", Jul. 26, 2000, Business Wire.*

* cited by examiner

*Primary Examiner*—John Edmund Rovnak
(74) *Attorney, Agent, or Firm*—Piper Rudnick LLP; Steven B. Kelber

(57) **ABSTRACT**

A system and method for computerized visual behavior analysis, training, and planning. The system includes a User Interface (UI), a Meal Database, a Food Database, a Picture Menus, and a Meal Builder. The method can include the following steps. First, the Meal Database and the Food Database can be prepared. Second, the user can use the Picture Menus to choose meals for a particular time period to correspond to a customized eating plan. Third, the user can decide whether or not to change one or more of the meals he has chosen for the particular time period. If the user decides to change his chosen meals, the user can edit or create new meals using the Meal Builder. If the user decides not to change his choices, or after the user changes his choices, the user can save the meals for the particular time period.

**18 Claims, 10 Drawing Sheets**





FIG.1

U.S. Patent

Jul. 1, 2003

Sheet 2 of 10

US 6,585,516 B1



FIG.2

U.S. Patent

Jul. 1, 2003

Sheet 3 of 10

US 6,585,516 B1



Step 215

220

305 — User chooses meal to change

310 — User decides on new or edit option

New → 315 — User accesses Meal Builder to create new meal

Edit

320 — User accesses Meal Builder to edit existing meal

325 — Dietary Impact Bar Charts change to correspond to changed meal

330 — User saves changed meal

Step 225

FIG.3



400
430
435
440
465
480
465
115
TODAY: Tuesday, October 16, 2001
MEALS FOR: Tuesday, October 16, 2001
PICTUREMENUS
PREVIOUS DAY
TODAY
NEXT DAY
CALORIES
1650/1600
411
410
BREAKFASTS
Breakfast
NEW
EDIT
416
415
LUNCHES
Lunch
421
420
DINNERS
Dinner
426
425
SNACKS
Snacks
455
475
MEAL CHOICES
SELECTIONS
Resize Meals
Diet fit
Welcome to PictureMenus.
We are now loading your meals for the day. Choose a meal from each meal list, and customize them if necessary. When you have selected all meals for the day, click 'Save Days Meals' to finish.
GO
Day's Menus can be printed for easy reference
445
470
460

FIG.4

U.S. Patent

Jul. 1, 2003

Sheet 5 of 10

US 6,585,516 B1



FIG.5



FIG.6

U.S. Patent

Jul. 1, 2003

Sheet 7 of 10

US 6,585,516 B1

700



FIG.7



U.S. Patent

Jul. 1, 2003

Sheet 8 of 10

US 6,585,516 B1

U.S. Patent

Jul. 1, 2003

Sheet 9 of 10

US 6,585,516 B1



U.S. Patent

Jul. 1, 2003

Sheet 10 of 10

US 6,585,516 B1



FIG.10

US 6,585,516 B1

1

# METHOD AND SYSTEM FOR COMPUTERIZED VISUAL BEHAVIOR ANALYSIS, TRAINING, AND PLANNING

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The subject invention relates to the field of computer-based methods of employing visual techniques for training individuals to modify behavior, and planning by individuals for modified behavior. Specific applications include training individuals to modify diet behavior, and planning by individuals for improved diet practices.

### 2. Background of the Technology

Present methods of evaluating dietary habits, motivating people to change eating habits, and teaching people how to make healthier food choices are woefully inadequate. Twenty years ago, twenty percent (20%) of Americans were obese. Now thirty-five percent (35%) of Americans are obese, despite the sales of countless diet books and the increasing availability of low calorie and low fat foods. In fact, American dietary habits were responsible for approximately forty percent (40%) of deaths in 1990, and they continue to produce an epidemic of obesity that is out of control.

No effective tools exist for either health processionals or the public that can adequately train people to understand and immediately recognize, the significance of (1) the impact of customized meals on dietary goals; (2) the value and amount of specific macro and micro nutrients in different foods; (3) the potentially harmful effects of other naturally occurring substances found in many foods; and (4) the relative quantities of different food choices. Nor are there any planning tools that can show people how to create meals using food choices that are much more healthful for them and their families. In addition, no planning tools exist that use natural visual techniques to assist people to follow diet programs designed by health professionals.

Finally, no tools exist that allow user's to incorporate a behavior analysis into their eating goals, and their training or planning for meeting those eating goals. The behavior analysis collects and analyzes specific information on a user's instinctive eating tendencies and preferences. The behavior analysis can also compare the specific information to a set of goals. Allowing a user to incorporate the user's instinctive eating tendencies and preferences into his eating plan can have a profound effect on how effective the eating plan is. Food preferences can strongly influence the risk of obesity, diabetes, heart disease and cancer.

### 3. Related Art

U.S. Pat. No. 5,454,721 to Kuch discloses a system intended to teach individuals the relationship between the visual size and a few nutritional characteristics of portions of food by using either a life size image of, or the corporeal finger of the individual, as a scale against images of different sized portions of different kinds of food, while showing a few nutritional characteristics of such portions. The system proposed by Kuch is limited, in that, for example, it does not evaluate the user's ability to visually estimate macro and micro nutrient content of meals. Nor does it permit or incorporate analysis of an individual's natural tendencies and preferences. In addition, Kuch does not allow the user to prepare and plan and adapt meals that will help the user meet his customized eating goals.

U.S. Pat. No. 5,412,560 to Dennision relates to a method for evaluating and analyzing food choices. The method

2

relies on input by the individual or user of food actually consumed by the user during a given period of time and employs a computer program which attempts to estimate the actual intake of nutrients by the individual and to compare that intake to a recommended range of nutrients, such as those contained in dietary guidelines issued nationally in the United States. The approach of the Dennision patent is undesirable in that it relies on the individual to provide accurate input data as to his actual food intake, a task as to which there are many known obstacles and impediments, i.e., the approach is not "user friendly." Additionally, no graphic visual displays are provided, which further detracts from ease of use, comprehension and effectiveness.

## SUMMARY OF THE INVENTION

The present invention can solve the above problems by providing a system and method for computerized behavior analysis, training, and planning. The system of programs can include a User Interface (UI), a Meal Database, a Food Database, Picture Menus, and a Meal Builder.

The UI can receive commands from the user and display results to the user from the Picture Menus and Meal Builder. The Meal Database can be a database of pre-set meals comprising combinations of foods that conform to predetermined characteristics that have been compiled. The Food Database is a database of foods that have been compiled. (Commercially made or pre-made meals can be included.)

In an alternate embodiment, the Meal Database and the Food Database can incorporate a behavior analysis. As explained in detail in pending U.S. patent applications Ser. Nos. 09/211,392, 09/461,664, and 09/734,711 (incorporated by reference), a behavior analysis comprises compiling and analyzing specific information on a user's instinctive preferences and tendencies. A behavior analysis can also compare the specific information to a set of goals. In an exemplary embodiment, the behavior analysis can be a diet behavior analysis which compiles and analyzes specific information on a user's instinctive eating preferences and tendencies, and then compares the specific information to a set of customized eating goals. Thus, the Meal Database and Food Database can be modified to include meals that the user has indicated he likes. In an alternative embodiment, meals that the user dislikes can be ignored by the user or deleted from the Meal Database and the Food Database.

The Picture Menus can display on the User Interface meals from the Database that the user can mix and match and still meet customized eating goals. The Picture Menus provide a quick and easy system of dietary impact (including nutritional and caloric impact) controlled meals that the user can mix and match at various nutritional, caloric, and other levels. In an exemplary embodiment, the invention can define the user's nutritional, caloric and other needs and let the user choose the diet he wants to follow. In response to data input regarding personal characteristics and activity level, calorie goals are defined, and daily meals are combined (and modified) to produce a daily total of various nutrients which can vary only +/−5% from the diet goals before a warning appears. While following the Picture Menus, the user can track his progress. If after a certain amount of time, the user hasn't yet reached his target weight, he can repeat the Picture Menus as often as necessary. Once the user's weight has stabilized, he can use the Picture Menus to maintain his weight.

The Meal Builder can display on the User Interface meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on

US 6,585,516 B1

3

customized eating goals. The Meal Builder can be a very useful tool, not only for modifying and personalizing Picture Menus, but also for designing meals and picturing favorite recipes. The Meal Builder can be a scoring system that allows the user to view, in real time, the impact of food choices on customized eating goals, and the accumulated impact on daily nutrition allowance made by saved meals and snacks throughout the day. The approximate distribution of calories and nutrients for each meal and snack can be shown using a selected diet plan.

The method for computerized behavior analysis, training, and planning can include the following steps. First, the Meal Database and Food Database can be prepared. Second, the user can choose meals for a particular day. Third, the user can decide whether or not to change one or more of the meals he has chosen for the particular day. If the user decides to change his chosen meals, the user can edit or create new meals using the Meal Builder. If the user decides not to change his choices, or after the user changes his choices, the user can save the meals for the particular day.

DESCRIPTION OF THE FIGURES

FIG. 1 displays the underlying architecture of an exemplary embodiment of the present invention.

FIG. 2 is a flow chart illustrating an exemplary overview process.

FIG. 3 is a flow chart illustrating an exemplary process for editing the user choices, as set forth in FIG. 2.

FIGS. 4–6 are exemplary screen shots illustrating the Picture Menus.

FIGS. 7–10 are exemplary screen shots illustrating the Meal Builder, and how it can be incorporated into the Picture Menus.

DETAILED DESCRIPTION OF THE INVENTION

The present invention will be discussed with reference to preferred embodiments. Specific details will be set forth to provide a thorough understanding of the present invention. The preferred embodiments discussed herein should not be understood to limit the invention.

FIG. 1 displays the underlying architecture of an exemplary embodiment of the present invention. The system **100** includes a User Interface (UI) **105**, a Meal Database **110**, a Food Database **111**, a Picture Menus **115**, and a Meal Builder **120**.

The UI **105** can receive commands from the user and display results to the user from the Picture Menus **115** and Meal Builder **120**.

The Meal Database **110** is a database of pre-set meals that has been compiled. The Food Database **111** is a database of foods that has been compiled.

In an alternative embodiment, the Meal Database **110** and/or the Food Database **111** can incorporate a diet behavior analysis. These Databases **110** and **111** can be based on a diet behavior analysis of the user. These Databases **110** and **115** are customized through the expansion of the addition of foods and meals that conform to the users taste preferences and dietary goals. If the program learns the user likes certain foods, it will offer those foods first. If the program learns the user likes certain meals, it will offer those meals first. In an alternative embodiment, a user can populate a particular database with meals he has created.

The Picture Menus **115** are a quick and easy system of dietary impact controlled instant meals that the user can mix

4

and match at various nutritional, caloric, and other levels. Picture Menus **115** can be used as a stand-alone feature, or can include the Meal Builder **120**. In an exemplary embodiment, the invention has already defined the user's nutritional, caloric, and other needs and has let the user choose the diet he wants to follow. In an exemplary embodiment, the user has also indicated his preferences and tendencies in a behavioral analysis. Daily meals are combined to produce a daily total of various nutrients which can vary only +/–5% from the diet goals before a warning appears. While following the Picture Menus **115**, the user can track his progress. If after a certain amount of time, the user hasn't yet reached his target weight, he can repeat the Picture Menus **115** as often as necessary. Once the user's weight has stabilized, he can use the Picture Menus **115** to maintain his weight.

