2014-1631

# United States Court of Appeals
# for the Federal Circuit

DIETGOAL INNOVATIONS LLC,

*Plaintiff-Appellant,*

v.

BRAVO MEDIA LLC,
(Division of NBC Universal Media, LLC),

*Defendant-Appellee.*

*Appeal from the United States District Court for the Southern District
of New York in Civil Case No. 1:13-cv-08391-PAE, Judge Paul A. Engelmayer*

## RESPONSIVE BRIEF OF DEFENDANT-APPELLEE

J. CHRISTOPHER CARRAWAY
KLARQUIST SPARKMAN, LLP
One World Trade Center
Suite 1600
121 S.W. Salmon Street
Portland, OR 97204
(503) 595-5300

*Attorneys for Defendant-Appellee
Bravo Media LLC (Division of NBC
Universal Media, LLC)*

November 18, 2014

Form 9

**FORM 9. Certificate of Interest**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

DIETGOAL INNOVATIONS LLC    v. BRAVO MEDIA LLC (DIVISION OF NBC UNIVERSAL MEDIA, LLC)

No. 14-1631

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Bravo Media LLC (Division of NBC Universal Media, LLC) certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

Bravo Media LLC (Division of NBC Universal Media, LLC)

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Comcast Corporation and General Electric Company

4. ☐    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

J. Christopher Carraway and N. Andrew Sfeir of Klarquist Sparkman, LLP; Robert A. Angle and Dabney J. Carr of Troutman Sanders LLP.

| | |
|---|---|
| 11/18/2014 | /s/ J. Christopher Carraway |
| Date | Signature of counsel |
| | J. Christopher Carraway |
| | Printed name of counsel |

Please Note: All questions must be answered

cc: _____

i

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ................................................................................. i

TABLE OF CONTENTS ......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................. iv

TABLE OF ABBREVIATIONS ........................................................................... vii

STATEMENT OF RELATED CASES ...................................................................1

STATEMENT OF THE ISSUES .............................................................................1

STATEMENT OF THE CASE ................................................................................1

STATEMENT OF FACTS ......................................................................................8

SUMMARY OF ARGUMENT .............................................................................13

ARGUMENT .........................................................................................................14

I.      Standard Of Review And Legal Standards For Summary Judgment ............14

II.     The District Court Correctly Concluded That The Subject
        Matter Recited In The Claims Is Not Patent Eligible Under § 101 ...............15

        A.      The District Court Applied The Correct Legal Standard. ...................15

        B.      The District Court Correctly Concluded That The
                '516 Patent Claims Are Drawn To An Abstract Concept. ..................22

                1.      DietGoal does not dispute the district court's
                        conclusion in step 1 of the two-step framework
                        that the claims encompass an abstract concept. .......................22

                2.      The district court correctly concluded that
                        the claims encompass an abstract concept. ...............................23

                3.      The district court also correctly concluded
                        that the claims encompass a mental process. ...........................29

4.    The abstract concept and mental
process prohibitions apply whether the
claims are viewed as a "process" or a "machine."...................33

5.    It does not matter for § 101 whether the claims are novel. .....34

C.    The District Court Correctly Concluded That The '516
Patent Claims Lack Any Elements That Add "Significantly
More" To The Abstract Concept And Mental Process. .....................35

1.    Following *Alice*, the district court
was correct that the "Picture Menus,"
"Meal Builder," and generic computer terms add nothing
"significant" to the abstract concept and mental process. ........35

2.    DietGoal waived its appeal with respect
to all but a few of the dependent claims. ..................................42

3.    Even if not waived, the ineligibility of all the
dependent claims was correct and should be affirmed. ............44

D.    Plaintiff Has Not Identified Any Claim
Language That The District Court Failed To Consider. .....................49

E.    The District Court Did Not Ignore Any
"Evidence" Or Decide Any Disputed "Factual Issues." ....................50

III.    Resolution Of Bravo's Summary Judgment
Motion Did Not Require Claim Construction. .............................................52

CONCLUSION .....................................................................................................56

CERTIFICATE OF SERVICE .............................................................................57

CERTIFICATE OF COMPLIANCE.....................................................................58

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ................................................................... passim

*Alice Corp. v. CLS Bank International*,
   573 U.S. ---, 132 S. Ct. 2347 (2014) ........................................................... passim

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (US)*,
   687 F.3d 1266 (Fed. Cir. 2012) ................................................................... passim

*Bilski v. Kappos*,
   561 U.S. 593, 130 S. Ct. 3218 (2010) ......................................................... passim

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014) ................................................................... passim

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................15

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
   -- F.Supp.2d --, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014) ............................48

*CLS Bank Int'l v. Alice Corp.*,
   717 F.3d 1269, 1289 (Fed. Cir. 2013) (*en banc*) (opinion of Lourie, J.),
   *aff'd*, 134 S. Ct. 2347 (2014)..............................................................................40

*Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*,
   558 Fed. Appx. 988 (Fed. Cir. 2014) ......................................................... 15, 53

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ................................................................... passim

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) ................................................................... passim

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ........................................................... 17, 20, 41, 42

*Engel Indus., Inc. v. Lockformer Co.*,
   166 F.3d 1379 (Fed. Cir. 1999) ................................................... 23, 44

*Fort Props., Inc. v. American Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012) ...........................................................15

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) ..................................................................... passim

*In re Grams*,
   888 F.2d 835 (Fed. Cir. 1989) ...........................................................43

*Mayo Collaborative Services. v. Prometheus Laboratories Inc.*,
   566 U.S. ---, 132 S. Ct. 1269 (2012) .......................................... passim

*Parker v. Flook*,
   437 U.S. 584 (1978) ................................................................... passim

*Planet Bingo KLLC v. VKGS LLC*,
   576 Fed. Appx.1005 (Fed. Cir. 2014) ......................................... passim

*SiRF Tech., Inc. v. Int'l Trade Commn.*,
   601 F.3d 1319 (Fed. Cir. 2010) ...........................................................42

*SmartGene, Inc. v. Advanced Biological Labs., SA*,
   555 Fed. Appx. 950 (Fed. Cir. 2014) ......................................... passim

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) ................................................... 23, 44

*U.S. Surgical Corp. v. Ethicon, Inc.*,
   103 F.3d 1554 (Fed. Cir. 1997) ...........................................................53

*Ultramercial, Inc. v. Hulu, LLC*,
   --- F.3d ---, No. 2010-1544 (Fed. Cir. Nov. 10, 2014)............................... passim

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 1355 (Fed. Cir. 2013) ................................................... 53, 56

*Voter Verified, Inc. v. Premier Election Solutions, Inc.*,
   698 F.3d 1374 (Fed. Cir 2012) ...........................................................14

**Statutes**

28 U.S.C. § 1404 ............................................................................. 1, 2

35 U.S.C. § 101 ............................................................................. passim

35 U.S.C. § 102 ............................................................................. 21, 35

35 U.S.C. § 103 ............................................................................. 21

35 U.S.C. § 112 ............................................................................. 21

**Rules**

Fed. R. Civ. P. 56 ......................................................................... 14, 15

## <u>TABLE OF ABBREVIATIONS</u>

| | |
|---|---|
| Bravo | Defendant-Appellee Bravo Media LLC (Division of NBC Universal Media, LLC) |
| DietGoal | Plaintiff-Appellant DietGoal Innovations LLC |
| the '516 patent | U.S. Patent No. 6,585,516 (A043-60) |
| § 101 | 35 U.S.C. § 101 |
| Opp. Br. | DietGoal's Opposition Brief to Bravo's summary judgment motion, filed April 4, 2014, Dkt. 136 (A439-68) |
| App. Br. | Opening Brief of DietGoal on Appeal, filed September 25, 2014 |

## STATEMENT OF RELATED CASES

Bravo agrees with the Statement of Related Cases provided by Appellant.

## STATEMENT OF THE ISSUES

Whether the district court correctly found that all claims of the '516 patent are ineligible for patenting under § 101 because they claim the abstract concept and mental process of meal planning to meet eating goals implemented on a conventional computer.

## STATEMENT OF THE CASE

This appeal involves a patent directed to systems and methods by which individuals use a computer to select meals for a particular day to meet personal eating goals. A055 at col. 3, lines 11-20. The district court granted summary judgment that the claimed systems and methods were directed to an abstract concept and mental process practiced by people every day and that the computer elements of the claims were nothing but routine and conventional steps that did not save the claims from ineligibility. A017-26.

Plaintiff is a non-practicing entity owned by two New York individuals. A549. On June 13, 2012, Plaintiff filed suit against Bravo, a New York-based company, in the Eastern District of Texas, a district in which no party or witness was located. A065 (Dkt. 1); A548-51. Because both parties were operated out of New York City, Bravo moved to transfer the case to the Southern District of New York on September 17, 2012 pursuant to 28 U.S.C. § 1404. A546. Seven months

later, on April 9, 2013, Magistrate Judge Roy Payne of the Eastern District of Texas transferred the case to the Eastern District of Virginia, a district neither party had requested.  *Id*.  Once docketed in Virginia, Bravo quickly moved again to have the case transferred to the Southern District of New York pursuant to § 1404.  A068 (Dkt. 67-68).  On November 19, 2013, after Bravo spent fourteen months trying to obtain transfer of the case to the location where Bravo, DietGoal's owners, and over a dozen witnesses resided, this case was finally transferred to the Southern District of New York and eventually assigned to Hon. Paul A. Engelmayer.  A069-70 (Dkt. 92-93); A564-66.

On January 22, 2014, the district court held a scheduling conference.  A005.  At the conference, Bravo sought permission from the court to file two discrete summary judgment motions:  one seeking summary judgment that the '516 patent is invalid under § 101 for claiming ineligible subject matter and the other seeking summary judgment of non-infringement based on the absence of an element required by all claims.  A070 (Dkt. 108).