The Meal Builder **120** is a very useful tool, not only for modifying and personalizing Picture Menus **115**, but also for designing meals and picturing favorite recipes. Meal Builder **120** can be used as a stand-alone feature, or can be used with the Picture Menus **115**. Meal Builder **120** incorporates a scoring system that allows the user to view, in real time, the impact of food choices on daily intake, and the accumulated impact on daily nutrition allowance made by saved meals and snacks throughout the day. The approximate distribution of calories and nutrients for each meal and snack can be shown using a selected diet plan.

FIG. 2 is a flow chart illustrating an exemplary overview process **200**. The overview process **200** starts with step **210**. In step **205**, a Meal Database **110** and Food Database **111** are prepared (or edited). In step **210**, the user chooses meals (breakfast, lunch, dinner, and snacks) for a day. The terms breakfast, lunch, dinner, and snacks do not require a balanced or traditional meal, but simply denote food choices the user can make. For example, though unwise, a user can choose a plate of potato chips for breakfast and see how this affects his dietary goals. In an exemplary embodiment, the Picture Menus **115** are based upon the following distribution of calories: breakfast 25%, lunch 30%, snacks/beverages 15%, dinner 30%. These levels can be changed when the meals are edited using Meal Builder **120**. However, daily meals are combined to produce a daily total which can vary only +/–5% before a warning appears. In step **215**, the user decides whether or not to change the meals he has chosen for the day. If the user decides to change his chosen meals, the process moves to step **220**, where the user can change (edit or create) meals using Meal Builder **120**. If the user decides not to change his choices in **215**, or after the user changes his choices in **220**, the process moves to step **225**, where the user saves the meals for that day. The process can be repeated by going back to step **205**. The overview process **200** ends with step **299**.

FIG. 3 is a flow chart illustrating an exemplary process for editing the user choices, as set forth in step **220** of FIG. 2. In step **305**, the user chooses the meal he wants to change. In step **310**, the user chooses the Edit or New option. If the user chooses the Edit option, the process moves to step **320**, where the user accesses the Meal Builder **120** to edit the chosen meal. The user can edit a particular meal by removing, adding, decreasing, substituting, etc. food items, starting with the meal the user has chosen to edit. If the user chooses the New option, the process moves to step **315**, where the user accesses the Meal Builder **120** to change the chosen meal. The user can choose a new meal by removing, adding, decreasing, substituting, etc. food items, starting with an empty plate. The user can change a particular meal by removing, adding, or substituting a food item.

US 6,585,516 B1

5

Alternatively, the user can load a previously saved meal (and edit this if he chooses). Steps 315 and 320 move to step 325, where the Dietary Impact Bar Charts are changed to correspond to the changed meal. In step 330, the user saves the changed meal.

FIG. 4 illustrates an exemplary screen shot 400 illustrating the Picture Menus 115. In this exemplary embodiment, the program has indicated, or the user has chosen, that he should follow a 1600 calorie diet. With this 1600 calorie goal, a breakfast, lunch, snack, and dinner can be combined to create the right number of calories.

The user chooses the breakfast, lunch, snack and dinner he wants for the day. These meals do not need to be well-balanced meals, but as a combination need to meet the 1600 calorie goal. The Breakfast Choices 410 indicate the meals the user can choose for breakfast. The Breakfast Choice 411 is boxed and indicates the user's breakfast choice for the particular day he is planning. The Lunch Choices 415 indicate the meals the user can choose for lunch. The Lunch Choice 416 is boxed and indicates the user's lunch choice for the particular day he is planning. The Dinner Choices 420 indicate the meals the user can choose for dinner. The Dinner Choice 421 is boxed and indicates the user's dinner choice for the particular day he is planning. The Snack Choices 425 indicate the meals the user can choose for snacks. The Snack Choice 426 is boxed and indicates the user's snack choice for the particular day he is planning. The Save Day's Meals 445 saves the choices 411,416,421, and 426 his user has made for a particular day.

The user can Scroll Back 455 or Scroll Forward 460 on the Breakfast Choices 410, Lunch Choices 415, Dinner Choices 420, and Snack Choices 425. The user can choose or review the current day's meals by the Today Indicator 435. The user can also look at meals for the Previous Day 430 or the Next Day 440. The user can view the current calorie level in a bar graph and number form on the Nutrient Indicator 465. While this is set for calories, any nutrient or quantifier, such as protein, can be measured on the Dietary Impact 465. (This can be another type of indicator, such as any type of nutritional indicator.) Usually the user will try to make his choices closely match his dietary goals. If the user exceeds those goals, he will receive a + Warning Signal 480. The user can print the Day's Menus using the Print 470. The user can also record the menus in a health diary, print the menu, generate a customized shopping list that incorporates the meals chosen, record his weight, and track his progress. Graphs for these options can also be provided.

FIG. 5 is an exemplary screen shot 500 illustrating a use of the Picture Menus 115. The user has already indicated a Breakfast Choice 411 and Lunch Choice 416. The user chooses a Dinner Choice 421 comprising barbequed chicken, baked potatoes, and beans. The user views the Dietary Impact 465 (here it is calories, although this could be a nutritional or other impact) of the Dinner Choice 421 on his daily allowance, and sees that with his dinner choice, he has used 1650 (more than his allocated 1600) calories.

FIG. 6 is an exemplary screen shot 600 illustrating another use of the Picture Menus 115. The user has already indicated a Breakfast Choice 411, Lunch Choice 416, and Dinner Choice 421. The user adds a Snack Choice 426 of grapes. The user views the Dietary Impact 465 of the grapes on his daily allowance, and sees that the addition of the grapes makes it so he has used 1750 instead of 1650 calories.

FIG. 7 is an exemplary screen shot 700 illustrating the Meal Builder 120. The user can change an existing Choice 411, 416, 421, or 426 using Edit 710 or New 705. For

6

example, the user can choose to change the Dinner Choice 421. Once the user chooses the Edit 710 or the New 705, the current Dinner Choice 421 will be shown in the Meal Builder 120.

FIG. 8 is an exemplary screen shot 800 illustrating a use of the Meal Builder 120 for Dinner Choice 421. The current Dinner Choice 421, comprising barbequed chicken, baked potatoes, and beans, is shown. The user can access the Search 820, the New Meal 825, the Load Meal 830, the Save Meal 835, the Inventory 840, and the Compute 845. The Search 820 allows a user to search for a food in the Food Database 111. The New Meal 825 will display an empty plate and allow the user to create a meal. The Load Meal 830 will allow the user to choose from saved meals that he already has. The Save Meal 835 allows the user to save a new meal he has created and give it a name. The Inventory 840 provides a written list of the foods on the plate. The Compute 845 allows the user to see the impact of the foods on the plate on his dietary goals. On some of these features, the user can access or provide recipes or details about certain foods.

The Dinner Choices 420 in the Meal Builder 120 is immediately associated with an increase in the user of the allotted amounts of calories and nutrients. This serves to show how adding each meal increases the calorie and nutrient intake during the day and how the impact of food choices can be seen in the bar charts. Excesses and deficiencies can be easily spotted and remedied. Other nutrients can be seen on demand, as can a more detailed numerical analysis.

If the user is using the New 705, the user is presented with a clean plate. The user then activates the window containing the desired food, and drags that food onto the plate. In the Dinner Choices 420, the user can choose from different Foods 805, Beverages 810, and Condiments 815. The user can adjust portions by clicking on each food on the plate and then selecting a plus or minus button. An "X" button removes the food from the plate.

As foods are added or removed, the user will see the Dietary Impact Bar Charts 850 change immediately. In this example, the calorie, fat, and fiber intake is shown. This indicates the contribution each food makes to the user's nutrition and calorie intake. Condiments and beverages are added in a similar way. Using Meal Builder 120, the user can build his own personal library of favorite meals.

FIG. 9 is an exemplary screen shot 900 of a use of the Meal Builder 120. In this example, the user clicks on the Carrot Choice 905. The Carrot Choice 905 then appears on the Plate 910. The user is able to adjust the portion size of the Carrot Choice 905 and see the Dietary Impact Bar Charts 850 change to correspond to the different portion sizes of the Carrot Choice 905.

FIG. 10 is an exemplary screen shot 1000 of a use of the Meal Builder 120, as accessed in the Picture Menus 115. Once the user saves the Carrot Choice 905 on his Dinner Choice 421, the user is taken back to the Picture Menus 115. The user can see the Carrot Choice 905 included in his Dinner Choice 421. The user can also see the Dietary Impact 465 of the meal change, with the inclusion of the Carrot Choice 905.

What is claimed is:

1. A system of computerized meal planning, comprising:

a User Interface;

a Database of food objects organizable into meals; and

at least one Picture Menus, which displays on the User Interface meals from the Database that a user can select from to meet customized eating goal.

US 6,585,516 B1

7

2. A system of computerized meal planning, comprising:

a User Interface;

a Database of food objects; and

a Meal Builder, which displays on the User Interface meals from the Database, and wherein a user can change content of said meals and view the resulting meals' impact on customized eating goals.

3. The system of claim 1, further comprising:

a Meal Builder, which displays on the User Interface meals from the Database, corresponding to the Picture Menus, where the user can change the content of said meal's and view the resulting meal's impact on customized eating goals.

4. The system of claim 1, wherein the meal planning is designed to impact eating behavior.

5. The system of claim 1, wherein food objects are food images.

6. The system of claim 1, wherein the Database further comprises:

a Food Database comprising the food objects incorporated into the Meal Builder; and

a Meal Database comprising various combinations of the food objects designated as meals and incorporated into the Meal Builder and the Picture Menus.

7. The system of claim 1, wherein the Database is based on a behavior analysis comprising collecting and analyzing specific information on a user's instinctive tendencies and preferences.

8. The system of claim 6, wherein the Food Database and the Meal Database are based on a behavior analysis comprising collecting and. analyzing specific information on a user's instinctive tendencies and preferences.

9. The system of claim 7, wherein the behavior analysis further comprises comparing the specific information to a set of goals.

10. The system of claim 7, wherein the behavior analysis is a diet behavior analysis comprising collecting and analyzing specific information on a user's instinctive eating tendencies and preferences.

11. The system of claim 10, wherein the diet behavior analysis further comprises comparing the specific information to a set of customized eating goals.

12. A method of computerized planning that can influence behavior, comprising:

8

preparing a Database of food objects;

allowing a user to choose meals from one or more Picture Menus, which display on a User Interface meals comprised from the food objects from the Database that the user can mix and match to meet customized eating goals, for a particular amount of time; and

allowing a user to save the meals.

13. A method of computerized planning that can influence behavior, comprising:

preparing a Database of food objects;

allowing the user to decide whether or not to change one or more meals comprising food objects; and

if the user decides to change one or more of the meals, allowing the user to change the meals using a Meal Builder, which displays on the User Interface the food objects from the meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals.

14. The system of claim 12, further comprising:

allowing the user to decide whether or not to change one or more of the meals; and

if the user decides to change one or more of the meals, allowing the user to change the meals using a Meal Builder, which displays on the User Interface the food objects from the meals from the Database, corresponding to the Picture Menus, where the user can change and view the meals' impact on customized eating goals.

15. The system of claim 12, further comprising the step of incorporating a behavioral analysis comprising collecting and analyzing specific information on a user's instinctive tendencies and preferences into the Database.