On February 19, 2014, the Judicial Panel for Multidistict Litigation (JPML) denied a motion by DietGoal to consolidate the cases against Bravo and numerous other defendants back in the Eastern District of Texas.  A071 (Dkt. 113).  After the JPML's decision, DietGoal and Bravo stipulated to a schedule for filing Bravo's

planned summary judgment motions, and Judge Engelmayer adopted the agreed schedule.  A005; A071 (Dkt. 117).

Bravo filed its summary judgment motion on § 101 on March 19, 2014. A071 (Dkt. 127-30).  Bravo explained in its supporting brief why all of the claims of the '516 patent were invalid under § 101, specifically addressing all independent claims (1, 2, 12, and 13) and all dependent claims.  A143-44, A155-62.

In its opposition brief, DietGoal did ***not*** argue that the district court should postpone a decision on the § 101 motion until after claim construction.  Instead, DietGoal merely argued that Bravo's burden of proof should be "even heavier than usual" and that Bravo should be required to establish that "the only plausible reading of each claim renders the subject matter of the claim ineligible as a matter of law by clear and convincing evidence."  A458.  DietGoal also argued that the claims were eligible because they were a "computer implemented invention" that required a "specific configuration of hardware and software with specified functions," including "a database, a user interface, a display of Picture Menus," and a "Meal Builder with specified functionality."  A461.

On May 20, 2014, the district court held an oral hearing on Bravo's § 101 summary judgment motion.  *See* A573-74.

On June 19, 2014, the Supreme Court issued its decision in *Alice Corp. v. CLS Bank International*, 573 U.S. ---, 132 S. Ct. 2347 (2014).  In that case, the

3

Court resolved the conflict between the various opinions provided by the Federal Circuit sitting *en banc*, essentially affirming the plurality opinion authored by Circuit Judge Lourie that all claims of Alice's patents, including the computerized method and computer system claims, were ineligible under § 101.  *Id*. at 2359-60.

On June 23, 2014, DietGoal requested permission to submit a supplemental brief addressing the *Alice* decision.  The Court granted DietGoal's request, allowing each party to submit a five-page single-spaced letter addressing how the *Alice* decision affected the pending summary judgment motion.  A072 (Dkt. 145).  On June 26, 2014, both parties submitted letter briefs addressing *Alice*.  *Id*. (Dkt. 146-47).

On July 8, 2014, the district court issued a memorandum opinion and order granting Bravo's summary judgment motion and a judgment in Bravo's favor.  A001-31.  In its opinion, the district court carefully reviewed "the line of Supreme Court cases leading up to and including *Alice*, because these cases give context to the two recent decisions, and provide guidance in differentiating between eligible and ineligible patents."  A010; *see* A010-A016.  The Court then applied the Supreme Court cases to the '516 patent and its claims, using the two-step framework outlined by *Alice* and, earlier, in *Mayo Collaborative Services. v. Prometheus Laboratories Inc.*, 566 U.S. ---, 132 S. Ct. 1269, 1296-97 (2012).  First, the district court used the "Supreme Court's precedents on patent-eligibility

as 'guideposts'" to find that "it is clear that the claims of the '516 patent are directed to an impermissible abstract idea or mental concept." A017. Specifically, the Court concluded that the claims recited "a computer program that allows the user to create meals from a database of food objects according to his or her preferences and goals, to change those meals by adding or subtracting food objects, and to view the dietary impact of changes to those meals on a visual display." A018. This, the Court found, "recites nothing than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences." *Id*. The Court found that the concept of meal planning "is surely a 'long prevalent' practice," *id*. (quoting *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 3231 (2010)), and is "by any reckoning, at least as longstanding as the economic practices of risk-hedging (invalidated in *Bilski*) and intermediated settlement (invalidated in *Alice*)." A018.

In addition to finding that the DietGoal claims were directed to an impermissible abstract idea, the Court also found that they were directed to an impermissible mental process. A018-19. Citing this Court's decision in *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372, 1373 (Fed. Cir. 2011), and the Supreme Court's decisions in *Gottschalk v. Benson*, 409 U.S. 63, 66-67 (1972), and *Parker v. Flook,* 437 U.S. 584, 586 (1978), the district court found that the process underlying each of the '516 patent claims could be

performed "without the aid of any particular or structured method and without the need of any technology." A018-19. Specifically, the Court found that "selecting meals that align with the user's individual preferences and nutritional goals (for example, by planning out dinners for the week that accord with a low-calorie diet) and calculating the dietary impact of the addition or subtraction of certain foods (for example, by determining how many calories you will save by swapping out French fried for broccoli)" were "conventional and quotidian tasks" that were performed regularly by "dieters planning their meals and calculating daily caloric intake" or by "parents planning meals for their children, so as to meet health or nutritional goals." A019.

Turning to the second step of the *Alice*/*Mayo* framework, the district court then determined that the claims of the '516 Patent failed to include an "'inventive concept' capable of transforming the abstract idea into a patent-eligible application of that concept." A020 (quoting *Alice*, 137 S. Ct. at 2357); *see* A020-26. The Court rejected DietGoal's contention "that the computer-implementation of the steps of the '516 patent—specifically, the computerized process by which users can create meals using the Picture Menus and view the nutritional impact of changes to those meals using the Meal Builder" could provide the "inventive concept" to render the claims patentable. A020. Instead, the district court relied on the wealth of cases, including *Alice*, confirming that implementation of an

6

abstract concept or mental process on a generic computer, including routine

computer elements such as input, storage, processing, and display, were entirely

"conventional" and could not elevate the claims to eligibility.  A024-26.  Indeed,

the Court held that "the steps required by the '516 patent—preparing lists of food

items, creating meals from those lists of food items, using known nutritional

information to calculate the dietary impact of changes to those meals, and visually

displaying the results—are far more 'routine' and 'conventional' than the

computerized applications of the economic concepts invalidated in *Bilski* and

*Alice*."  A025.

    In its opinion, the district court also concluded that there was no reason to

delay deciding the issue until later in the case after the court had performed a full

claim construction proceeding.  A027-29.  Specifically, the court found that "the

claims of the '516 patent are sufficiently straightforward that formal claim

construction is not necessary to understand their construction."  A028.

Furthermore, the court found that the claims would be invalid under § 101 "under

any reasonable construction."  *Id*.  Not stopping there, however, the court also

determined that "even assuming the construction urged by DietGoal," which was

adopted by the Eastern District of Texas in the *DietGoal v. Kellan* litigation, "the

subject matter claimed in the '516 patent is still impermissibly abstract."  *Id*.  In

making this alternative finding, the district court explained that DietGoal's

7

proposed construction requiring that the claimed systems and methods be "computerized" or "computer-implemented" would not save the '516 patent from invalidity: "Nothing in the *Kellan* court's claim construction alters, or is at odds with, the fact that the method recited in the '516 patent can be performed by a human using pen and paper; application of the process to a generic computer does not add any meaningful limitation." A029.

## STATEMENT OF FACTS

The '516 patent generally relates to systems and methods for meal analysis, training, and planning. A054 at col. 1, lines 8-11. The patent purports to allow a user to visualize (via a user interface) meals from a database, select certain meals, and consider the impact of that meal selection on the user's eating goals. More specifically, the '516 patent specification discloses the following steps:

> First, the Meal Database and Food Database can be prepared. Second, the user can choose meals for a particular day. Third, the user can decide whether or not to change one or more of the meals he has chosen for the particular day. If the user decides to change his chosen meals, the user can edit or create new meals using the Meal Builder. If the user decides not to change his choices, or after the user changes his choices, the user can save the meals for the particular day.

A055 at col. 3, lines 11-20. Figure 3 of the '516 patent, for example, depicts an exemplary high-level outline for meal selection following the steps above. *See* A055-56 at col. 4, line 53 to col. 5, line 5.

The specification also discloses certain generic computer components for use with this method.  These components include meal and food "databases" consisting of pre-set meals and food objects, respectively.  *See* A055 at col. 3, lines 51-53.  In addition, a "User Interface" provides "Picture Menus" that include meal/food images, based on the database information, from which the user can mix and match to meet customized goals.  *See* A054 at col. 2, lines 46-48.  The effect of the selected meals on these customized eating goals is provided by a "Meal Builder," which also facilitates the display of Picture Menus.  *See* A054-55 at col. 2, line 65 to col. 3, line 1.

According to the '516 patent, the prior art lacked "effective tools … that can adequately train people to understand and immediately recognize the significance of," for example, "the impact of customized meals on dietary goals."  *See* A054 at col. 1, lines 26-29.  The '516 patent, however, discloses very little, if anything, regarding the specifics of how that supposed invention is an effective tool over the long-existing mental process of meal planning, other than presumably speeding up the process via a computer and showing the results on a computer display.  Indeed, the '516 patent discloses only a general purpose computer, not some specialized machine.  Figure 1 of the patent shows the entire supposed "architecture" of the alleged invention:



A044; A055 at col. 3, lines 43-54. Neither Figure 1 nor any other part of the patent discloses any specific machines other than a basic "computer" and its generic components such as a "UI" ("user interface") and "database." Nor does the '516 patent identify any particular algorithm or intricate computer programming or software, by which the basic computer helps to perform the meal planning.