16. The system of claim 15, wherein the behavior analysis further comprises comparing the specific information to a set of goals.

17. The system of claim 15, wherein the behavior analysis is a diet behavior analysis comprising collecting and analyzing specific information on a user's instinctive eating tendencies and preferences.

18. The system of claim 17, wherein the diet behavior analysis further comprises comparing the specific information to a set of customized eating goals.

* * * * *



US006585516C1

(12) INTER PARTES REEXAMINATION CERTIFICATE (700th)

# United States Patent
Alabaster

(10) **Number:**        **US 6,585,516 C1**
(45) **Certificate Issued:**        **Oct. 2, 2013**

(54) **METHOD AND SYSTEM FOR COMPUTERIZED VISUAL BEHAVIOR ANALYSIS, TRAINING, AND PLANNING**

(75) Inventor: **Oliver Alabaster**, Alexandria, VA (US)

(73) Assignee: **Dietgoal Innovations LLC**, Austin, TX (US)

**Reexamination Request:**
No. 95/001,959, Apr. 9, 2012

**Reexamination Certificate for:**
Patent No.:        **6,585,516**
Issued:        **Jul. 1, 2003**
Appl. No.:        **10/040,465**
Filed:        **Jan. 9, 2002**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/734,711, filed on Dec. 13, 2000, now abandoned, which is a continuation-in-part of application No. 09/461,664, filed on Dec. 14, 1999, now Pat. No. 6,553,386, which is a continuation-in-part of application No. 09/211,392, filed on Dec. 14, 1998, now abandoned.

(51) **Int. Cl.**
*G09B 19/00*        (2006.01)

(52) **U.S. Cl.**
USPC ........................................... **434/127**; 128/921

(58) **Field of Classification Search**
None
See application file for complete search history.

(56)        **References Cited**

To view the complete listing of prior art documents cited during the proceeding for Reexamination Control Number 95/001,959, please refer to the USPTO's public Patent Application Information Retrieval (PAIR) system under the Display References tab.

*Primary Examiner* — Ovidio Escalante

(57)        **ABSTRACT**

A system and method for computerized visual behavior analysis, training, and planning. The system includes a User Interface (UI), a Meal Database, a Food Database, a Picture Menus, and a Meal Builder. The method can include the following steps. First, the Meal Database and the Food Database can be prepared. Second, the user can use the Picture Menus to choose meals for a particular time period to correspond to a customized eating plan. Third, the user can decide whether or not to change one or more of the meals he has chosen for the particular time period. If the user decides to change his chosen meals, the user can edit or create new meals using the Meal Builder. If the user decides not to change his choices, or after the user changes his choices, the user can save the meals for the particular time period.



100

115

105

110

Picture
Menus

UI

Meal
Database

Food
Database

111

Meal
Builder

120

US 6,585,516 C1

**1**

# INTER PARTES
# REEXAMINATION CERTIFICATE
# ISSUED UNDER 35 U.S.C. 316

THE PATENT IS HEREBY AMENDED AS
INDICATED BELOW.

**Matter enclosed in heavy brackets [ ] appeared in the
patent, but has been deleted and is no longer a part of the
patent; matter printed in italics indicates additions made
to the patent.**

ONLY THOSE PARAGRAPHS OF THE
SPECIFICATION AFFECTED BY AMENDMENT
ARE PRINTED HEREIN.

Column 1 lines 4-5:

*REFERENCES*

*This application is a continuation in part of U.S. applica-
tion Ser. No. 09/734,711 (filed on Dec. 13. 2000 and aban-
doned on May 29, 2003) which was currently pending at the
time this application was filed (this application was filed on
Jan. 9, 2002), and which is a continuation in part of U.S. Ser.
No. 09/461,664, filed Dec. 14, 1999 (issued on Apr. 22, 2003
as U.S. Pat. No. 6,553,386), which is a continuation in part of
U.S. Ser. No. 09/211,392 filed on Dec. 14, 1998 (abandoned
on Nov. 18, 2002).*

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

The patentability of claims **1-18** is confirmed.

New claims **19-61** are added and determined to be
patentable.

19. *The system of claim 1, wherein the User Interface
receives a command identifying a food object or a meal that
the user likes or dislikes.*

20. *The system of claim 19, wherein a meal is removed or
added to the display on the User Interface based on the
command.*

21. *The system of claim 20, wherein the one or more meals
displayed on the User Interface are changed in real-time
based on the command.*

22. *The system of claim 1, wherein the Database stores
information associated with a meal that the user likes.*

23. *The system of claim 1, wherein the user can select one
or more of the displayed meals to store in the Database.*

24. *The system of claim 1, wherein the one or more dis-
played meals correspond to at least one of a selected nutri-
tional value, a selected caloric value, a selected personal
characteristic, and a selected activity level.*

25. *The system of claim 1, wherein the User Interface
displays nutritional information for a given meal adjacent an
image of the given meal.*

26. *The system of claim 1, wherein the User Interface
displays a daily nutrition allowance value and displays an
impact of a selected meal on the daily nutrition allowance
value.*

27. *The system of claim 1, wherein the Database includes
information provided by a plurality of users for a meal.*

28. *The system of claim 27, wherein the information
includes at least one of a selection indication, a rating, a
review, and a survey response.*

**2**

29. *The system of claim 1, wherein the User Interface
displays at least one customized eating goal for selection by
the user.*

30. *The system of claim 29, wherein a meal is added to or
removed from display on the User Interface in response to
selection of one or more of the at least one customized eating
goals.*

31. *The system of claim 1, wherein the User Interface
displays one or more controls for modifying a meal by at least
one of changing a type of food object associated with the meal
and changing an amount of a food object associated with the
meal.*

32. *The system of claim 31, wherein the User Interface
displays revised nutrition information for the meal when the
type or the amount of the food object is changed.*

33. *The system of claim 1, wherein the User Interface
displays a control for selecting a food object to include in or
remove from a meal.*

34. *The system of claim 33, wherein the User Interface
displays revised nutrition information for the meal when the
food object is included in or removed from the meal.*

35. *The system of claim 1, wherein the User Interface
displays a control for selecting a nutritional value for a meal
or a food object.*

36. *The system of claim 1, wherein the User Interface
displays a list of food objects associated with the meals in the
Database.*

37. *The system of claim 2, wherein the Meal Builder dis-
plays on the User Interface an image of a meal.*

38. *The system of claim 2, wherein the Meal Builder dis-
plays on the User Interface revised nutrition information in
real-time for a resulting meal as the content of the resulting
meal is changed.*

39. *The system of claim 2, wherein the content of a meal
includes a food object associated with the meal.*

40. *The system of claim 39, wherein the Meal Builder
displays on the User Interface an image of the food object.*

41. *The system of claim 2, wherein the Meal Builder pro-
vides a search function allowing the user to search for a meal
containing a food object.*

42. *The system of claim 2, wherein the Meal Builder pro-
vides a compute function for computing revised nutrition
information for the resulting meal.*

43. *The system of claim 2, wherein the Meal Builder
includes a field associated with a food object or a meal, and
wherein the field is adapted to receive comments from the user
about the food object or the meal.*

44. *The system of claim 2, wherein the User Interface is
configured to receive a command identifying a food object or
a meal that the user likes or dislikes.*

45. *The system of claim 44, wherein a meal is removed or
added to the display on the User Interface based on the
command.*

46. *The system of claim 45, wherein the one or more meals
displayed on the User Interface are changed in real-time
based on the commands.*

47. *The system of claim 2, wherein the Database stores
information associated with a meal that the user likes.*

48. *The system of claim 2, wherein the user can select one
or more of the displayed meals to store in the Database.*

49. *The system of claim 2, wherein the one or more dis-
played meals correspond to at least one of a selected nutri-
tional value, a selected caloric value, a selected personal
characteristic, and a selected activity level.*

50. *The system of claim 2, wherein the User Interface
displays nutritional information for a given meal adjacent an
image of the given meal.*

US 6,585,516 C1

**3**

*51. The system of claim 2, wherein the User Interface displays a daily nutrition allowance value and displays an impact of a selected meal on the daily nutrition allowance value.*

*52. The system of claim 2, wherein the Database includes information provided by a plurality of users for a meal.*

*53. The system of claim 52, wherein the information includes at least one of a selection indication, a rating, a review and a survey response.*

*54. The system of claim 2, wherein the User Interface displays at least one customized eating goal for selection by the user.*

*55. The system of claim 54, wherein at least one meal is added to or removed from display on the User Interface in response to the selection of one or more of the at least one customized eating goals.*

*56. The system of claim 2, wherein the User Interface displays one or more controls for modifying a meal by at least*

**4**

*one of changing a type of food object associated with the meal and changing an amount of a food object associated with the meal.*

*57. The system of claim 56, wherein the User Interface displays revised nutrition information for the meal when the type or the amount of the food object is changed.*

*58. The system of claim 2, wherein the User Interface displays a control for selecting a food object to include in or remove from a meal.*

*59. The system of claim 58, wherein the User Interface displays revised nutrition information for the meal when the food object is selected for inclusion in or removal from the meal.*

*60. The system of claim 2, wherein the User Interface displays a control for selecting a nutritional value for a meal or a food object.*

*61. The system of claim 2, wherein the User Interface displays a list of food objects associated with the meals in the Database.*

\* \* \* \* \*

CLOSED,APPEAL,COMPLEX-CSMGMT,ECF

**U.S. District Court**
**Southern District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE #: 1:13-cv-08391-PAE**

DietGoal Innovations LLC v. Bravo Media LLC (Division of NBC Universal Media, LLC)
Assigned to: Judge Paul A. Engelmayer
Case in other court: Virginia Eastern, 2:13-cv-00515
Cause: 28:1338 Patent Infringement

Date Filed: 11/25/2013
Date Terminated: 07/08/2014
Jury Demand: Both
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**DietGoal Innovations LLC**

represented by **Christopher Michael Joe**
Buether Joe & Carpenter, LLC
1700 Pacific Ave
Suite 4750
Dallas, TX 75201
NA
(214) 466-1271
Fax: (214) 638-1828
Email: chris.joe@bjciplaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*



**Brian Andrew Carpenter**
Buether Joe & Carpenter, LLC
1700 Pacific Avenue
Suite 4750
Dallas, TX 75201
**NA**
214-466-1273
Fax: 214-635-1829
*ATTORNEY TO BE NOTICED*

**Damon Michael Young**
Young Pickett & Lee
4122 Texas Blvd
PO Box 1897
Texarkana, TX 75504-1897
903/794-1303
Fax: 19037925098
Email: dyoung@youngpickettlaw.com
*ATTORNEY TO BE NOTICED*

**Eric William Buether**
Buether Joe & Carpenter, LLC
1700 Pacific Ave
Suite 4750
Dallas, TX 75201
NA
(214) 466-1270
Fax: (214) 638-1827
Email: eric.buether@bjciplaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark Davin Perantie**
Buether Joe & Carpenter, LLC
1700 Pacific Avenue
Suite 4750
Dallas, TX 75201
**NA**
214-466-1279
Fax: 214-635-1830
*ATTORNEY TO BE NOTICED*