The '516 patent includes four independent claims (1, 2, 12, and 13) reciting a "system of computerized meal planning" or a "method of computerized planning that can influence behavior." A056-57. The system claims recite:

> 1. A system of computerized meal planning, comprising:
> a User Interface;
> a Database of food objects organizable into meals; and
> at least one Picture Menus, which displays on the User Interface meals
> fro, the Database that a user can select from to meet customized
> eating goal.
>
> 2. A system of computerized meal planning, comprising:
> a User Interface;

a Database of food objects; and

a Meal Builder, which displays on the User Interface meals from the
Database, and wherein a user can change content of said meals and
view the resulting meals' impact on customized eating goals.

The independent method claims 12 and 13 generally track system claims 1 and 2,

respectively:

12.  A method of computerized planning that can influence behavior,
comprising:

preparing a Database of food objects;

allowing a user to choose meals from one or more Picture Menus,
which display on a User Interface meals comprised from the food
objects from the Database that the user can mix and match to meet
customized eating goals, for a particular amount of time; and

allowing a user to save the meals.

13.  A method of computerized planning that can influence behavior,
comprising:

preparing a Database of food objects;

allowing the user to decide whether or not to change one or more
meals comprising food objects; and

if the user decides to change one or more of the meals, allowing the
user to change the meals using a Meal Builder, which displays on
the User Interface the food objects from the meals from the
Database, corresponding to the Picture Menus, where the user can
change and view the meals' impact on customized eating goals.

Claims 1 and 12 involve a person using "Picture Menus" to choose "meals" from a

database of visual "food objects" "to meet customized eating goals." *Id*.  Claims 2

and 13 are similar, but also involve a user being able to change the contents of

meals and "view the meals' impact on customized eating goals." *Id*.

Although DietGoal failed to address substantively any dependent claims in

its appeal brief other than claims 20, 23, 24, and 30, thereby waiving any argument

relating to the remaining claims (*see* Section II.C.2, *infra*), Bravo shall

nonetheless, and for the sake of completeness, briefly discuss the dependent

claims.  The dependent claims provide slight refinements to the general concept of

meal planning to meet eating goals using a generic computer.  These additional

elements of the original dependent claims (numbered 3-11 and 14-18) are:

- using the Meal Builder to change the contents of a meal and "view the meals' impact on customized eating goals" (claims 3 and 14)
- the meal planning is designed to impact eating behavior (claim 4)
- "food objects" are images of food (claim 5)
- collecting and analyzing information about a "user's instinctive eating tendencies and preferences" (claims 7, 8, 10, 15, and 17)
- comparing the information to a set of goals (claims 9, 11, 16, and 18)

A057.  Further, during reexamination, Plaintiff added yet more dependent claims

(numbered 19-61 in the reexamination certificate).  A058.  The additional

limitations in the new claims generally include:

- gathering and storing information about food preferences from users, including likes, dislikes, ratings, reviews, comments, etc. (claims 19-22, 27-28, 43-47, and 52-53)
- saving meals in a database (claims 23 and 48)
- displaying nutritional information about a meal (claims 24-26 , 32, 34, 38, 49-51, 57, and 59)
- displaying a user's customized eating goals (claims 29 and 54)
- displaying meals, "food objects," and images of meals (claims 30, 36-37, 40, 55, and 61)
- displaying "controls" for modifying and selecting meals (claims 31, 33, 35, 56, 58, and 60)
- meals include "food objects" (claim 39)
- searching for a meal (claim 41)
- computing nutrition information for a meal (claim 42)

A059-60.

12

## SUMMARY OF ARGUMENT

The district court correctly decided that the subject matter recited in the claims was not patent-eligible under § 101.  The court carefully reviewed the long line of cases from the Supreme Court, and dutifully applied the two-step framework specified by *Mayo* and *Alice*.  In doing so, it concluded that the meal planning method in the '516 patent claims was just as much an abstract concept and a mental process as those found in the guidepost cases, such as *Alice*, *Bilski*, *Benson*, and *Flook*.  Notably, DietGoal does not dispute the district court's decision on this first step that the claims are directed to the abstract concept of meal planning to meet individual eating goals, instead choosing to address only the second step of the *Mayo*/*Alice* analysis.

The district court also was correct in concluding, at the second step, that the generic computer elements included in the '516 patent claims—such as computer, user interface, display, and database—did not provide enough to transform an abstract idea into a patent-eligible invention, properly following *Alice* for this now well-understood rule of law.  The court also ensured that DietGoal had every opportunity to make its case for patent eligibility, providing the parties an oral hearing and allowing DietGoal to submit a supplemental brief on the effect of *Alice*.  With all of those chances, DietGoal never pointed to anything other than

that handful of computer elements—such as a database and a display—that one can find in nearly every computer.

Finally, the district court also properly decided eligibility under § 101 without waiting for a full claim construction process. DietGoal's summary judgment opposition did not ask the district court to postpone a decision until the claims had been construed. Nonetheless, the district court found that the claims would fail § 101 under any reasonable construction. Moreover, the district court also concluded that the claims were ineligible even under DietGoal's own proposed construction of the claims. Given that DietGoal's proposed claim construction merely specified that the system and method were computer-implemented, something the claims already required, the court's decision was a straightforward application of the Supreme Court's instruction in *Alice* that generic computer implementation does not save claims to an abstract concept or mental process.

## **ARGUMENT**

## I.    **Standard Of Review And Legal Standards For Summary Judgment**

This Court reviews orders granting summary judgment *de novo*, applying the same standard as the district court under Fed. R. Civ. P. 56. *See, e.g., Voter Verified, Inc. v. Premier Election Solutions, Inc.*, 698 F.3d 1374, 1379 n.1 (Fed. Cir 2012). Summary judgment is appropriate where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "Whether

a claim is drawn to patent-eligible subject matter under § 101 is an issue of law,"

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-

41 (Fed. Cir. 2013), and therefore is particularly amenable to resolution on

summary judgment.[1]

## II.    The District Court Correctly Concluded That The Subject Matter Recited In The Claims Is Not Patent Eligible Under § 101.

### A.    The District Court Applied The Correct Legal Standard.

The district court properly analyzed and applied the guidance from the

Supreme Court and this Court to find the '516 patent claims invalid under § 101.

As the district court discussed, § 101 provides that patentable subject matter

---

[1] *See, e.g., Alice*, 134 S. Ct. at 2351-52 (affirming summary judgment of invalidity of claims to a patent-ineligible abstract concept); *Accenture*, 728 F.3d at 1338 (same); *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1272, 1281 (Fed. Cir. 2012) (same); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1330-34 (Fed. Cir. 2012) (same); *Fort Props., Inc. v. American Master Lease LLC*, 671 F.3d 1317, 1320-24 (Fed. Cir. 2012) (same); *CyberSource*, 654 F.3d at 1369-76 (same); *Cyberfone Sys., LLC v. CNN Interactive Group, Inc.*, 558 Fed. Appx. 988, 990-91 (Fed. Cir. 2014) (nonprecedential) (same); *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. Appx. 950, 951 (Fed. Cir. 2014) (nonprecedential) (same); *cf. Ultramercial, Inc. v. Hulu, LLC*, --- F.3d ---, No. 2010-1544, slip op. at 3 (Fed. Cir. Nov. 10, 2014) (hereafter *Ultramercial III* (affirming motion to dismiss due to patent ineligibility); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014) (affirming judgment on the pleadings because the patent claimed ineligible abstract concepts).

extends to "new and useful process[es], machine[s], manufacture, or composition[s] of matter." 35 U.S.C. § 101; *see* A008. In *Bilski*, the Supreme Court reiterated that its precedents "provide three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'" *Bilski*, 130 S. Ct. at 3225 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)); *see* A008. The concepts covered by these exceptions are "the basic tools of scientific and technological work," *Alice*, 137 S. Ct. at 2354 (internal quotations omitted), and "part of the storehouse of knowledge of all men... free to all men and reserved exclusively to none," *Bilski*, 130 S. Ct. at 3224 (internal quotations omitted). *See* A008. "[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Alice*, 137 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct. at 1923).

Since 2010, the Supreme Court has issued a trio of decisions providing guidance regarding the prohibition on patenting abstract concepts. In *Bilski II*, the Court determined that a patent claiming various methods of hedging risk, both generally and in financial transactions, failed to meet patent eligibility requirements: "The concept of hedging, described in claim 1 and reduced to a mathematical formula in claim 4, is an unpatentable abstract idea, just like the algorithms at issue in *Benson* and *Flook*. Allowing petitioners to patent risk

16

hedging would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea." *Id*. at 3231. The Court in *Bilski II* also rejected the strict use of a test articulated by the Federal Circuit—the "machine or transformation" test—and instead held that courts should analyze whether a claim encompasses an abstract concept using the "guideposts" in its case law, which at that time included *Benson*, *Flook*, and *Diehr*. *Id*. at 3231.

In *Mayo Collaborative Services, v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court articulated a two-step framework that courts should use to determine whether claims fall within patent-ineligible concepts or patent-eligible applications of those concepts. To distinguish between the patentable and the unpatentable, *Mayo* counseled that courts first should determine whether the claims at issue are directed to one of those patent-ineligible concepts. *Id*. at 1296-97. If so, the second question is whether the patent claims "do significantly more than simply describe" that mental process, abstract idea, or law of nature. *Id*. at 1297. This second step involves the search for an "inventive concept"—*i.e.,* an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id*. at 1294. "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and

abstract ideas cannot make those laws, phenomena, and ideas patentable." *Id*. at 1300.

The claims at issue in *Mayo* covered "processes that help doctors who use thiopurine drugs to treat patients with autoimmune diseases determine whether a given dosage level is too low or too high. The claims purport[ed] to apply natural laws describing the relationships between the concentration in the blood of certain thiopurine metabolites and the likelihood that the drug dosage will be ineffective or induce harmful side effects." *Id*. at 1294. Applying the two-step framework, the *Mayo* Court first found that the claimed process involved a law of nature, "namely, relationships between concentrations of certain metabolites in the blood and the likelihood that a dosage of a thiopurine drug will prove ineffective or cause harm." *Id*. at 1296. Then, in step two, the Court found that the claimed process was patent-ineligible because "the steps in the claimed processes (apart from the natural laws themselves) involve well-understood, routine, conventional activity previously engaged in by researchers in the field. *Id*. at 1294.