**Michael David Ricketts**
Buether Joe & Carpenter, LLC
1700 Pacific Ave

Suite 4750
Dallas, TX 75201
(214)-730-5653
Fax: (214)-730-4698
Email: mickey.ricketts@bjciplaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Monica Nguyen Tavakoli**
Buether Joe & Carpenter, LLC
1700 Pacific Avenue
Suite 4750
Dallas, TX 75201
**NA**
214-635-1839
Fax: 972-656-0967
*ATTORNEY TO BE NOTICED*

**Steven War**
McNeely Hare & War LLP
5335 Wisconsin Ave NW
Suite 440
Washington, DC 20015
(202) 536-5877
Email: steve@miplaw.com
*ATTORNEY TO BE NOTICED*

**Niknaz Forughi Bukovcan**
Buether Joe & Carpenter, LLC
1700 Pacific Ave
Suite 4750
Dallas, TX 75201
**NA**
(214) 466-1270
Fax: (214) 638-1831
Email: niky.bukovcan@bjciplaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bravo Media LLC (Division of NBC Universal Media, LLC)**    represented by **Dabney Jefferson Carr , IV**
Troutman Sanders LLP (VA)
1001 Haxall Point
Richmond, VA 23219
(804) 697-1238
Fax: (804) 698-5119
Email: dabney.carr@troutmansanders.com
*TERMINATED  02/25/2014*
*LEAD ATTORNEY*

**John Christopher Carraway**
Klarquist Sparkman LLP
121 SW Salmon St
Suite 1600
Portland, OR 97204
NA
(503) 535-5300
Fax: (503) 535-5301
Email: chris.carraway@klarquist.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Harrison Scott Kelly**
Troutman Sanders LLP (Richmond)
1001 Haxall Point
Richmond, VA 23219
Email: scott.kelly@troutmansanders.com
*TERMINATED  02/25/2014*

**Norman Andrew Sfeir**

A062

Klarquist Sparkman, LLP
121 Sw Salmon Street, Suite 1600
Portland, OR 97204
(503)-595-5300
Fax: (503)-595-5301
Email: andy.sfeir@klarquist.com
*ATTORNEY TO BE NOTICED*

**Robert Armistead Angle**
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
(804) 697-1246
Email: robert.angle@troutmansanders.com
*TERMINATED 02/25/2014*

**Counter Claimant**

**Bravo Media LLC (Division of NBC Universal Media, LLC)**     represented by **Dabney Jefferson Carr , IV**
(See above for address)
*TERMINATED 02/25/2014*
*LEAD ATTORNEY*

**John Christopher Carraway**
Klarquist Sparkman LLP
121 SW Salmon St
Suite 1600
Portland, OR 97204
**NA**
(503) 535-5300
Fax: (503) 535-5301
Email: chris.carraway@klarquist.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Harrison Scott Kelly**
(See above for address)
*TERMINATED 02/25/2014*

**Robert Armistead Angle**
(See above for address)
*TERMINATED 02/25/2014*

V.

**Counter Defendant**

**DietGoal Innovations LLC**     represented by **Christopher Michael Joe**
Buether Joe & Carpenter, LLC
1700 Pacific Ave
Suite 4750
Dallas, TX 75201
NA
(214) 466-1270
Fax: (214) 638-1828
Email: chris.joe@bjciplaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brian Andrew Carpenter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric William Buether**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark Davin Perantie**
(See above for address)

A063

*ATTORNEY TO BE NOTICED*

**Monica Nguyen Tavakoli**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven War**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Niknaz Forughi Bukovcan**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Counter Claimant**</u>

**Bravo Media LLC (Division of NBC Universal Media, LLC)**          represented by **Dabney Jefferson Carr , IV**
(See above for address)
*TERMINATED  02/25/2014*
*LEAD ATTORNEY*

**John Christopher Carraway**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harrison Scott Kelly**
(See above for address)
*TERMINATED  02/25/2014*

**Robert Armistead Angle**
(See above for address)
*TERMINATED  02/25/2014*

V.

<u>**Counter Defendant**</u>

**DietGoal Innovations LLC**          represented by **Christopher Michael Joe**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Andrew Carpenter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Damon Michael Young**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric William Buether**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Mark Davin Perantie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael David Ricketts**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Monica Nguyen Tavakoli**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven War**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Niknaz Forughi Bukovcan**
(See above for address)
*ATTORNEY TO BE NOTICED*

A064

| Date Filed | # | Docket Text |
|---|---|---|
| 06/13/2012 | 1 | COMPLAINT against Bravo Media LLC (Division of NBC Universal Media, LLC) ( Filing fee $ 350 receipt number 0540-3632169.), filed by DietGoal Innovations LLC. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/13/2012) |
| 06/13/2012 | 2 | CORPORATE DISCLOSURE STATEMENT filed by DietGoal Innovations LLC (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/13/2012) |
| 06/13/2012 | 3 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/13/2012) |
| 06/13/2012 | 4 | NOTICE of Attorney Appearance by Eric William Buether on behalf of DietGoal Innovations LLC (Buether, Eric) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/13/2012) |
| 06/13/2012 | 5 | NOTICE of Attorney Appearance by Christopher Michael Joe on behalf of DietGoal Innovations LLC (Joe, Christopher) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/13/2012) |
| 06/13/2012 | 6 | NOTICE of Attorney Appearance by Brian Andrew Carpenter on behalf of DietGoal Innovations LLC (Carpenter, Brian) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/13/2012) |
| 06/13/2012 | 7 | NOTICE of Attorney Appearance by Mark Davin Perantie on behalf of DietGoal Innovations LLC (Perantie, Mark) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/13/2012) |
| 06/13/2012 | 8 | NOTICE of Attorney Appearance by Monica Nguyen Tavakoli on behalf of DietGoal Innovations LLC (Tavakoli, Monica) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/13/2012) |
| 06/14/2012 | 9 | SUMMONS Issued as to Bravo Media LLC (Division of NBC Universal Media, LLC). (ehs, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/14/2012) |
| 06/14/2012 | | Judge Michael H. Schneider added. (ehs, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/14/2012) |
| 06/22/2012 | 10 | ORDER REFERRING CASE to Magistrate Judge Caroline Craven. Signed by Judge Michael H. Schneider on 6/22/2012. (ch, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/22/2012) |
| 06/26/2012 | 11 | ORDER that Plaintiff shall file a notice that the case is ready for scheduling conference when all Defendants have either answered or filed a motion to transfer or dismiss. Signed by Magistrate Judge Caroline Craven on 6/26/12. (bas) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 06/26/2012) |
| 07/05/2012 | 12 | SUMMONS Returned Executed by DietGoal Innovations LLC. Bravo Media LLC (Division of NBC Universal Media, LLC) served on 6/19/2012, answer due 7/10/2012. (ehs, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 07/05/2012) |
| 08/06/2012 | 13 | ***FILED IN ERROR. PLEASE IGNORE.***Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Bravo Media LLC (Division of NBC Universal Media, LLC).( Carraway, John) Modified on 8/7/2012 (ch, ). [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 08/06/2012) |
| 08/07/2012 | | ***FILED IN ERROR. Document # 13, Dft's Unopposed First Application for Extension of Time. PLEASE IGNORE.*** (ch, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 08/07/2012) |
| 08/07/2012 | 14 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re Bravo Media LLC (Division of NBC Universal Media, LLC).( Carraway, John) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 08/07/2012) |
| 08/07/2012 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint is GRANTED pursuant to Local Rule CV-12 for Bravo Media LLC (Division of NBC Universal Media, LLC) to 8/9/2012. 2 Days Granted for Deadline Extension.( ch, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 08/07/2012) |
| 08/09/2012 | 15 | ANSWER to 1 Complaint, COUNTERCLAIM against DietGoal Innovations LLC by Bravo Media LLC (Division of NBC Universal Media, LLC).(Carraway, John) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 08/09/2012) |
| 08/09/2012 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event Notice of Consent to Proceed Before Magistrate Judge. (ch, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 08/09/2012) |
| 08/13/2012 | 16 | NOTICE by DietGoal Innovations LLC re 11 Order Plaintiff DietGoal Innovations LLC's Notice of Readiness for Scheduling Conference (Joe, Christopher) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 08/13/2012) |
| 08/22/2012 | 17 | CORPORATE DISCLOSURE STATEMENT filed by Bravo Media LLC (Division of NBC Universal Media, LLC) identifying Corporate Parent General Electric Company, Corporate Parent Comcast Corporation for Bravo Media LLC (Division of NBC Universal Media, LLC). (Carraway, John) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 08/22/2012) |
| 09/04/2012 | 18 | DietGoal Innovations LLC's Answer to Defendant Bravo Media, LLC's Counterclaims -- ANSWER to 15 Answer to Complaint, Counterclaim by DietGoal Innovations LLC.(Joe, Christopher) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 09/04/2012) |
| 09/06/2012 | 19 | ORDER TO MEET, REPORT AND APPEAR AT SCHEDULING CONFERENCE, ( Scheduling Conference set for 10/16/2012 10:00 AM in Ctrm 403 (Texarkana) before Magistrate Judge Caroline Craven.). Signed by Magistrate Judge Caroline Craven on 9/5/2012. (sm, ) [Transferred |