Finally, just this year, the Supreme Court issued its decision in *Alice*. The Court specifically addressed whether using conventional computer technology to implement an abstract concept added the "inventive concept" that did "significantly more" than the abstract concept itself. While various panels of this Court had previously answered this question in different ways, the Supreme Court

18

definitively held that generic computer implementation was ***not*** sufficient to transform a patent-ineligible abstract concept into a patent-eligible application. *Alice*, 137 S. Ct. at 2358-59. Alice's patent included claims for a computer-implemented method and system for "for mitigating 'settlement risk' (*i.e.*, the risk that only one party to a financial transaction will pay what it owes) by using a third-party intermediary." *Id.* at 2351-52. In the claims, a computer system served as the third-party intermediary. *Id*. at 2352. The claims also recited various generic computer components, including a "data processing system" with a "communications controller" and "data storage unit." *Id*. at 2360.

In step 1, the *Alice* Court rejected the argument that abstract concepts were limited to mathematical formulas and "fundamental truths," and instead concluded that abstract concepts could also encompass a "fundamental economic activity" or a "method of organizing human activity." *Id*. at 2356 (discussing the "hedging" concept in *Bilski*). The Court found that using an intermediary to minimize settlement risk fell within this understanding of an abstract concept. *Id*. at 2356-57.

In step 2, the Court viewed its earlier decisions in *Benson* and *Flook* as instructing that patenting abstract concepts "cannot be circumvented by attempting to limit the use of [the concept] to a particular technological environment." *Id*. at 2358. More specifically, while the computer was used as a tool to make the

concept of intermediated settlement faster and more efficient, that fact was not

enough to make the claims eligible because all the computer was doing was

performing conventional computer functions:

> Taking the claim elements separately, the function performed by the computer at each step of the process is "[p]urely conventional." Using a computer to create and maintain "shadow" accounts amounts to electronic recordkeeping—one of the most basic functions of a computer. The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are "well-understood, routine, conventional activit[ies]" previously known to the industry. In short, each step does no more than require a generic computer to perform generic computer functions.

*Id*. at 2359 (citations omitted).  Likewise, the Court found that the system claims'

recitation of generic computer parts, including a "data processing system,"

"communications controller," and "data storage unit," was "purely functional and

generic" because "[n]early every computer will include those generic components

for "performing the basic calculation, storage, and transmission functions."  *Id*. at

2360.

The district court carefully reviewed all three of these recent Supreme Court

cases as well as the earlier decisions in *Benson*, *Flook*, and *Diehr*.  A010-16.

Applying that precedent, the district court correctly concluded that the claims of

the '516 patent are drawn to the abstract concept and mental process of meal

planning to meet one's dietary goals, and that the claims' application of this

concept to a generic computer, database, and user interface was a conventional and routine application, just as in *Alice*, not an "inventive concept."  A016-26.

Much of DietGoal's description of the law under § 101 amounts to a parade of horribles that will supposedly ensue if this Court affirms the district court's straightforward application of *Alice*.  *See*, *e.g.*, App. Br. at 2 ("will become a firewall undermining the legitimacy of patent-eligible computer-implemented inventions"); *id*. ("will incite § 101 challenges to many patents whose validity should be determined according to §§ 102, 103, and 112, instead of § 112); *id*. at 22 ("overzealous efforts to apply the abstract idea doctrine of computer-implemented inventions quickly devolve into an undisciplined parsing and rewriting of the relevant claims such that courts end up evaluating a claim of their own making – not what the inventor actually claimed") (internal quotations omitted).  Even if these policy concerns were valid, they are the same type of concerns that have been raised and rejected by the Supreme Court.  *See*, *e.g.*, *Mayo*, 132 S. Ct. at 1304 (rejecting the Government's argument that courts should address §§ 102, 103, and 112 before § 101).  *Alice* is now the law of the land, and the district court properly applied its principles and analytical framework, holding the DietGoal claims to the standard that generic computer implementation of abstract concepts and mental processes no longer pass the § 101 hurdle.

**B.    The District Court Correctly Concluded That The
'516 Patent Claims Are Drawn To An Abstract Concept.**

**1.    *DietGoal does not dispute the district court's
conclusion in step 1 of the two-step framework
that the claims encompass an abstract concept.***

After identifying the two-step framework mandated by the Supreme Court in

*Mayo* and *Alice*, DietGoal's appeal brief opines that "the two-part test for

identifying an abstract idea appears to be of limited utility …"  App. Br. at 33

(quoting *Eclipse IP, LLC v. McKinley Equip. Corp.*, Civil Action No. CV 14-154-

GW(AJWx) at 4 (C.D. Cal. Sept. 9, 2014).  Apparently based on this opinion of the

two-part test as having "limited utility," DietGoal then announces in its brief that it

is choosing ***not*** to even address the district court's decision on the first step that the

claims are drawn to the abstract concept of meal planning to meet individual eating

goals:

> In this case, therefore, DietGoal believes that it would be more
> efficient and practical to move directly to the second step of the two-
> part test to assess whether any of the claims of the '516 patent claim
> ineligible subject matter.

App. Br. at 33-34.  The appeal brief does in fact bypass step 1 and proceeds

directly to that second step, whether the claims "contain meaningful limitations

that prevent them from preempting the abstract idea of meal planning to meet a

person's nutritional goals."  *Id*. at 34-50.

Whatever the reason, DietGoal's decision in its appeal brief to skip the first step of *Mayo* and *Alice* waives its appeal as to that issue. *Accenture*, 728 F. 3d 1341-42; *Engel Indus.*, 166 F.3d at 1387; *SmithKline Beecham*, 439 F.3d at 1319. The district court concluded that all of the '516 patent claims are drawn to the abstract concept of meal planning to meet personal eating goals, and this Court should affirm that portion of the district court's opinion based on DietGoal's failure to challenge and address it. Thus, the only question for this appeal is whether the district court's decision on step 2 of the *Mayo*/*Alice* framework was correct.

### 2.    *The district court correctly concluded that* *the claims encompass an abstract concept.*

Even if DietGoal had not waived disputing the district court's conclusion at step 1 that the claims of the '516 are directed to an abstract concept, this Court should affirm that portion of the decision because it was correct. The district court reviewed the claims and the specification and determined that the claims "recite[] a computer program that allows the user to create meals from a database of food objects according to his or her preferences and dietary goals, to change meals by adding or subtracting food objects, and to view the dietary impact of changes to those meals on a visual display." A018. That description of the very short independent claims is apt, as they require simply a "User Interface," a "Database of

23

food objects," and either "Picture Menus" to display meals from which a user can select or a "Meal Builder" to allow a user to "change [the] content of said meals and view the resulting meals' impact on customized eating goals." A003-04. Based on this review of the claims and specification, the district court concluded that they "recite nothing more than the abstract concept of selecting meals for the day according to one's particular dietary goals and food preferences." A018.

The district court reached this conclusion that meal planning to meet eating goals was an "abstract concept" by "[u]sing the Supreme Court's precedents on patent-eligibility as 'guideposts.'" A017. It compared the concept in the DietGoal claims to those in *Bilski* ("risk-hedging") and *Alice* ("intermediated settlement") and found meal planning "at least as longstanding" and "more venerable": "Although specific approaches to meal planning have evolved as dietary knowledge has advanced and social mores have changed, humans have assuredly engaged in rudimentary meal-planning 'for millennia.'" A018.

The district court's conclusion was correct. In *Alice*, the Supreme Court made clear that abstract concepts are not limited to "mathematical formulas" or "fundamental truths" but also encompass a "fundamental economic activity" or a "method of organizing human activity." *Alice*, 137 S. Ct. at 2356-57. The '516 patent claims are extremely short, simple, and abstract, encompassing this entire idea of a person planning a meal by visualizing food items, compiling them into a

24

meal, and considering the impact on his or her goals. This is a quintessential method of organizing human activity practiced by people every day.

For example, independent method claims 12 and 13 are directed to the steps of "preparing a Database of food objects" and allowing the user to "choose" or "decide" meals that the user can "change" or "mix and match" to meet personal "eating goals." These steps describe nothing more than decisions that people make every day about what to eat based on known information about the available food options, encompassing the abstract concept of meal planning. For example, anyone who opens a recipe book and visualizes the meals, reviews the recipes to calculate nutritional value or to determine whether the recipe is low in fat or calories, and memorizes or writes down a favorite recipe, can be said to substantially utilize the mental steps of claim 12. Similarly, a restaurant patron who, after reviewing the menu, visualizes and orders a hamburger, but requests no mayonnaise and a side of fruit instead of French fries to reduce the calorie count of the meal, can mentally utilize the steps of claim 13. Method claims 12 and 13 are therefore directed to "an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial III*, slip op. at 9-10.

The other two independent claims, claims 1 and 2, essentially recite a system for performing the methods of claims 12 and 13, respectively. They contain the same general elements as the method claims to which they relate. "Because the

system claim and method claim contain only minor differences in terminology

[but] require performance of the same basic process, they should rise or fall

together." *Accenture*, 728 F.3d at 1342 (quotation omitted); *Bancorp*, 687 F.3d at

1277 (finding that claims to a method and system for performing the method had

"no material difference," and "the form of the claims should not trump basic issues

of patentability").  Indeed, in *Alice*, the Supreme Court concluded that the system

claims suffered the same fate as the method claims, explaining that the Court "has

warn[ed] . . . against interpreting §101 in ways that make patent eligibility depend

simply on the draftsman's art."  *Alice*, 137 S. Ct. at 2360 (quoting *Mayo*, 132 S. Ct.

at 1294).