| | | |
|---|---|---|
| | | from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 09/06/2012) |
| 09/17/2012 | 🔵 20 | MOTION to Change Venue *to the Southern District of New York* by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Affidavit Declaration of Lisa Hsia, # 2 Exhibit 1 of Hsia Declaration, # 3 Exhibit 2 of Hsia Declaration, # 4 Exhibit 3 of Hsia Declaration, # 5 Affidavit Declaration of J. Christopher Carraway, # 6 Exhibit A of Carraway Declaration, # 7 Exhibit B of Carraway Declaration, # 8 Exhibit C of Carraway Declaration, # 9 Exhibit D of Carraway Declaration, # 10 Exhibit E of Carraway Declaration, # 11 Exhibit F of Carraway Declaration, # 12 Exhibit G of Carraway Declaration, # 13 Exhibit H of Carraway Declaration, # 14 Exhibit I of Carraway Declaration, # 15 Exhibit J of Carraway Declaration, # 16 Exhibit K of Carraway Declaration, # 17 Exhibit L of Carraway Declaration, # 18 Exhibit M of Carraway Declaration, # 19 Exhibit N of Carraway Declaration, # 20 Exhibit O of Carraway Declaration, # 21 Exhibit P of Carraway Declaration, # 22 Exhibit Q of Carraway Declaration, # 23 Exhibit R of Carraway Declaration, # 24 Exhibit S of Carraway Declaration, # 25 Exhibit T of Carraway Declaration, # 26 Exhibit U of Carraway Declaration, # 27 Exhibit V of Carraway Declaration, # 28 Exhibit W of Carraway Declaration, # 29 Exhibit X of Carraway Declaration, # 30 Exhibit Y of Carraway Declaration, # 31 Exhibit Z of Carraway Declaration, # 32 Exhibit AA of Carraway Declaration, # 33 Text of Proposed Order)(Carraway, John) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 09/17/2012) |
| 09/20/2012 | 🔵 21 | NOTICE by DietGoal Innovations LLC re 19 Order, Set Hearings *DietGoal Innovations LLC's Notice of Financial Interest* (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 09/20/2012) |
| 10/02/2012 | 🔵 22 | STATUS REPORT *Parties' Joint Discovery and Case Management Plan* by DietGoal Innovations LLC. (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/02/2012) |
| 10/03/2012 | 🔵 23 | NOTICE by DietGoal Innovations LLC *DIETGOAL INNOVATIONS LLCS NOTICE OF COMPLIANCE WITH SERVICE OF PLAINTIFFS DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS PURSUANT TO P.R. 3-1 AND 3-2* (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/03/2012) |
| 10/04/2012 | 🔵 24 | RESPONSE in Opposition re 20 MOTION to Change Venue *to the Southern District of New York DietGoal Innovations LLC's Response In Opposition to Defendant Bravo Media, LLC's Motion to Transfer Venue to the Southern District of New York filed by DietGoal Innovations LLC.* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Text of Proposed Order)(Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/04/2012) |
| 10/12/2012 | 🔵 25 | NOTICE of Attorney Appearance by Damon Michael Young on behalf of DietGoal Innovations LLC (Young, Damon) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/12/2012) |
| 10/15/2012 | 🔵 26 | REPLY to Response to Motion re 20 MOTION to Change Venue *to the Southern District of New York filed by Bravo Media LLC (Division of NBC Universal Media, LLC).* (Carraway, John) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/15/2012) |
| 10/16/2012 | 🔵 27 | Minute Entry for proceedings held before Magistrate Judge Caroline Craven: Scheduling Conference held on 10/16/2012. (Court Reporter Libby Crawford.) (lfs, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/16/2012) |
| 10/16/2012 | 🔵 28 | ORDER REGARDING E-DISCOVERY IN PATENT CASES. Signed by Magistrate Judge Caroline Craven on 10/16/12. (mrm, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/16/2012) |
| 10/16/2012 | 🔵 29 | SCHEDULING AND DISCOVERY ORDER: Pretrial Conference set for 7/1/2014 09:00 AM in Ctrm 403 (Texarkana) before Magistrate Judge Caroline Craven. Amended Pleadings due by 11/15/2012. Discovery due by 10/16/2013. Joinder of Parties due by 11/15/2012. Mediation Completion due by 10/30/2013. Markman Hearing set for 5/22/2013 09:00 AM in Ctrm 403 (Texarkana) before Magistrate Judge Caroline Craven. Proposed Pretrial Order due by 5/29/2014. Signed by Magistrate Judge Caroline Craven on 10/16/12. (bas) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/16/2012) |
| 10/25/2012 | 🔵 30 | SUR-REPLY to Reply to Response to Motion re 20 MOTION to Change Venue *to the Southern District of New York Plaintiff DietGoal Innovations LLC's Sur-Reply to Bravo Media, LLC's Motion to Transfer Venue to The Southern District of New York filed by DietGoal Innovations LLC.* (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/25/2012) |
| 11/05/2012 | 🔵 32 | MOTION PRACTICE ORDER signed by Magistrate Judge Caroline Craven on 11/5/12. (bas) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/05/2012) |
| 11/07/2012 | 🔵 33 | Submission of Proposed Agreed Protective order by DietGoal Innovations LLC *Joint Motion for Entry of Protective Order.* (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Text of Proposed Order Proposed Protective Order)(Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/07/2012) |
| 11/08/2012 | 🔵 | NOTICE - please disregard the filed in error for # 33, it has not been terminated. (ch, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/08/2012) |
| 11/13/2012 | 🔵 34 | Joint MOTION to Amend/Correct *Joint Motion to Modify Scheduling Order* by DietGoal Innovations LLC. (Attachments: # 1 Text of Proposed Order Proposed ORDER)(Tavakoli, Monica) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/13/2012) |
| 11/14/2012 | 🔵 35 | ORDER granting 34 Motion to Modify. Signed by Magistrate Judge Caroline Craven on 11/14/12. (bas) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/14/2012) |
| 11/15/2012 | 🔵 36 | NOTICE by DietGoal Innovations LLC *DietGoal Innovations LLC's Notice of Compliance With Service of Initial Disclosures* (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/15/2012) |
| 11/16/2012 | 🔵 37 | NOTICE by Bravo Media LLC (Division of NBC Universal Media, LLC) *DEFENDANT BRAVO MEDIA, LLCS NOTICE OF COMPLIANCE WITH SERVICE OF INITIAL DISCLOSURES* (Carraway, John) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/16/2012) |
| 11/20/2012 | 🔵 38 | ORDER resetting deadline to designate Lead Defendant to DECEMBER 7, 2012. Signed by Magistrate Judge Caroline Craven on 11/20/12. (bas) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/20/2012) |

A066

| | | |
|---|---|---|
| 11/27/2012 | 39 | ORDER re 33 Submission of Proposed Protective Order, filed by DietGoal Innovations LLC. Signed by Magistrate Judge Caroline Craven on 11/27/12. (bas) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/27/2012) |
| 12/04/2012 | 40 | NOTICE of Discovery Disclosure by DietGoal Innovations LLC *DietGoal Innovations LLC's Notice of Compliance With Service of Plaintiff's First Amended Disclosure of Asserted Claims and Infringement Contentions* (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 12/04/2012) |
| 12/05/2012 | 41 | PROTECTIVE ORDER. Signed by Magistrate Judge Caroline Craven on 12/5/2012. (sm, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 12/05/2012) |
| 12/17/2012 | 42 | NOTICE by DietGoal Innovations LLC *Plaintiff's Notice of Compliance Regarding the Disclosure of Proposed Terms and Claim Elements for Construction, P.R. 4-1* (Tavakoli, Monica) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 12/17/2012) |
| 12/18/2012 | 43 | NOTICE by Bravo Media LLC (Division of NBC Universal Media, LLC) *Defendant's Notice Of Compliance Concerning The Disclosure Of Proposed Terms Pursuant TO P.R. 4-1* (Carraway, John) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 12/18/2012) |
| 01/08/2013 | 44 | ***DEFICIENT DOCUMENT, PLEASE IGNORE***Opposed MOTION to Stay *Proceedings Pending Ruling on Motions to Transfer Venue* by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit) (Carraway, John) Modified on 1/8/2013 (sm, ). [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/08/2013) |
| 01/08/2013 | | NOTICE of DEFICIENCY regarding the #44 Opposed Motion to stay submitted by Bravo Media LLC (Division of NBC Universal Media, LLC). Exhibits were not properly identified with specifity per local rules. Correction should be made by 1 business day and refiled. This motion is now TERMINATED. (sm, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/08/2013) |
| 01/08/2013 | 45 | Joint MOTION to Stay *Proceedings Pending Ruling on Motions to Transfer Venue* by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Exhibit Exhibit 1: Scheduling Conference Transcript, # 2 Exhibit Exhibit 2: EatingWell Website, # 3 Exhibit Exhibit 3: Bravo Website, # 4 Exhibit Exhibit 4: RealSimple Website, # 5 Text of Proposed Order Proposed Order)(Carraway, John) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/08/2013) |
| 01/15/2013 | 46 | Order reassigning this case to United States District Judge Rodney Gilstrap and referring this case to United States Magistrate Judge Roy Payne per General Order 13-3. For proposed scheduling order see Appendix E to General Order 13-3. Judge Michael H. Schneider, Magistrate Judge Caroline Craven no longer assigned to the case. (tlh, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/15/2013) |
| 01/15/2013 | 47 | Joint MOTION for Extension of Time to File *P.R. 4-2 Disclosures and Privilege Logs* by DietGoal Innovations LLC. (Attachments: # 1 Text of Proposed Order Proposed Order)(Tavakoli, Monica) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/15/2013) |
| 01/16/2013 | 48 | ORDER granting 47 Motion for Extension of Time to File. Signed by Magistrate Judge Roy S. Payne on January 16, 2013. (jml) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/16/2013) |
| 01/23/2013 | 49 | Joint MOTION to Amend/Correct 29 Scheduling Order, Set Scheduling Order Deadlines,,,, *Joint Motion to Modify Scheduling Order re P.R. 4-2 and Privilege Logs* by DietGoal Innovations LLC. (Attachments: # 1 Text of Proposed Order)(Tavakoli, Monica) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/23/2013) |
| 01/28/2013 | 50 | RESPONSE to Motion re 45 Joint MOTION to Stay *Proceedings Pending Ruling on Motions to Transfer Venue Plaintiff DietGoal Innovations LLCs Response to Defendants Joint Motion to Stay Proceedings Pending Ruling on Motion to Transfer* filed by DietGoal Innovations LLC. (Attachments: # 1 Text of Proposed Order Proposed ORDER)(Buether, Eric) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/28/2013) |
| 01/28/2013 | 51 | Joint MOTION for New Trial *in a Reassigned Case* by DietGoal Innovations LLC. (Attachments: # 1 Text of Proposed Order)(Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/28/2013) |
| 01/28/2013 | 52 | Submission of Proposed Agreed Discovery order by DietGoal Innovations LLC. (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/28/2013) |
| 01/30/2013 | 53 | Unopposed MOTION to Amend/Correct 29 Scheduling Order, Set Scheduling Order Deadlines,,,, *Unopposed Motion to Modify Scheduling Order re P.R. 4-2 and Privilege Logs* by DietGoal Innovations LLC. (Attachments: # 1 Text of Proposed Order)(Tavakoli, Monica) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 01/30/2013) |
| 02/05/2013 | 54 | Unopposed MOTION to Amend/Correct 29 Scheduling Order, Set Scheduling Order Deadlines,,,, *Unopposed Motion to Modify Scheduling Order re P.R. 4-2 and Privilege Logs* by DietGoal Innovations LLC. (Attachments: # 1 Text of Proposed Order)(Tavakoli, Monica) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 02/05/2013) |
| 02/06/2013 | 55 | REPLY to Response to Motion re 45 Joint MOTION to Stay *Proceedings Pending Ruling on Motions to Transfer Venue [Defendants' Joint Reply on their Motion to Stay Proceedings Pending Ruling on Motion to Transfer]* filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carraway, John) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 02/06/2013) |
| 02/19/2013 | 56 | SUR-REPLY to Reply to Response to Motion re 45 Joint MOTION to Stay *Proceedings Pending Ruling on Motions to Transfer Venue* filed by DietGoal Innovations LLC. (Buether, Eric) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 02/19/2013) |
| 02/26/2013 | | ORDER re 20 MOTION to Change Venue *to the Southern District of New York.* Plaintiff is directed to file a supplemental brief of no more than 2 pages by March 4, 2013 that addresses whether this patent infringement action could have been brought in the Eastern District of Virginia. Any responsive brief must be filed no later than March 6, 2013. Signed by Magistrate Judge Roy S. Payne on 2/26/2013. (No document attached).(rsp1) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 02/26/2013) |