While the district court compared the meal planning concept to the concepts

found abstract in *Bilski* and *Alice*, comparisons to additional abstract concepts in

cases decided by this Court further illustrate the correctness of the district court's

conclusion.  For example, this Court has found abstract concepts to include

watching an advertisement in exchange for receiving free content (*Ultramercial

III*), managing a game of bingo (*Planet Bingo*), guaranteeing a party's performance

of its online transaction (*buySAFE*), administering and tracking life insurance

policy values (*Bancorp*), verifying credit card transactions over the Internet

(*CyberSouce*), applying for credit over the Internet (*Dealertrack*), managing tasks

in an insurance agency (*Accenture*), and selecting treatment regimens for medical

patients based on a known disease (*SmartGene*).  The DietGoal claims are no less

abstract than these concepts and are even more prevalent and fundamental given

that meal planning to meet some kind of eating goal is performed by most people.

Moreover, the few dependent claim elements addressed by DietGoal in its

appeal brief (claims 20, 23, 24, and 30) likewise fall squarely within this abstract

concept.  For example, claim 24 adds the requirement that "one or more displayed

meals correspond to at least one of a selected nutritional value, a selected calorie

value, a selected personal characteristic, and a selected activity level," claim 23

adds the requirement that a "user can select one or more of the displayed meals,"

claim 20 adds the requirement that "a meal is removed or added to the display on

the User Interface," claim 30 adds the requirement that "the User Interface displays

at least one customized eating goal for selection by a user."  App. Br. at 37-38, 48

(discussing only this handful of dependent claims when arguing eligibility).

The slight narrowing in these dependent claims to specify certain types of

meal planning does not remove the claims from the general abstract concept.  In

*buySAFE*, this Court reviewed claims that generally related to the abstract concept

of "guaranteeing a party's performance of its online transaction."  *buySAFE*, 765

F.3d at 1351-52.  After finding the independent claim drawn to an abstract concept,

the Court reviewed the dependent claim, which specified that the guaranty be "in

one form of:  a surety bond; a specialized bank guaranty; a specialized insurance

policy; and a safe transaction guaranty." The Court found that the "dependent claims' narrowing to particular types of such relationships, themselves familiar, does not change the analysis. This kind of narrowing of such long-familiar commercial transactions does not make the idea non-abstract for section 101 purposes." *Id*. at 1355; *see also Ultramercial III*, slip op. at 9-10 (concluding that eleven-step process in claim was nonetheless directed to "an abstraction—an idea, having no particular concrete or tangible form"); *Planet Bingo KLLC v. VKGS LLC*, 576 Fed. Appx.1005, 1007 (Fed. Cir. 2014) (concluding that the dependent claims were likewise ineligible because they "recite only slight variations of the independent claims"). Just as in *buySAFE*, the dependent elements identified by DietGoal in claims 20, 23, 24, and 30 do no more than slightly narrow the claims to particular types of meal planning.

Each claim identified by DietGoal in its appeal brief encompasses the concept of meal planning, which "do not push or even test the boundaries of the Supreme Court precedents under section 101." *buySAFE*, 765 F.3d at 1354-55. The district court's conclusion that these claims are drawn to an abstract concept under step 1 of the *Mayo*/*Alice* framework, which DietGoal expressly chose not even to address in its brief, is correct and should be affirmed.

### 3. *The district court also correctly concluded that the claims encompass a mental process.*

In addition to concluding that the '516 patent claims were directed to an abstract concept, the district court also found that they were directed to a "mental process" because they "recite steps that, although computer-implemented by virtue of the patent application, could 'be performed in the human mind, or by a human using a pen and paper.'" A018 (quoting *CyberSource*, 654 F.3d at 1372). While this Court has described mental processes as a subcategory of abstract concepts, *see CyberSource*, 654 F.3d at 1371, the Supreme Court has at times classified mental processes as its own separate category of ineligible subject matter. *See Mayo*, 132 S. Ct. at 1293 ("[p]henomena of nature ..., mental processes, and abstract intellectual concepts are not patentable") (quoting *Benson*, 409 U.S. at 67). Regardless of its taxonomy, a mental process is clearly outside the bounds of patent eligibility. *Id.*

Several decisions illustrate the prohibition on patenting mental processes. In *Benson*, discussed by the district court (A018-19), the claims were directed to a computerized method for converting BCD numerals into pure binary code. 409 U.S. at 66, 67. The claims were found ineligible in part because that conversion, although performed by a computer in the claims, could "be done mentally." *Id.*

In *CyberSource*, the patent encompassed a method for "verifying the validity of credit card transactions over the Internet" by "a) obtaining information about

other transactions that have utilized an Internet address that is identified with the []
credit card transaction; b) constructing a map of credit card numbers based upon
the other transactions and; c) utilizing the map of credit card numbers to determine
if the credit card transaction is valid." *Id*. at 1368 n.1. Some of the claims
expressly required that this method be carried out by a computer through
"execution of the program instructions by one or more processors of a computer
system." *Id*. This Court held that the claimed method was not patentable because
it could "be performed in the human mind, or by a human using a pen and paper."
*Id*. at 1372. Allowing such a patent on a mental process would be to allow
someone "to patent the use of human intelligence in and of itself." *Id*. (quoting
*Comiskey*, 554 at 980). The court went on to find that the addition of a computer
did not make any difference because "merely claiming a software implementation
of a purely mental process that could otherwise be performed without the use of a
computer" is not enough to satisfy § 101. *Id*. at 1375.

Likewise, in *SmartGene*, this Court explained that "section 101 [does] not
embrace a process defined simply as using a computer to perform a series of
mental steps that people, aware of each step, can and regularly do perform in their
heads." 555 Fed. Appx. at 954 (citations omitted). There, the Court found invalid
claims to "a method, a system, and a computer program, respectively, for guiding
the selection of a treatment regimen for a patient with a known disease or medical

30

condition." *Id*. The Court affirmed summary judgment because the claims "no more than call on a 'computing device,' with basic functionality for comparing stored and input data and rules, to do what doctors do routinely." *Id*. "[E]very step is a familiar part of the conscious process that doctors can and do perform in their heads." *Id*. at 955; *see also Planet Bingo*, 576 Fed. Appx. at 1007-08 (finding that computerized method with steps of "selecting, storing, and retrieving two sets of numbers, assigning a player identifier and a control number, and then comparing a winning set of bingo numbers with a selected set of bingo numbers" failed step 1 in part because it could be "done mentally").

As with *Benson*, *CyberSource*, *SmartGene*, and *Planet Bingo*, the claims of the '516 patent, while reciting a generic computer, encompass the mental process of meal planning to meet eating goals that could be (and in fact regularly is) performed by people in their heads or using pencil and paper. As the district court correctly observed:

> A person can perform them without the aid of any particular or structured method and without the need of any technology. Indeed, dieters planning their meals and calculating their daily caloric intake make such determinations regularly, whether acting systematically or intuitively. So too do parents planning meals for their children, so as to meet health or nutritional goals.

A019.

While DietGoal does not challenge the district court's decision on step 1 that the '516 claims encompass an abstract concept, DietGoal does take

issue with the separate conclusion that the claims are also drawn to an impermissible mental process.  App. Br. at 48-50.  Specifically, DietGoal complains that because the claims specify computer implementation, they necessarily cannot be performed by the human mind or on pen and paper. *Id*.  That criticism, however, cannot stand up to the case law on which the district court correctly relied.  *Benson*, *CyberSource*, *SmartGene*, and *Planet Bingo* all involved processes performed by a computer, just like the DietGoal claims.[2]  Given that each of these cases would suffer the same criticism made by DietGoal here, the issue clearly is not whether the claims recite a computer, as DietGoal suggests, but instead whether the process to be performed by the computer is something that could be performed by the human mind or with pen and paper, as the district court correctly found the process of the '516 patent was.

---

[2] *E.g.*, *Benson*, 409 U.S. at 65 ("The patent sought is on a method of programming a general-purpose digital computer to convert signals from binary-coded decimal form into pure binary form."); *CyberSource*, 654 F.3d at 1373 (claim required "execution of the program instructions by one or more processors of a computer system"); *SmartGene*, 555 Fed. Appx. at 951-52 (claim 1 recited "generating in said computing device"); *Planet Bingo*, 576 Fed. Appx. at 1008 (claims recited, for example, "a computer with a central processing unit," "a memory," "an input and output terminal," and "a printer").

### 4. *The abstract concept and mental process prohibitions apply whether the claims are viewed as a "process" or a "machine."*

Section 101 states that patents may be issued for any "new and useful process, machine, manufacture, or composition of matter." DietGoal makes much of the district court's characterization that the claims of the '516 patent are directed to a "process" from § 101's list, not a "machine." App. Br. at 31-32. Although somewhat cryptic, DietGoal appears to suggest that if one starts with the view that the '516 patent system claims are directed to a "machine" rather than a "process" under § 101, then they must somehow be immune from a challenge that they are drawn to abstract concepts or mental processes.

It simply does not matter for this appeal whether any claim in the '516 patent is viewed as drawn to a "machine" rather than a "process." The prohibition on patenting abstract concepts and mental processes applies to § 101 generally, including both types of subject matter:

> Laws of nature, natural phenomena, and abstract ideas, no matter how "[g]roundbreaking, innovative, or even brilliant," are outside what the statute means by "new and useful process, machine, manufacture, or composition of matter."