A067

| | | |
|---|---|---|
| 03/04/2013 | 57 | BRIEF filed *Supplemental Brief in Opposition to Defendant's Motion to Transfer* by DietGoal Innovations LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 03/04/2013) |
| 03/08/2013 | 61 | NOTICE by DietGoal Innovations LLC *Notice of Compliance re Amended Initial Disclosures* (Bukovcan, Niknaz) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 03/08/2013) |
| 04/09/2013 | 62 | ORDER granting 20 Motion to Change Venue. Signed by Magistrate Judge Roy S. Payne on 4/8/13. (bas, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 04/09/2013) |
| 04/29/2013 | | Interdistrict transfer to the Southern District of New York. (bas, ) [Transferred from Texas Eastern on 4/30/2013.] [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 04/29/2013) |
| 04/30/2013 | 63 | Case transferred in from District of Texas Eastern; Case Number 2:12-cv-00327. Original file and docket sheet received. [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 04/30/2013) |
| 04/30/2013 | 64 | Report on the filing or determination of an action regarding patent 6,585,516. (gwalk, ) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 04/30/2013) |
| 05/02/2013 | 65 | NOTICE of Appearance by Robert Armistead Angle on behalf of Bravo Media LLC (Division of NBC Universal Media, LLC) (Angle, Robert) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 66 | Motion to appear Pro Hac Vice by John Christopher Carraway and Certification of Local Counsel Robert Armistead Angle Filing fee $ 75, receipt number 0422-3501227. by Bravo Media LLC (Division of NBC Universal Media, LLC). (Angle, Robert) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 67 | MOTION to Transfer Case *to the Southern District of New York Pursuant to 28 U.S.C. 1404(a)* by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carr, Dabney) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 68 | Memorandum in Support re 67 MOTION to Transfer Case *to the Southern District of New York Pursuant to 28 U.S.C. 1404(a) (Public Version)* filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5 (Filed Under Seal), # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(Carr, Dabney) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 69 | MOTION to Seal *Documents* by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carr, Dabney) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 70 | Memorandum in Support re 69 MOTION to Seal *Documents* filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Proposed Order)(Carr, Dabney) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 71 | NOTICE by Bravo Media LLC (Division of NBC Universal Media, LLC) *of Motion to File Documents Under Seal* (Carr, Dabney) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 72 | Declaration *of Lisa Hsia in Support of Motion to Transfer Venue to the Southern District of New York Pursuant to 28 U.S.C. 1404* by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carr, Dabney) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 73 | NOTICE of Appearance by Steven War on behalf of DietGoal Innovations LLC (War, Steven) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 74 | First Motion to appear Pro Hac Vice by Christopher Michael Joe and Certification of Local Counsel Steven War Filing fee $ 75, receipt number 0422-3502100. by DietGoal Innovations LLC. (War, Steven) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/02/2013 | 75 | First Motion to appear Pro Hac Vice by Michael David Ricketts and Certification of Local Counsel Steven War Filing fee $ 75, receipt number 0422-3502102. by DietGoal Innovations LLC. (War, Steven) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/02/2013) |
| 05/06/2013 | 77 | Notice of Hearing Date *May 24, 2013 at 10 00 a.m.* re 67 MOTION to Transfer Case *to the Southern District of New York Pursuant to 28 U.S.C. 1404(a)* (Angle, Robert) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/06/2013) |
| 05/06/2013 | 78 | Notice of Hearing Date *May 24, 2013, at 10 00 a.m.* re 69 MOTION to Seal *Documents* (Angle, Robert) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/06/2013) |
| 05/07/2013 | 79 | First Motion to appear Pro Hac Vice by Eric William Buether and Certification of Local Counsel Steven War Filing fee $ 75, receipt number 0422-3505998. by DietGoal Innovations LLC. (War, Steven) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/07/2013) |
| 05/07/2013 | | Set Deadlines as to 67 MOTION to Transfer Case *to the Southern District of New York Pursuant to 28 U.S.C. 1404(a),* 69 MOTION to Seal *Documents.* Motion Hearing set for 5/24/2013 at 10:00 AM in Alexandria Courtroom 800 before District Judge Claude M. Hilton. (clar, ) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/07/2013) |
| 05/07/2013 | 80 | ORDER granting 66 Motion for Pro hac vice. Signed by District Judge Claude M. Hilton on 5/7/13. (nhall) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/09/2013) |
| 05/07/2013 | 81 | ORDER granting 74 Motion for Pro hac vice. Signed by District Judge Claude M. Hilton on 5/7/13. (nhall) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/09/2013) |
| 05/07/2013 | 82 | ORDER granting 75 Motion for Pro hac vice. Signed by District Judge Claude M. Hilton on 5/7/13. (nhall) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/09/2013) |
| 05/09/2013 | 83 | ORDER granting 79 Motion for Pro hac vice. Signed by District Judge Claude M. Hilton on 5/9/13. (nhall) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/10/2013) |
| 05/13/2013 | 84 | Opposition to 67 MOTION to Transfer Case *to the Southern District of New York Pursuant to 28 U.S.C. 1404(a)* filed by DietGoal Innovations LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Proposed Order)(War, Steven) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/13/2013) |

| 05/13/2013 | 85 | First Motion to appear Pro Hac Vice by Niknaz Bukovcan and Certification of Local Counsel Steven War Filing fee $ 75, receipt number 0422-3515119. by DietGoal Innovations LLC. (War, Steven) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/13/2013) |
| 05/15/2013 | 86 | ORDERED that the hearing on the Defendant's Motion to Transfer Venue scheduled for 5/24/2013 is hereby removed from the Court's docket. Signed by District Judge Claude M. Hilton on 5/15/2013. (rban, ) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/16/2013) |
| 05/17/2013 | 87 | ORDER granting 85 Motion for Pro hac vice. Signed by District Judge Claude M. Hilton on 5/17/13. (nhall) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/17/2013) |
| 05/20/2013 | 88 | REPLY to Response to Motion re 67 MOTION to Transfer Case *to the Southern District of New York Pursuant to 28 U.S.C. 1404(a)* filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Angle, Robert) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 05/20/2013) |
| 08/22/2013 | 89 | NOTICE of Appearance by Harrison Scott Kelly on behalf of Bravo Media LLC (Division of NBC Universal Media, LLC) (Kelly, Harrison) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 08/22/2013) |
| 09/18/2013 | | Case transferred in from Alexandria Division. Case Number 1:13cv522. (rban, ) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 09/18/2013) |
| 10/28/2013 | | MOTION REFERRED to Magistrate Judge Lawrence R. Leonard. 69 MOTION to Seal *Documents* (rsim, ) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 10/28/2013) |
| 11/01/2013 | 91 | NOTICE by DietGoal Innovations LLC *of Filing Motion to Transfer* (Attachments: # 1 Exhibit A)(War, Steven) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/01/2013) |
| 11/19/2013 | 92 | MEMORANDUM OPINION AND ORDER granting motion to transfer to the Southern District of New York. Signed by District Judge Raymond A. Jackson on 11/19/13. (tbro) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/21/2013) |
| 11/19/2013 | | Case transferred to District of Southern District of New York. (tbro) [Transferred from Virginia Eastern on 11/25/2013.] (Entered: 11/21/2013) |
| 11/25/2013 | 93 | CASE TRANSFERRED IN from the United States District Court - District of Virginia Eastern; Case Number: 2:13-cv-00515. Original file certified copy of transfer order and docket entries received. (sjo) (Entered: 11/25/2013) |
| 11/25/2013 | | Case Designated ECF. (sjo) (Entered: 11/25/2013) |
| 11/25/2013 | | NOTE TO OUT OF STATE ATTORNEYS: Please visit the Court's website at http://www.nysd.uscourts.gov for information regarding admission to the S.D.N.Y. Bar and the CM/ECF Rules & Filing Instructions. (sjo) (Entered: 11/25/2013) |
| 11/25/2013 | | Case Eligible for Patent Pilot Program. (sjo) (Entered: 11/25/2013) |
| 11/25/2013 | | Magistrate Judge Michael H. Dolinger is so designated. (sjo) (Entered: 11/25/2013) |
| 11/25/2013 | 94 | STANDING ORDER IN RE PILOT PROJECT REGARDING CASE MANAGEMENT TECHNIQUES FOR COMPLEX CIVIL CASES IN THE SOUTHERN DISTRICT OF NEW YORK (See M-10-468 Order filed November 1, 2011). This case is hereby designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York (the Pilot Project), unless the judge to whom this case is assigned determines otherwise. This case is designated for inclusion in the Pilot Project because it is a class action, an MDL action, or is in one of the following Nature of Suit categories: 160, 245, 315, 355, 365, 385, 410, 830, 840, 850, 893, or 950. The presiding judge in a case that does not otherwise qualify for inclusion in the Pilot Project may nevertheless designate the case for inclusion in the Pilot Project by issuing an order directing that the case be included in the Pilot Project. The description of the Pilot Project, including procedures to be followed, is attached to this Order. (Signed by Judge Loretta A. Preska on 10/31/2011) (sjo) (Entered: 11/25/2013) |
| 12/06/2013 | 95 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** MOTION for J. Christopher Carraway to appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9149326. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Exhibit A - Certificate of Good Standing, # 2 Exhibit B - Proposed Order) (Carraway, John) Modified on 12/6/2013 (wb). (Entered: 12/06/2013) |
| 12/06/2013 | | **>>>NOTICE REGARDING DEFICIENT MOTION TO APPEAR PRO HAC VICE. Notice regarding Document No. 95 MOTION for J. Christopher Carraway to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9149326. Motion and supporting papers to be reviewed by Clerk's Office staff.. The filing is deficient for the following reason(s): Missing Certificate of Good Standing. Certificate of Good Standing must be issued from the Supreme Court of Montana and Oregon with a Clerk of Court Signature. Re-file the document as a Corrected Motion to Appear Pro Hac Vice and attach a valid Certificate of Good Standing, issued within the past 30 days. (wb)** (Entered: 12/06/2013) |
| 12/11/2013 | 96 | MOTION for Eric William Buether to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9165904. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by DietGoal Innovations LLC. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Text of Proposed Order)(Buether, Eric) (Entered: 12/11/2013) |
| 12/11/2013 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 96 MOTION for Eric William Buether to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9165904. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 12/11/2013) |
| 12/11/2013 | 97 | MOTION for Christopher Michael Joe to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9166203. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by DietGoal Innovations LLC. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Text of Proposed Order)(Joe, Christopher) (Entered: 12/11/2013) |
| 12/11/2013 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 97 MOTION for Christopher Michael Joe to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9166203. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 12/11/2013) |
| 12/12/2013 | 98 | MOTION for John Christopher Carraway to Appear Pro Hac Vice *(Corrected Motion for John Christopher Carraway to Appear Pro Hac Vice)*. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Exhibit Certificates of Good Standing, # 2 Text of Proposed Order)(Carraway, John) (Entered: 12/12/2013) |