*buySAFE*, 765 F.3d at 1352 (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2117 (2013); *see also Alice*, 134 S. Ct. at 2354 ("Section 101 of the Patent Act defines the subject matter eligible for patent protection. … We have long held that this provision contains an important implicit

exception:  Laws of nature, natural phenomena, and abstract ideas are not patentable.").

Thus, DietGoal's criticism of the district court for classifying all of the claims as "processes" rather than "machines" makes no difference for this appeal. Because the claims fail the two-step test articulated in *Mayo* and *Alice*, as the district court properly concluded, they are "not patentable" regardless of the statutory class to which they are directed.

### 5.    *It does not matter for § 101 whether the claims are novel.*

DietGoal also argues that its claims are eligible because they recite a novel tool for meal planning using a computer to implement visual displays of meals. *E.g.*, App. Br. at 10, 15, 25.  Of course, novelty is a separate and independent requirement for patentability under 35 U.S.C. § 102.  Nonetheless, this same "novelty" argument was rejected by this Court recently in *Ultramercial III*.

There, the patent owner argued that "abstract ideas remain patent-eligible under § 101 as long as they are new ideas, not previously well known, and not routine activity." *Ultramercial III*, slip op. at 8.  This Court disagreed:  "We do not agree with Ultramercial that the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete."  *Id*. at 10; *see also id.* at 12 ("That some of the eleven steps were not

previously employed in this art is not enough—standing alone—to confer patent eligibility upon the claims at issue."). Thus, it makes no difference for § 101 whether or not the DietGoal patent describes the first use of a conventional computer as a tool for meal planning.

### C. The District Court Correctly Concluded That The '516 Patent Claims Lack Any Elements That Add "Significantly More" To The Abstract Concept And Mental Process.

The Supreme Court in *Alice* definitively put to bed any suggestion that implementing an abstract concept or mental process on a generic computer using existing computer technology could survive step 2 of the *Mayo/Alice* framework for determining patent eligibility. The district court properly relied on Alice and concluded that the '516 claims add nothing but a generic computer and various generic computer components, such as a user interface, display, and database, none of which is sufficient to satisfy § 101.

### 1. *Following Alice, the district court was correct that the "Picture Menus," "Meal Builder," and generic computer terms add nothing "significant" to the abstract concept and mental process.*

DietGoal's appeal argues that the computer-implemented "Picture Menus," "Meal Builder," databases," "user interface," and "display" of the claims satisfy the required "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept]

itself." *Alice*, 134 S. Ct. at 2355 (citations omitted). The district court reviewed the claims and specification to understand each of these elements cited by DietGoal:

> The User Interface can "receive commands from the user and display results to the user from the Picture Menus and Meal Builder." The Meal and Food Databases contain "pre-set meals comprising combinations of foods that conform to predetermined characteristics," which can be modified according to the user's preferences and tendencies. The Picture Menus, which "display on the User Interface meals from the Database," allow the user to "mix and match [meals to] meet customized eating goals." Then, using the Meal Builder, users can "change [those meals] and view the meals' impact on customized eating goals."

A003. The district court's description of these elements is essentially the same as DietGoal's description of them in its appeal brief. *See* App. Br. at 35-36. The functions of these elements—having a storehouse of food information, mixing and matching foods from that storehouse to plan a meal, and viewing the impact of those changes on one's eating goals—are at the heart of the abstract meal planning concept.

The issue is not whether these meal planning ***functions*** save the claims from ineligibility—they clearly do not because they are part and parcel of the abstract concept—but instead whether the claims identify any inventive structure that adds "significantly more than a patent" on the concept itself. *Alice*, 134 S. Ct. at 2355. The Supreme Court in *Alice* faced the exact same argument that DietGoal raises in

its brief: "petitioner emphasizes that those claims recite 'specific hardware' configured to perform 'specific computerized functions.'"  *Id*. at 2360.

In *Alice*, the claims related to the abstract concept of intermediated settlement using a computer as the intermediary.  *Id*. at 2351-52.  The Court looked at each of the functions performed by the computer in the claims and found each to be a "purely conventional" use of a computer:

> Using a computer to create and maintain "shadow" accounts amounts to electronic recordkeeping—one of the most basic functions of a computer.  The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are "well-understood, routine, conventional activit[ies]" previously known to the industry.  In short, each step does no more than require a generic computer to perform generic computer functions.

*Id*. at 2359 (citations omitted).  Using this same analysis, the Court found that a "data processing system," "communications controller," and "data storage unit," were "purely functional and generic" because "[n]early every computer will include those generic components for "performing the basic calculation, storage, and transmission functions."  *Id*. at 2360.  In contrast, including computer technology in the claim might be sufficient if the claims "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field."  *Id*. at 2359.

Decisions from this Court before *Alice* predicted this result.  As explained in *SmartGene*, reciting generic elements of a computer is no better than reciting just a

"computer" because such elements are merely the "physical components for input, memory, look-up, comparison, and output" of "existing computers long in use," not "new machinery." *SmartGene*, 555 Fed. Appx. at 954. For example, the following generic computer components were insufficient to save the claims in other cases from ineligibility:

- *Accenture*, 728 F.3d at 1338-39 ("insurance transaction database," a "task library database," a "client component," a "server component," and an "event processor");
- *Bancorp*, 687 F.3d at 1271 ("policy generator," several "calculators," and "digital storage");
- *Dealertrack*, 674 F.3d at 1319 ("computer," "central processor," "application entry and display device," "communications medium," and "terminal device");
- *Ultramercial III*, slip op. at 11-12 ("the Internet").

The district court followed the mandate of *Alice* and rejected DietGoal's argument that § 101 could be satisfied by using conventional computer technology such as a user interface, a computer, a display, and databases to perform the meal planning functions. Instead, the district court examined each step in the process and determined that its use of a computer in that step was "purely conventional" using no "new machinery." A024-26. For example, preparing databases of food objects and meals and using Picture Menus to display meals from which a user can select "involve[s] creating customized lists by retrieving information from a stored database—one of the most basic functions of the generic computer." A024. Similarly, allowing a user to change meals, computing the effect on one's eating

goals, and displaying the results involves "conventional computer tasks:

manipulating data based on inputs from the user, making computations from stored

data, and displaying the results on a visual display." *Id*.

DietGoal's criticisms of the district court's conclusion that the '516 patent

claims amount to nothing but conventional and generic computer technology

cannot stand in light of the pronouncements from the Supreme Court and this

Court.  For example, DietGoal argues that the computer elements in its claims are

not "generic" or "conventional" because they are "particular implementations as

specified in the Picture Menus and Meal Builder limitations" and "restrict the

claims to a specific application or way of doing something with a computer."  App.

Br. at 43.  In essence, DietGoal appears to suggest that a claim that uses generic

computer technology to perform a specific function, such as selecting and

displaying meals, cannot be the "generic computer" mentioned in *Alice*.  A review

of the cases establishes that DietGoal is wrong.

In *Alice*, the system claim at issue recited a "data storage unit" specifically

"having stored therein information about a shadow credit record and shadow debit

record" and a "computer" specifically programmed to "(a) receive a transaction;

(b) electronically adjust said shadow credit record and/or said shadow debit record

… and (c) generate an instruction to said exchange institution at the end of a period

of time …"  *See CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1289 (Fed. Cir.

2013) (*en banc*) (opinion of Lourie, J.), *aff'd*, 134 S. Ct. 2347 (2014). *See also Accenture*, 728 F.3d at 1338-39 (system claims having generic computer technology such as a "processor" and "databases" were ineligible even though the processor and databases were specifically used in a particular application to store and manipulate information about an insurance agency for the purpose of alerting agents when insurance tasks needed performing). Just as with the DietGoal claims, the *Alice* claims and *Accenture* recited generic computer hardware to perform functions associated with the specific abstract concept of the patent. Yes, most computers do not perform the functions of meal planning any more than they adjust shadow credit records or alert insurance agents of upcoming insurance-related tasks, but that is not the test. Most computers *do* have the computer components in the DietGoal, *Alice*, and *Accenture* claims, such as databases or digital storage for storing information, processors for manipulating information, and displays for visualizing information.

While DietGoal tries to analogize its claims to those in *Diamond v. Diehr*, 450 U.S. 175 (1981), suggesting that they are directed to "a specific application of doing something with a computer," that analogy is hardly apt. Indeed, *Alice* rejected an almost identical argument. 134 S. Ct. at 2358. *Diehr* involved a claim to a computer-assisted process for curing rubber using an industrial rubber mold, technology known as a "thermocouple" to record constant temperature

measurements inside a rubber mold, and a computer to run an equation calculating remaining curing time based on the temperature measurements. 450 U.S. at 177-79. The Supreme Court in *Alice* explained that the Diehr process was found eligible because the additional steps of using the formula and the computer in an industrial rubber curing process "improved an existing technological process, not because they were implemented on a computer." *Alice*, 134 S. Ct. at 2358. There is no such technological process, such as curing rubber, at issue in the DietGoal claims. Instead, the computer implementation in the DietGoal claims simply is a tool to speed up and make more visual the abstract meal planning process performed by people every day in their heads, just as the computer implementation in *Alice* was simply a tool to make the process of intermediated settlement faster and more efficient.[3]

Finally, DietGoal criticizes the district court for finding that a computer, database, user interface, and display are conventional and generic to most computers without citing any "evidence." *E.g.*, App. Br. at 38, 42. The same "criticism" could be leveled at the Supreme Court in *Alice* and this Court in *buySAFE*, *Planet Bingo*, and *SmartGen*e, to name a few. None of these decisions

---

[3] DietGoal's reliance on *SiRF Tech., Inc. v. Int'l Trade Commn.*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010), also is misplaced. See App. Br. at 45-46. Like *Diehr*, *SiRF* involved claims directed to a specialized machine, a GPS receiver, not a generic computer. *Id*. at 1332.

have cited any "evidence" for the rather obvious proposition that most computers have components such as digital storage, a processor, a database, a display, and an input device.[4]  Clearly, courts do not need to state such evidence given the ubiquity of computers in today's society.