A069

| | | |
|---|---|---|
| 12/13/2013 | 🌐 | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 98 MOTION for John Christopher Carraway to Appear Pro Hac Vice *(Corrected Motion for John Christopher Carraway to Appear Pro Hac Vice)*. Motion and supporting papers to be reviewed by Clerk's Office staff. MOTION for John Christopher Carraway to Appear Pro Hac Vice *(Corrected Motion for John Christopher Carraway to Appear Pro Hac Vice)*. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 12/13/2013) |
| 12/20/2013 | 🌐 99 | NOTICE OF COURT CONFERENCE: Status Conference set for 1/17/2014 at 03:45 PM in Courtroom 619 at the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, NY 10007 before Judge Edgardo Ramos. (ft) (Entered: 12/20/2013) |
| 12/20/2013 | 🌐 100 | ORDER FOR ADMISSION PRO HAC VICE granting 98 Motion for John Christopher Carraway to Appear Pro Hac Vice. (Signed by Judge Edgardo Ramos on 12/20/2013) (mro) (Entered: 12/23/2013) |
| 12/20/2013 | 🌐 101 | ORDER FOR ADMISSION PRO HAC VICE granting 96 Motion for Eric William Buether to Appear Pro Hac Vice. (Signed by Judge Edgardo Ramos on 12/20/2013) (mro) (Entered: 12/23/2013) |
| 12/20/2013 | 🌐 102 | ORDER FOR ADMISSION PRO HAC VICE granting 97 Motion for Christopher Michael Joe to Appear Pro Hac Vice. (Signed by Judge Edgardo Ramos on 12/20/2013) (mro) (Entered: 12/23/2013) |
| 12/23/2013 | 🌐 | NOTICE OF CASE REASSIGNMENT to Judge Paul A. Engelmayer. Judge Edgardo Ramos is no longer assigned to the case. (pgu) (Entered: 12/23/2013) |
| 12/26/2013 | 🌐 103 | MOTION for Michael David Ricketts to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9209993. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by DietGoal Innovations LLC. (Attachments: # 1 Certificate of Good Standing, # 2 Text of Proposed Order)(Ricketts, Michael) (Entered: 12/26/2013) |
| 12/27/2013 | 🌐 | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 103 MOTION for Michael David Ricketts to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9209993. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 12/27/2013) |
| 12/31/2013 | 🌐 104 | ORDER FOR ADMISSION PRO HAC VICE: granting 103 Motion for Michael D. Ricketts to Appear Pro Hac Vice. (Signed by Judge Paul A. Engelmayer on 12/29/2013) (djc) (Entered: 12/31/2013) |
| 01/02/2014 | 🌐 105 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 1/22/2014 at 11:00 AM in Courtroom 1305, 40 Centre Street, New York, NY 10007 before Judge Paul A. Engelmayer as further set forth in this order. (Signed by Judge Paul A. Engelmayer on 1/2/2014) (lmb) (Entered: 01/02/2014) |
| 01/17/2014 | 🌐 106 | RULE 26(f) DISCOVERY PLAN REPORT.Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC), DietGoal Innovations LLC.(Carraway, John) (Entered: 01/17/2014) |
| 01/17/2014 | 🌐 107 | JOINT LETTER addressed to Judge Paul A. Engelmayer from J. Christopher Carraway dated 1/17/14 re: Requested Information for Initial Pretrial Conference. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC), DietGoal Innovations LLC.(Carraway, John) (Entered: 01/17/2014) |
| 01/22/2014 | 🌐 108 | ORDER: that the parties are to notify the Court when the United States Judicial Panel on Multidistrict Litigation ("MDL panel") decides plaintiff's motion to transfer actions for coordinated or consolidated pretrial proceedings; meet and confer after the MDL panel's decision in order to set a briefing schedule for defendants' anticipated summary judgment motions (ensuring that briefing is completed by April 14, 2014); and propose this briefing schedule to the Court in a joint letter within seven days of the MDL panel's decision. The next conference in this case is set for April 24, 2014 at 5 p.m. Status Conference set for 4/24/2014 at 05:00 PM before Judge Paul A. Engelmayer.) (Signed by Judge Paul A. Engelmayer on 1/22/2014) (tn) (Entered: 01/22/2014) |
| 01/22/2014 | 🌐 | Minute Entry for proceedings held before Judge Paul A. Engelmayer: Initial Pretrial Conference held on 1/22/2014. The Court directed the parties to (1) notify the Court when the MDL panel decides plaintiff's motion to transfer actions for coordinated or consolidated pretrial proceedings; (2) meet and confer after MDL panel's decision to set a briefing schedule for defendant's summary judgment motions; (3) propose this briefing schedule to the Court in a joint letter within 7 days of MDL panel's decision. Next pretrial conference scheduled for April 24, 2014 at 5 p.m. The Court will issue an order. (Hummel, June) (Entered: 01/23/2014) |
| 01/22/2014 | 🌐 109 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: All parties do not consent to conducting all further proceedings before a Magistrate Judge, including motions and trial. 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. This case is to be tried to a jury. Motions due by 2/22/2014. Depositions to be completed by 10/1/2014. All Fact Discovery to be completed by 12/5/2014. All Expert Discovery to be completed by 1/20/2015. Counsel for the parties have conferred and their present best estimate of the length of trial is 4-7 days. The parties disagree, however, on the topic of 30(b)(6) testimony. Plaintiff DietGoal maintains that it is entitled to seven hours of testimony per each properly served 30(b)(6) notice regardless of which individual(s) Time designates to testify on its behalf. Time, however, maintains that allowing DietGoal to break up a 30(b)(6) deposition notice into several separate notices, each giving it up to seven additional hours with the same witness, would not only subject one witness to an unreasonable amount of deposition hours but also would violate numerous portions of Rule 30, including the presumptive restriction against taking additional depositions of a person (which includes corporations) I and the presumptive limit of seven hours for a person designated under Rule 30(b)(6). To be re solved at a later day. - PAE. Case Management Conference set for 4/24/2014 at 05:00 PM before Judge Paul A. Engelmayer. Pretrial Order due by 2/19/2015. (Signed by Judge Paul A. Engelmayer on 1/22/2014) (djc) Modified on 1/24/2014 (djc). Modified on 1/24/2014 (djc). (Entered: 01/23/2014) |
| 01/27/2014 | 🌐 110 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT** - NOTICE of Amended and Supplemental Complaint. Document filed by DietGoal Innovations LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Ricketts, Michael) Modified on 1/31/2014 (lb). (Entered: 01/27/2014) |
| 01/31/2014 | 🌐 | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Michael David Ricketts to E-MAIL caseopenings@nysd uscourts.gov. Document No. 110 Amended Complaint. This document is not filed via ECF. (lb)** (Entered: 01/31/2014) |
| 01/31/2014 | 🌐 111 | AMENDED COMPLAINT amending 1 Complaint, against Bravo Media LLC (Division of NBC Universal Media, LLC) with JURY DEMAND.Document filed by DietGoal Innovations LLC. Related document: 1 Complaint, filed by DietGoal Innovations LLC.(lmb) (Entered: 01/31/2014) |

**Case: 14-1631      Document: 182      Page: 137      Filed: 09/25/2014**

| 02/03/2014 | ⏺ 112 | ANSWER to 111 Amended Complaint with JURY DEMAND., COUNTERCLAIM against DietGoal Innovations LLC. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Carraway, John) (Entered: 02/03/2014) |
|---|---|---|
| 02/20/2014 | ⏺ 113 | CERTIFIED TRUE COPY OF MDL ORDER FROM THE MDL PANEL DENYING TRANSFER....that the motion, pursuant to 28 U.S.C. 1407(c), for transfer of the action to the United States District Court - Eastern District of Texas, be, and the same hereby is denied. (Signed by MDL Panel on 2/19/2014) (sjo) (sjo). (Entered: 02/20/2014) |
| 02/21/2014 | ⏺ 114 | ANSWER to 112 Counterclaim. Document filed by DietGoal Innovations LLC.(Ricketts, Michael) (Entered: 02/21/2014) |
| 02/25/2014 | ⏺ 115 | JOINT LETTER addressed to Judge Paul A. Engelmayer from J. Christopher Carraway dated 02/25/14 re: Proposed Schedule for Summary Judgment Briefing. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC), DietGoal Innovations LLC.(Carraway, John) (Entered: 02/25/2014) |
| 02/25/2014 | ⏺ 117 | MEMO ENDORSEMENT on 116 Letter, filed by Bravo Media LLC (Division of NBC Universal Media, LLC), DietGoal Innovations LLC. re Bravo first Summary Judgment Motion due by 3/7/2014. Responses due by 3/24/2014. Replies due by 4/3/2014. Bravo's Second Motion for Summary Judgment due by 3/19/2014. Responses due by 4/4/2014. Replies due by 4/14/2014. The schedule above is granted. (Signed by Judge Paul A. Engelmayer on 2/25/2014) (cd) Modified on 2/28/2014 (cd). (Entered: 02/26/2014) |
| 02/25/2014 | ⏺ 118 | ENDORSED LETTER addressed to Judge Paul A. Engelmayer from Robert A. Angle dated 1/24/2014 re: Request for withdrawal of Troutman Sanders from counsel of record. ENDORSEMENT: The Clerk of Court is directed to remove Troutman Sanders as counsel to Bravo Media in the case 12 civ 8391. (Signed by Judge Paul A. Engelmayer on 2/25/2014) (cd) (Main Document 118 replaced on 2/28/2014) (cd). (Entered: 02/26/2014) |
| 02/26/2014 | ⏺ 116 | JOINT LETTER addressed to Judge Paul A. Engelmayer from J. Christopher Carraway dated 2/25/14 re: Proposed Schedule for Summary Judgment Briefing. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC), DietGoal Innovations LLC. (Attachments: # 1 Exhibit Order Dening Transfer)(Carraway, John) (Entered: 02/26/2014) |
| 02/27/2014 | ⏺ 119 | STIPULATION FOR ENTRY OF E-DiSCOVERY ORDER: Plaintiff DietGoal Innovations, LLC and Defendant Bravo Media LLC stipulate to the entry by this Court of the E-Discovery Order previously entered on October 16, 2012 by Magistrate Judge Caroline Craven of the Eastern District of Texas in Civil Action No.2: 12-cv-00327-MHS-CMC, Docket No. 28. The E-Discovery Order is attached hereto as Exhibit A. (Signed by Judge Paul A. Engelmayer on 2/27/2014) (cd) (Entered: 02/27/2014) |
| 03/07/2014 | ⏺ 120 | MOTION for Summary Judgment of Non-Infringement and (Alternatively) Invalidity Under 35 U.S.C. § 112. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). Responses due by 3/24/2014(Carraway, John) (Entered: 03/07/2014) |
| 03/07/2014 | ⏺ 121 | MEMORANDUM OF LAW in Support re: 120 MOTION for Summary Judgment of Non-Infringement and (Alternatively) Invalidity Under 35 U.S.C. § 112.. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carraway, John) (Entered: 03/07/2014) |
| 03/07/2014 | ⏺ 122 | AFFIDAVIT of James Napolitano in Support re: 120 MOTION for Summary Judgment of Non-Infringement and (Alternatively) Invalidity Under 35 U.S.C. § 112.. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carraway, John) (Entered: 03/07/2014) |
| 03/07/2014 | ⏺ 123 | AFFIDAVIT of J. Christopher Carraway in Support re: 120 MOTION for Summary Judgment of Non-Infringement and (Alternatively) Invalidity Under 35 U.S.C. § 112.. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Exhibit A: '516 Patent, # 2 Exhibit B: '516 Patent Reexam Certificate, # 3 Exhibit C: '386 Patent, # 4 Exhibit D: Reexam Request, # 5 Exhibit E: Reexam Response, # 6 Exhibit F: Reexam Office Action, # 7 Exhibit G: Reexam Right of Appeal Notice, # 8 Exhibit H: Infringement Contentions, # 9 Exhibit I: TK Holdings v CTS, # 10 Exhibit J: Reexam Notice of Intent to Issue Reexam Certificate)(Carraway, John) (Entered: 03/07/2014) |
| 03/07/2014 | ⏺ 124 | RULE 56.1 STATEMENT. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carraway, John) (Entered: 03/07/2014) |
| 03/10/2014 | ⏺ 125 | MOTION for Norman Andrew Sfeir to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9439174. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Certificate of Good Standing, # 2 Text of Proposed Order)(Sfeir, Norman) (Entered: 03/10/2014) |
| 03/11/2014 | ⏺ | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 125 MOTION for Norman Andrew Sfeir to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-9439174. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (wb)** (Entered: 03/11/2014) |
| 03/12/2014 | ⏺ 126 | ORDER FOR ADMISSION PRO HAC VICE granting 125 Motion for Norman Andrew Sfeir to Appear Pro Hac Vice. (Signed by Judge Paul A. Engelmayer on 3/11/2014) (kgo) (Entered: 03/12/2014) |
| 03/19/2014 | ⏺ 127 | MOTION for Summary Judgment of Patent Ineligibility Pursuant to 35 U.S.C. § 101. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). Responses due by 4/4/2014(Carraway, John) (Entered: 03/19/2014) |
| 03/19/2014 | ⏺ 128 | MEMORANDUM OF LAW in Support re: 127 MOTION for Summary Judgment of Patent Ineligibility Pursuant to 35 U.S.C. § 101.. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carraway, John) (Entered: 03/19/2014) |
| 03/19/2014 | ⏺ 129 | RULE 56.1 STATEMENT. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carraway, John) (Entered: 03/19/2014) |
| 03/19/2014 | ⏺ 130 | AFFIDAVIT of J. Christopher Carraway in Support re: 127 MOTION for Summary Judgment of Patent Ineligibility Pursuant to 35 U.S.C. § 101.. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Exhibit 1 - 516 Patent and Reexam Certificate, # 2 Exhibit 2 - 516 Patent Claims, # 3 Exhibit 3 - Cited Cases, # 4 Exhibit 4 - MPEP 2106, # 5 Exhibit 5 - PTO Memo, # 6 Exhibit 6 - Contentions against Bravo, # 7 Exhibit 7 - Contentions against Time, # 8 Exhibit 8 - Contentions, # 9 Exhibit 9 - Contentions against General Mills, # 10 Exhibit 10 - Contentions against Subway, # 11 Exhibit 11 - Hearing Transcript, # 12 Exhibit 12 - Deal-A-Meal, # 13 Exhibit 13 - Exemplary Ineligible Claims from Cases)(Carraway, John) (Entered: 03/19/2014) |
| 03/24/2014 | ⏺ 131 | MEMORANDUM OF LAW in Opposition re: 120 MOTION for Summary Judgment of Non-Infringement and (Alternatively) Invalidity Under 35 U.S.C. § 112.. Document filed by DietGoal Innovations LLC. (Buether, Eric) (Entered: 03/24/2014) |