In the end, the DietGoal patent and claims contain nothing but basic computer components that one would find in just about any computer, including a database, a user interface, and a display.  A careful review of the patent reveals not a single specific machine or concrete innovation.  The generic computer hardware and functionality discussed in the patent does not "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field."  *Alice*, 134 S. Ct. at 2359.  For these reasons, the district court's conclusion "the addition of the computer here is not 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself'" was correct and should be affirmed.  A026 (quoting *Alice*, 134 S. Ct. at 2355).

### 2.    *DietGoal waived its appeal with respect to all but a few of the dependent claims.*

While DietGoal makes sweeping criticism of the district court's decision that all sixty-two claims of the '516 patent are ineligible under § 101, *see, e.g.*,

---

[4] *See, e.g.*, *Alice*, 134 S. Ct. at 2359-60; *buySAFE*, 765 F.3d at 1355; *Planet Bingo*, 576 Fed. Appx. at 1008; *SmartGene*, 555 Fed. Appx. at 954-55.

App. Br. at 1, its appeal brief only even ***mentions*** the elements for a small handful of those claims:  independent claims 1, 2, 12, and 13; and dependent claims 7-11, 15-18, 20, 23, 24, and 30.  *Id*. at 6-8, 37-38.  Of these, DietGoal only makes substantive § 101 arguments regarding claims independent claims 1, 2, 12, and 13 and dependent claims 20, 23, 24, and 30.  *Id*. at 37-38, 48.

This Court can and should treat these eight claims as representative of the others that were not argued separately in the appeal brief.  For example, in *Dealertrack* and *In Re Grams*, this Court decided the patent eligibility of multiple claims on the basis of one claim where the other claims were not separately argued. *Dealertrack*, 674 F.3d at 1332, *In re Grams*, 888 F.2d 835, 841 (Fed. Cir. 1989).

Further, because DietGoal did not address any other dependent claims in its opening brief on appeal, it has waived any separate argument as to the eligibility of those claims.  *Engel Indus., Inc. v. Lockformer Co*., 166 F.3d 1379, 1387 (Fed. Cir. 1999) ("An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal is necessarily waived.").  For example, in *Accenture*, the district court granted judgment that all claims were ineligible under § 101, but the patent owner's appeal brief discussed the independent system claim of the patent but not the method claims nor the dependent system claims.  *Accenture*, 728 F. 3d 1341-42.  This Court held that the judgment as to the method claims not addressed by the appeal was "final and

43

conclusive" and that because "the briefing and argument from both parties focused only on system claim 1," "the eligibility of dependent claims 2–7 depends on the eligibility of claim 1." *Id.* at 1340-41. *See also Dealertrack*, 674 F.3d at 1331 ("The patent eligibility of dependent claims 3 and 4 is not separately argued on appeal and, therefore, will not be separately addressed."); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

Because DietGoal has limited its substantive appeal of the dependent claims to claims 20, 23-24, and 30, the Court should affirm the decision of ineligibility under § 101 with respect to all other dependent claims based on waiver alone.

### 3.     *Even if not waived, the ineligibility of all the dependent claims was correct and should be affirmed.*

Even if the Court were to disregard DietGoal's waiver, the judgment should be affirmed because none of the dependent claims adds anything significant to the independent claims. In particular, each of the dependent claims is equally unpatentable for one or more of the following reasons.

*Mental/Abstract Steps*:  Many of the dependent claims simply recite an additional mental step or a more particular example of the abstract meal planning concept. For example, claims 3 and 14, just like claims 2 and 13, involve changing the contents of a meal and viewing the resulting "impact on customized eating

44

goals." Claim 4 adds the unremarkable concept that the meal planning is designed to impact eating behavior. Claims 5 indicates that the "food objects" chosen to make a meal include "images." Claims 7, 8, 10, 15, 17, 19, 21-22, 27-28, 43-47, and 52-53 involve collecting, analyzing, and saving information about users' preferences and tendencies (including likes, dislikes, ratings, comments, *etc.*). Claims 9, 11, 16, and 18 involve comparing information to "a set of goals." Claim 41 involves searching for a meal, and claim 42 recites "computing" nutritional information for the meal.

Each of these additional elements at most adds "a degree of particularity" to the general abstract concept of meal planning to meet nutritional goals, which is not sufficient to transform the claims into eligible ones. *See Ultramericial III*, slip op. at 9 ("Although certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content."). In addition, each of these additional elements can be completed entirely in the human mind or on paper. Indeed, reciting a user's "tendencies" and "preferences" underscore that these represent nothing more than mental steps. Because the limitations of these dependent claims can be performed mentally, just like the steps of the independent claims, each fails to transform the

claim into something patentable under § 101. *See CyberSource*, 654 F.3d at 1373; *SmartGene*, 555 Fed. Appx. at 955.

*Generic Computer Steps*: Other elements of the dependent claims simply recite additional generic computer terminology, such as inputting, collecting, storing, and displaying information. For example, claims 19, 23, 44, and 48 involve receiving "commands" and "selections" from the user about his or her preferences. Claim 43 involves receiving comments from a user about a meal. These are simply generic descriptions of inputs provided by a user on a general purpose computer. Claims 22-23, 27-28, 47-48, and 52-53 add the generic computer concept of saving or storing information in memory or a database. Claims 20-21, 24-26, 29-40, 45-46, 49-51, 54-61 involve simply "displaying" various information about nutrition, food, and meals. Claim 41 recites a "search function" for searching and claim 42 recites a "compute function" for computing nutritional information about a meal; to the extent that these two claims might require a computer as opposed to the human mind, they refer to functions existing in virtually all computers.

As discussed in Section II.C.1 above, merely reciting that mental processes and abstract concepts are to be performed by a general purpose computer and its generic components is plainly insufficient under § 101. These dependent elements simply recite "physical components for input, memory, look-up, comparison, and

output" of "existing computers long in use," not "new machinery."  *SmartGene*, 555 Fed. Appx. at 954-55; *see also Alice*, 134 S. Ct. at 2360 ("Nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims."); *Ultramercial III*, slip op. at 12 ("Narrowing the abstract idea of using advertising as a currency to the Internet is an attempt[] to limit the use of the abstract idea to a particular technological environment, which is insufficient to save a claim.") (internal quotations omitted); *Accenture*, 728 F.3d at 1345.

*Insignificant Pre-Solution and Post-Solution Activity*:  Finally, most of the dependent claims are also wanting because at most they add insignificant "pre-solution" or "post-solution" activity.  In *Flook*, the Supreme Court found that a method for updating alarm limits during a catalytic conversion process in the oil-refining industry was unpatentable under Section 101.  437 U.S. 584.  In so finding, the Court expressly rejected the argument that the post-solution step of adjusting the alarm limit imparted patent eligibility on what was otherwise an unpatentable method claim on a mathematical concept.  *Id*. at 590.

Since then, the Supreme Court has expanded the principle to mean activity both before and after the abstract process at issue.  *See Mayo*, 132 S. Ct. at 1297-98, 1300-01 (noting that both "pre-solution" and "post-solution" activity cannot

impart patentability to an otherwise ineligible claim).  Data gathering or input steps that lead to the abstract process are "pre-solution" activity that cannot save a claim under § 101:  "Even if some physical steps are required to obtain information from the database (e.g., entering a query via a keyboard, clicking a mouse), such data-gathering steps cannot alone confer patentability." *CyberSource*, 654 F.3d at 1372; *see also Ultramercial III*, slip op. at 11 ("the steps of consulting and updating an activity log represent insignificant 'data-gathering steps'").  Further, displaying information on a computer is insignificant post-solution activity.  *See, e.g., Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,* -- F.Supp.2d --, 2014 WL 923280, at *7 (E.D. Tex. Jan. 21, 2014) ("presenting a list via a user interface, or through the internet, is a token post-solution activity that does not meaningfully limit the abstract idea of inventory-based selling").

DietGoal's dependent claims are also unpatentable because they involve insignificant and conventional pre-solution and post-solution activity surrounding the meal planning process.  For example, claims 19, 23, 43-44, and 48 all involve pre-solution data-gathering steps (receiving "commands," "selections," comments," *etc.*, from the user), which this Court has expressly confirmed are not sufficient for patentability.  *CyberSource*, 654 F.3d at 1372.  Claim 41 involves searching for food to make a meal, also a token pre-solution activity before creating a meal to meet eating goals.  Likewise, claims 22-23, 27-28, 47-48, and

52-53 involve the insignificant post-solution task of simply saving information in memory or a database. And, claims 20-21, 24-26, 29-40, 45-46, 49-51, 54-61 involve simply "displaying" various information about nutrition, food, and meals, which is also just conventional post-solution activity after choosing food to make a meal. All of these claims use conventional general purpose computer technology to gather, store, calculate, and display information. Such token extra-solution steps cannot magically transform the abstract idea and mental process of the '516 patent into something that satisfies § 101.