A071

| 03/24/2014 | 132 | DECLARATION of Dr. Bryan P. Bergeron in Opposition re: 120 MOTION for Summary Judgment of *Non-Infringement and (Alternatively) Invalidity Under 35 U.S.C. § 112.*. Document filed by DietGoal Innovations LLC. (Attachments: # 1 Exhibit A - Bergeron Declaration, # 2 Exhibit B - Bergeron Declaration, # 3 Exhibit C - Bergeron Declaration, # 4 Exhibit D - Bergeron Declaration, # 5 Exhibit E - Bergeron Declaration)(Buether, Eric) (Entered: 03/24/2014) |
| 03/24/2014 | 133 | DECLARATION of Eric W. Buether in Opposition re: 120 MOTION for Summary Judgment of *Non-Infringement and (Alternatively) Invalidity Under 35 U.S.C. § 112.*. Document filed by DietGoal Innovations LLC. (Attachments: # 1 Exhibit A - Buether Declaration, # 2 Exhibit B - Buether Declaration, # 3 Exhibit C - Buether Declaration, # 4 Exhibit D - Buether Declaration, # 5 Exhibit E - Buether Declaration) (Buether, Eric) (Entered: 03/24/2014) |
| 03/24/2014 | 134 | RESPONSE in Opposition to Motion re: 120 MOTION for Summary Judgment of *Non-Infringement and (Alternatively) Invalidity Under 35 U.S.C. § 112. Plaintiff DietGoal Innovations LLC's Opposition to Defendant's Statement of Material Facts Pursuant to Local Rule 56.1.* Document filed by DietGoal Innovations LLC. (Buether, Eric) (Entered: 03/24/2014) |
| 04/03/2014 | 135 | REPLY MEMORANDUM OF LAW in Support re: 120 MOTION for Summary Judgment of *Non-Infringement and (Alternatively) Invalidity Under 35 U.S.C. § 112.*. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carraway, John) (Entered: 04/03/2014) |
| 04/07/2014 | 136 | MEMORANDUM OF LAW in Opposition re: 127 MOTION for Summary Judgment of *Patent Ineligibility Pursuant to 35 U.S.C. § 101.*. Document filed by DietGoal Innovations LLC. (Buether, Eric) (Entered: 04/07/2014) |
| 04/07/2014 | 137 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - RESPONSE in Opposition to Motion re: 127 MOTION for Summary Judgment of *Patent Ineligibility Pursuant to 35 U.S.C. § 101. Plaintiff's Opposition to Defendant's Statement of Material Facts Pursuant to Local Rule 56.1.* Document filed by DietGoal Innovations LLC. (Buether, Eric) Modified on 4/8/2014 (db). (Entered: 04/07/2014) |
| 04/07/2014 | 138 | DECLARATION of Eric W. Buether in Opposition re: 127 MOTION for Summary Judgment of *Patent Ineligibility Pursuant to 35 U.S.C. § 101.*. Document filed by DietGoal Innovations LLC. (Attachments: # 1 Exhibit A - Buether Declaration, # 2 Exhibit B - Buether Declaration, # 3 Exhibit C - Buether Declaration)(Buether, Eric) (Entered: 04/07/2014) |
| 04/08/2014 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Note to Attorney Eric William Buether to RE-FILE Document 137 Response in Opposition to Motion. Use the event type Response (non-motion) found under the event list Other Answers. (db)** (Entered: 04/08/2014) |
| 04/08/2014 | 139 | RESPONSE re: 127 MOTION for Summary Judgment of *Patent Ineligibility Pursuant to 35 U.S.C. § 101. Memorandum of Law in Opposition to Defendant Bravo Media LLC's Motion for Summary Judgment of Patent Ineligibility Pursuant to 35 U.S.C. Sec. 101.* Document filed by DietGoal Innovations LLC. (Buether, Eric) (Entered: 04/08/2014) |
| 04/09/2014 | 140 | ORDER: As stated above, the next conference in this case is set for April 24, 2014 at 5 p.m. In light of a pending trial before the Court that is likely to be continuing on April 24, 2014, it is necessary to reschedule this conference. The conference will now take place on May 20, 2014 at 2 p.m. At this conference, the parties should be prepared to discuss the two pending summary judgment motions. Separately, the parties have filed, at docket number 113, what purports to be a "Certified True Copy of MDL Order from the MDL Panel denying transfer." However, upon the Court's review, the file is an MDL Order in a different case. The parties are directed to work with docketing to ensure docket number 113 reflects the correct MDL Order. ( Case Management Conference reset for 5/20/2014 at 02:00 PM before Judge Paul A. Engelmayer.) (Signed by Judge Paul A. Engelmayer on 4/8/2014 (cd) (Entered: 04/09/2014) |
| 04/16/2014 | 141 | REPLY MEMORANDUM OF LAW in Support re: 127 MOTION for Summary Judgment of *Patent Ineligibility Pursuant to 35 U.S.C. § 101.*. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Carraway, John) (Entered: 04/16/2014) |
| 04/16/2014 | 142 | AFFIDAVIT of N. Andrew Sfeir in Support re: 127 MOTION for Summary Judgment of *Patent Ineligibility Pursuant to 35 U.S.C. § 101.*. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC). (Attachments: # 1 Exhibit 1 - MPEP § 2258, # 2 Exhibit 2 - MPEP § 2658, # 3 Exhibit 3 - Various articles)(Sfeir, Norman) (Entered: 04/16/2014) |
| 05/20/2014 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: Status Conference held on 5/20/2014. The Court heard oral argument on the pending motions. Court's decision reserved. (Court Reporter Ann Reagins-Hairston) (Hummel, June) (Entered: 05/21/2014) |
| 06/05/2014 | 143 | NOTICE of Notice of Development in Related Texas Litigation. Document filed by DietGoal Innovations LLC. (Buether, Eric) (Entered: 06/05/2014) |
| 06/20/2014 | 144 | JOINT CLAIM CONSTRUCTION STATEMENT. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC), DietGoal Innovations LLC. (Attachments: # 1 Exhibit A)(Ricketts, Michael) (Entered: 06/20/2014) |
| 06/24/2014 | 145 | ORDER: The Court has received a request from the parties to submit additional briefing in connection with the two summary judgment motions currently pending before the Court, in light of the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank International.* The parties may each submit to the Court, no later than June 26, 2014, a letter setting out its views. Any such letter shall not exceed five pages in length, single spaced. (Signed by Judge Paul A. Engelmayer on 6/23/2014) (ajs) (Entered: 06/24/2014) |
| 06/26/2014 | 146 | LETTER addressed to Judge Paul A. Engelmayer from Eric W. Buether dated 06/26/2014 re: *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.* Document filed by DietGoal Innovations LLC. (Attachments: # 1 Exhibit Exhibit A - *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*)(Buether, Eric) (Entered: 06/26/2014) |
| 06/26/2014 | 147 | LETTER addressed to Judge Paul A. Engelmayer from J. Christopher Carraway dated June 26, 2014 re: *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*. Document filed by Bravo Media LLC (Division of NBC Universal Media, LLC).(Carraway, John) (Entered: 06/26/2014) |
| 07/08/2014 | 148 | OPINION & ORDER 104487 re: 127 MOTION for Summary Judgment of *Patent Ineligibility Pursuant to 35 U.S.C. § 101* filed by Bravo Media LLC (Division of NBC Universal Media, LLC). For the foregoing reasons, the 516 Patent is drawn to patent-ineligible subject matter. Bravos motion for summary judgment is granted. The Clerk is directed to terminate all pending motions, and to close this case. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 7/8/2014) (ajs) Modified on 7/9/2014 (nt). (Entered: 07/08/2014) |
| 07/08/2014 | | Transmission to Judgments and Orders Clerk. Transmitted re: 148 Memorandum & Opinion,, to the Judgments and Orders Clerk. (ajs) (Entered: 07/08/2014) |

A072

| 07/08/2014 | 🌐 149 | CLERK'S JUDGMENT: It is, ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Opinion & Order dated July 8, 2014, the '516 Patent is drawn to patent-ineligible subject matter. Bravo's motion for summary judgment is granted; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 07/08/2014) (Attachments: # 1 Right to Appeal, # 2 Right to Apeal)(km) (Entered: 07/08/2014) |
| 07/10/2014 | 🌐 150 | NOTICE OF APPEAL TO THE FEDERAL CIRCUIT from 149 Clerk's Judgment,. Form 7 and Form 22 are due within 14 days. Document filed by DietGoal Innovations LLC. Filing fee $ 505.00, receipt number 0208-9872732. (Attachments: # 1 Exhibit A)(Buether, Eric) (Entered: 07/10/2014) |
| 07/10/2014 | 🌐 | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals for the Federal Circuit re: 150 Notice of Appeal to the Federal Circuit. (nd) (Entered: 07/10/2014) |

A073