### D.     Plaintiff Has Not Identified Any Claim Language That The District Court Failed To Consider.

Although DietGoal accuses the district court of improperly simplifying the claims and thereby ignoring claim limitations (A001-2, A014-15), DietGoal fails to identify any limitation that the district court did not address. Indeed, the only limitations that DietGoal argues render the claims patentable are the Picture Menus, Meal Builder, computer implementation, and a few related dependent claim elements. (A035-38) The district court did not ignore or misapprehend any of these claim limitations. For example, the district court summarized the independent claims as follows:

> The '516 Patent claims a process for computerized meal planning; in essence, it recites a computer program that allows the user to create meals from a database of food objects according to his or her preferences and dietary goals, to change those meals by adding or

subtracting food objects, and to view the dietary impact of changes to
those meals on a visual display.

A017-18.  The district court also carefully considered the computerization aspects

of the claims by which "users can create meals using the Picture

Menus and view the nutritional impact of changes to those meals using the Meal

Builder."  A020; *see also* A024 (describing the claims as reciting the following

limitations:  "(1) preparing a database of meals that meet the user's preferences; (2)

choosing meals for a particular day from the Picture Menus; and (3) deciding

whether or not to change one or more of the meals that the user has selected for

that day, and, using the Meal Builder, allowing the user to visualize those changes

and the resulting impact on his or her nutritional goals.").

The district court looked at each of these limitations but concluded that they

did nothing more than describe the abstract concept and mental process of planning

meals to meet individual dietary goals, by adding or subtracting foods and seeing

the effect on those goals, using conventional computer technology, such as a

computer, database, and display.  A000010-21.

### E.    The District Court Did Not Ignore Any "Evidence" Or Decide Any Disputed "Factual Issues."

DietGoal's suggestions that the district court resolved disputed factual issues

on summary judgment (App. Br. at 42) and made its decision without any

"evidence" but the patent (App. Br. at 1, 42) are inaccurate and not relevant.

The district court made its decision regarding eligibility under § 101 based on the undisputed intrinsic evidence of the patent, reviewing the claims and specification and comparing them to the guidepost cases of the Supreme Court. DietGoal has not provided any authority that evidence other than the patent is required for a proper eligibility analysis under § 101. Indeed, the patent itself is precisely the evidence that the Supreme Court and this Court have used in numerous § 101 decisions over the past few years.

In addition, patent eligibility is a question of law under § 101. *Accenture*, 728 F.3d at 1340-41. DietGoal has not identified any issues of fact on this record, much less disputed issues of fact that the district court resolved in Bravo's favor. Moreover, DietGoal did not offer any factual evidence in opposition to Bravo's motion. For example, while DietGoal proffered an expert declaration to oppose Bravo's motion for summary judgment of ***non-infringement***, A072 (Dkt. 132), it provided no expert testimony on the ***§ 101 issue***.

The only disputed issue for the district court to resolve was whether the '516 patent claims encompassed forbidden abstract ideas and mental processes. This was a legal issue that the district court properly resolved by comparing the undisputed patent to the relevant case law.

### III.    Resolution Of Bravo's Summary Judgment Motion Did Not Require Claim Construction.

DietGoal faults the district court for deciding Bravo's summary judgment motion without conducting "any construction of any of the terms of the 62 claims contained in the '516 patent." App. Br. at 27-28. DietGoal fails, however, to identify any error in the timing of the decision.

First, on several occasions in its appeal brief, DietGoal misstates the law about deciding a § 101 motion before a full claim construction proceeding. For example, DietGoal claims that "Bravo's burden to establish that all of the claims of the '516 patent are not patent eligible was *even heavier than usual*, given that it filed its summary judgment motion in the early stages of the litigation, without any claim construction ruling by the District Court." App. Br. at 27 (emphasis added). DietGoal also represents to this Court that "Bravo was required to establish that the *only plausible construction of each claim* renders the subject matter of the claim ineligible as a matter of law by clear and convincing evidence." App. Br. at 26 (emphasis added). DietGoal fails to cite any support for these two propositions for some greater burden because there is none.[5] Instead, the timing of the motion does

---

[5] DietGoal made the same argument regarding a supposed heavier burden to the district court, at that time citing this Court's 2013 decision in *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1355, 1338-1339 (Fed. Cir. 2013) ("*Ultramercial II*"). *See* A458. Since then, the Supreme Court vacated and remanded that *Ultramercial* decision, 134 S. Ct. 2870 (2014), and this Court has just recently issued a new decision on remand affirming the ineligibility of the patent and not including the

not affect the burden or the showing required to establish the legal issue of ineligibility under § 101.

Second, there was no reason for the district court to wait for a full claim construction before making the decision on § 101 in this case.  Claim construction is required only when the meaning or scope of technical terms and words of art are unclear and disputed, such that a resolution is required to determine the issue before the court.  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Thus, "claim construction is not an inviolable prerequisite to a validity determination under § 101."  *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (US)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).  Indeed, when a patent owner opposing a motion regarding § 101 fails to identify "which terms require construction or how the analysis would change," there is no reason to postpone the § 101 decision.  *Cyberfone*, 558 Fed. Appx. at 991 n.1.

Here, the district court correctly concluded that "[c]laim construction would not assist the Court in resolving the § 101 claim of invalidity" because the claims are sufficiently "straightforward" and would be invalid "under any reasonable construction.  A028.  In opposing summary judgment, the only ***specific*** construction issue that DietGoal raised was that the claims were computer-

---

earlier decision's statement regarding a heavier burden.  *See generally Ultramercial II*, slip op. at 3-14.

implemented and included various computer terminology. That issue was not in dispute, though, as the claims expressly recited a "system of computerized meal planning" or a "method of computerized planning." Nor was it in dispute that the claims expressly recited a handful of generic computer hardware or software elements, such as databases and a user interface. Indeed, the district court's analysis fully considered those requirements of the claims, but found that the Supreme Court's decision in *Alice* was determinative that such generic computer elements are not sufficient to transform claims to an abstract concept. A020-26. Other than the computer elements, which the district court fully reviewed and considered in its decision, DietGoal did not identify any specific claim construction disputes to the district court that could affect the § 101 decision. Nor has DietGoal identified any other such disputes in its appeal brief to this Court.

Third, the district court went further and concluded that its decision that the claims were not eligible under § 101 would be no different even if it adopted DietGoal's own preferred claim construction. A029-30. Indeed, at the hearing, the district court expressly gave DietGoal an opportunity to explain why the claims would be patentable under DietGoal's proposed construction. A603 at lines 6-19. DietGoal pointed the district court to the claim construction adopted by the Eastern District of Texas in the parallel case *DietGoal v. Kellan* litigation. A448-49; A603 at lines 10-13 ("Our proposed construction is the Texas court's construction.").

Specifically, DietGoal focused on the *Kellan* court's finding that all claims required the system or method to be "computerized" or "computer-implemented," that the preamble's requirement of computerization was limiting, and that the claims did not encompass "a purely mental process." A448-49. Likewise, the *Kellan* court construed "Picture Menus" as including a "display." A449. None of these claim construction positions, however, affected the § 101 analysis because the district court had already addressed in its analysis the addition of a computer, database, user interface, and display. A020-27. The district court did not ignore the claims' recitation of generic computers nor DietGoal's preferred constructions from the *Kellan* case. Instead, it found that even accepting such constructions, the claims were insufficient to pass the § 101 hurdle in light of the Supreme Court's clear holding in *Alice*.

Finally, DietGoal's opposition brief did not ask the district court to postpone deciding the motion until after claim construction. Instead, DietGoal strategically chose to oppose summary judgment by arguing that Bravo bore a higher burden of proof to show invalidity under § 101 because the motion was filed before claim construction. A458. That strategy turned out to be wrong, as the case on which it relied for that proposition was subsequently vacated and remanded by the Supreme Court for further consideration in light of *Alice*. *See id*. (citing *Ultramercial II, 722 F.3d at 1338-1339, cert. granted, vacated and remanded*, 134 S. Ct. 2870

(2014)).  Having failed to argue to the district court that it should stay proceedings on the motion, it should not be heard to complain of the procedure undertaken by the district court.

Because the district court fully addressed the § 101 eligibility of the claims under any reasonable construction and even under DietGoal's own proposed construction, the court did not commit any error by deciding the summary judgment motion without performing a full-blown claim construction proceeding.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the judgment of the district court be affirmed.

Respectfully submitted,

DATED:  November 18, 2014        By:     */s/ J. Christopher Carraway*
J. Christopher Carraway
christopher.carraway@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301

*Attorneys for Defendant-Appellee*
*Bravo Media LLC (Division of NBC*
*Universal Media, LLC)*

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

*DIETGOAL INNOVATIONS, LLC v. BRAVO MEDIA LLC,* 2014-1631

<u>**CERTIFICATE OF SERVICE**</u>

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by KLARQUIST SPARKMAN, LLP, attorneys for Appellee to print this document. I am an employee of Counsel Press.

On **November 18, 2014** counsel has authorized me to electronically file the foregoing **Responsive Brief of Defendant-Appellee** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

> Eric W. Buether
> BUETHER JOE & CARPENTER, LLC
> 1700 Pacific Avenue, Suite 4750
> Dallas, Texas 75201
> (214) 466-1271
> Eric.Buether@BJCIPLaw.com
> *Counsel for Plaintiff-Appellant*

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

November 18, 2014                                    /s/ John C. Kruesi, Jr.
                                                     Counsel Press

## **CERTIFICATE OF COMPLIANCE**

1.  The undersigned hereby certifies that the foregoing Responsive Brief Of

Defendant-Appellee complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) or Fed. R. App. P. 28.1(e).

The brief contains 13,326 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) or FRAP 28.1(e) and the type style requirements of Fed. R. App. P.

32(a)(6).

The brief has been prepared in a proportionally spaced typeface using

Microsoft Word in 14 point Times New Roman.


DATED:  November 18, 2014                    */s/ J. Christopher Carraway*
                                              J. Christopher Carraway
                                              KLARQUIST SPARKMAN, LLP